IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
Civil Action No. 1:08-CV-0854

| | |
|---|---|
| DUKE UNIVERSITY and ) | |
| DUKE UNIVERSITY HEALTH SYSTEM, ) | |
| INC., ) | |
|  ) | |
| Plaintiffs, ) | |
|  ) | |
| v. ) | **COMPLAINT** |
|  ) | |
| NATIONAL UNION FIRE INSURANCE ) | JURY TRIAL DEMANDED |
| COMPANY OF PITTSBURGH, PA, ) | |
|  ) | |
| Defendant. ) | |

Plaintiffs Duke University and Duke University Health System, Inc. (together "Duke"), by and through their attorneys, file this Complaint against Defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), and allege as follows:

## NATURE OF THE ACTION

1.	This action arises from National Union's breach of its contractual duty to advance and pay defense costs and to indemnify Duke with respect to certain claims and lawsuits brought against Duke and certain of its directors, officers and other insureds by various individuals associated with the Duke University 2005-2006 Men's Lacrosse Team (the "Underlying Claims").

2.	National Union has breached its insurance policies by failing to advance and/or pay all of Duke's Defense Costs (as defined in the insurance policies) for the Underlying Claims and the full amount of Duke's settlement with certain claimants (subject only to any applicable retentions and limitations of liability).

3.	Duke further seeks a declaratory judgment (i) that National Union is liable to

US2008 500730.1

advance the costs for any future defense of Duke in connection with the Underlying Claims, and (ii) that National Union is liable for any reasonable settlement entered into by Duke in the Underlying Claims and/or any judgment entered against Duke in the Underlying Claims. Each of these obligations is subject only to any applicable retentions and limits of liability.

4. National Union's actions in adjusting and denying the Underlying Claims were willful, wanton, malicious, without justification or excuse, and taken in bad faith to further National Union's own improper objectives and with the conscious intent to injure Duke.

5. National Union's actions in connection with this matter constitute violations of N.C. Gen. Stat. §§ 58-63-10 and 58-63-15, which constitute unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 *et seq*.

6. Accordingly, Duke seeks an award of compensatory damages, treble damages, and/or punitive damages, and an award of fees incurred in this case (including attorneys' fees), expenses, disbursements and costs, and any other amounts that are fair and just.

## THE PARTIES

7. Duke University is a non-profit educational institution chartered in the State of North Carolina with its principal place of business in Durham County, North Carolina.

8. Duke University Health System ("DUHS") is a non-profit corporation organized under the State of North Carolina, with a principal place of business in Durham County, North Carolina. At all relevant times, DUHS was listed as an Affiliate (as defined in the policies) in the National Union policies.

9. National Union is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business in the State of New York.

10. National Union is and was at all relevant times a corporation licensed and qualified to do business, and is and was doing business, in the State of North Carolina.

**JURISDICTION AND VENUE**

11. This Court has subject-matter jurisdiction of this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 for each Plaintiff, exclusive of interests and costs, and there is complete diversity between the Plaintiffs and the Defendant.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391. Upon information and belief, Defendant is a resident of this District pursuant to 28 U.S.C. § 1391(c) because this action arises out of an insurance contract made between the Plaintiffs and the Defendant, and the Plaintiffs were residents of this State and this District when the events giving rise to the claim occurred. Furthermore, Defendant has transacted business or contracted to insure persons, property and/or risk in this District. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this District. The subject of the insurance policies sold by National Union is in this District, all events that gave rise to the Underlying Claims allegedly occurred in this District, and all underlying lawsuits were filed in this District.

**FACTUAL BACKGROUND**

I. THE INSURANCE POLICIES

13. For the relevant policy periods, National Union sold Duke two Not-For-Profit Individual and Organization Insurance Policies ("I&O") policies (the "Policies"). Each of the Policies covers Duke and certain individuals for claims alleging a wide array of Wrongful Acts (as defined in the Policies).

14. For the Policy Period from December 4, 2005 to December 4, 2006, National Union sold Duke a first-layer claims-made I&O policy (the "2005 Policy").

15. For the Policy Period from December 4, 2006 to December 4, 2007, National Union sold Duke a first-layer claims-made I&O policy (the "2006 Policy").

16. Each of the Policies provides, among other things, first-layer organization entity coverage for Duke, promising that National Union will pay "on behalf of [Duke] Loss arising from a Claim first made against [Duke] during the Policy Period . . . and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act of the Organization" (each capitalized term is defined in each of the Policies).

17. Each of the Policies also covers Claims first made after the Policy Period, so long as the Claim arises out of circumstances of which Duke provides notice to National Union during the Policy Period.

18. Each of the Policies obligates National Union to pay and "advance Defense Costs" of each Claim "prior to its final disposition," and each Policy includes Defense Costs within the definition of "Loss."

19. "Defense Costs" are defined in the Policies to mean "reasonable and necessary fees, costs and expenses consented to by the Insurer . . . resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds."

20. Each National Union Policy defines "Wrongful Act" to include, among other torts, "any breach of duty, neglect, error, misstatement, misleading statement, omission or act by or on behalf of the Organization," or any libel, slander or defamation.

21. The National Union Policies each define "Claim" to mean, among other things, a "written demand for monetary relief" or "any request to toll or waive any statute of limitations."

## II. THE EVENTS GIVING RISE TO THIS DISPUTE

### A. The Underlying Claims

22. In March 2006, a woman alleged that that members of the Duke Men's Lacrosse Team sexually assaulted her. Shortly thereafter, a criminal investigation ensued, which resulted in the indictment of three Duke students (the "Three Duke Students"). The charges against the Three Duke Students ultimately were dismissed.

23. In early 2007, the Three Duke Students threatened legal action against Duke for its role in the investigation of, and response to, the Lacrosse Team incident. The Three Duke Students demanded monetary relief from Duke for its alleged conduct in handling the incident.

24. In February 2007, two attorneys for (and parents of) certain unindicted Lacrosse players verbally asked Duke to agree to waive the statute of limitations so that they and Duke could continue discussions regarding the players' allegations against Duke (the "2007 Waiver Request").

25. In April 2007, the remaining charges against the Three Duke Students were dismissed.

26. In June 2007, before a formal complaint was filed, Duke entered into a confidential monetary settlement that resolved the claims by the Three Duke Students.

27. After the dismissal of charges against the Three Duke Students, representatives and counsel for certain unindicted players informed Duke in various writings that they intended to file lawsuits against Duke for its alleged role in investigating and handling the Lacrosse Team incident. Counsel for these players requested monetary relief from Duke for its alleged conduct.

28. Duke received other written demands throughout 2007 that demonstrated that various players sought monetary relief. Ultimately, forty-one unindicted players (and certain of

5

their parents) filed lawsuits against Duke.

29. On January 4, 2007, one unindicted player and his parents filed a lawsuit against Duke and certain individuals employed by the University styled *Dowd v. Duke University*, No. 07-CV-01562 (N.C. Sup. Ct. filed Jan. 4, 2007).

30. On December 17, 2007, three unindicted players and certain of their parents filed a lawsuit against Duke and certain individuals employed by the University styled *McFadyen v. Duke University*, No. 1:08-CV-119 (M.D.N.C. filed Dec. 18, 2007 ).

31. On February 21, 2008, thirty-eight other unindicted players and certain of their parents filed another lawsuit against Duke and certain of its employees styled *Carrington v. Duke University*, No. 1:08-cv-119 (M.D.N.C. filed Feb. 21, 2008).

32. In addition to the former players' and their parents' claims and lawsuits, in September 2007, the former head coach of the lacrosse team, Michael Pressler, filed a lawsuit alleging defamatory remarks and seeking rescission of a settlement agreement with Duke that he previously had executed, styled *Pressler v. Duke University*, No. 07-CVS-005223 (N.C. Sup. Ct. filed Oct. 11, 2007).

33. At approximately the same time, Mr. Pressler sent Duke a written letter demanding damages for defamatory statements that Duke allegedly had made against Pressler.

34. In January 2008, Pressler dismissed his claim for rescission and filed another action seeking damages for defamation, styled *Pressler v. Duke University*, No. 08-CV-001311, (N.C. Sup. Ct. filed Jan. 23, 2008).

B. Duke's Notifications to National Union and National Union's Response

35. On March 30, 2006, almost immediately after the allegations against the Three Duke Students became public, Duke notified National Union of the circumstances then known

US2008 500730.1

surrounding the alleged assault by the Three Duke Students, providing National Union with numerous articles from the press regarding the allegations and Duke's subsequent investigation into the allegations.

36. In addition, Duke repeatedly and timely provided National Union with notice of the demands, other developments, and Defense Costs with respect to the Underlying Claims.

37. Duke repeatedly requested that National Union advance Defense Costs, as required by the Policies. In addition, Duke requested indemnification for the settlement with the Three Duke Students.

38. In response, National Union repeatedly acknowledged, in writing, that its Policies potentially covered the claims and lawsuits at issue.

39. At least four separate times, National Union, in writing, acknowledged that potential coverage existed under one or both Policies for the claims and lawsuits at issue. Specifically:

    a. On February 6, 2008, National Union acknowledged in writing the February 2007 Waiver Request as a Claim under the 2005 Policy, and acknowledged potential coverage for the *McFadyen* action, with potential coverage subject to a full and complete reservation of rights;

    b. on April 23, 2008, National Union acknowledged in writing potential coverage for the allegations set forth in Counts 6 through 23 of the *Carrington* complaint against Duke and against certain other defendants subject to a full and complete reservation of rights;

    c. on April 8, 2008, National Union acknowledged in writing that one or both of its policies potentially apply to the January 2008 *Pressler* action;

    d. on June 20, 2008, National Union again acknowledged in writing that one or both of its policies potentially apply to the *McFadyen* allegations.

40. In addition, National Union insisted in its April 23, 2008 letter that Duke should not incur any Defense Costs without National Union's consent, implicitly recognizing National

7

Union's own defense-payment obligations.

41. Despite these acknowledgments, National Union still has not paid or advanced any money for any Defense Costs incurred with respect to any of the Underlying Claims.

42. Each Plaintiff has incurred (and has informed National Union that it has incurred) substantial sums defending themselves against the Underlying Claims. National Union has acknowledged potential coverage for the *McFadyen*, *Carrington*, and *Pressler* actions under one or both of the National Union policies. National Union has not advanced Duke any amount for any Defense Cost with respect to any of the Underlying Claims. Nor has National Union paid any amount of the settlement with the Three Duke Students. National Union owes each Plaintiff in excess of $75,000 for their Defense Costs and settlement payments.

## **FIRST CLAIM FOR RELIEF**
**(Breach Of Contract Regarding Defense Costs)**

43. Duke incorporates by reference Paragraphs 1 through 42 as though fully restated herein.

44. National Union sold Policies to Duke, which obligate National Union to pay and "advance Defense Costs" of each Claim to Duke "prior to its final disposition."

45. An insurer's defense-payment obligation is broader than its obligation to pay damages.

46. An insurer must pay Defense Costs if any facts or allegations bring the claim even potentially within the protection purchased.

47. Under the applicable standard, National Union is obligated under one or both of the National Union Policies to pay Duke's Defense Costs with respect both to the player claims and the *Pressler* claims, subject only to any applicable retentions and limits of liability.

48. National Union has acknowledged expressly that one or both of the Policies potentially cover the Underlying Claims. For example, National Union has acknowledged that one or both of the Policies potentially cover the *McFadyen* and *Carrington* actions as well as the January 2008 *Pressler* action.

49. Because it concedes that one or both of the National Union Policies potentially cover at least certain of the claims, National Union is obligated to pay all of the Defense Costs that Duke has incurred, and may in the future incur, with respect to the potentially covered claims (subject only to applicable limits and retentions).

50. National Union's defense-payment obligations under one or more of the Policies in fact were triggered by the allegations asserted in the player and Pressler claims and lawsuits because one or more of the allegations in each of the relevant claims and complaints unmistakably falls within the coverages that National Union provides.

51. For instance, the National Union Policies each cover Duke's alleged "Wrongful Acts," which are defined to include any of Duke's alleged breaches of duty, neglect, error, misstatements, misleading statements, omissions or acts, as well as libel, slander, or defamation.

52. The allegations in the Underlying Claims and complaints fall within the definition of Wrongful Act and trigger the insurer's defense-payment obligations.

53. Even after acknowledging potential coverage, National Union nonetheless attempted and continues to attempt to evade its defense-payment obligation.

54. In spite of its duty not only to pay Defense Costs, but also to advance such costs, National Union refused to pay, and continues to refuse to pay, any Defense Costs.

55. Because National Union has not paid, Duke has been forced to bear the full financial impact of its own defense.

9

56. Duke promptly advised National Union of all Underlying Claims and the settlement with the Three Duke Students.

57. Duke has complied with all conditions and obligations under the National Union Policies regarding its rights to receive Defense Costs from National Union with respect to the Underlying Claims.

58. National Union's wrongful failure and refusal to advance Defense Costs to Duke with respect to the Underlying Claims constitutes a breach of contract and has caused Duke to expend its own monies to defend itself in those actions.

59. As a direct, foreseeable and proximate result of National Union's breach of contract, Duke has suffered damages, including incidental, consequential, and compensatory damages. Duke is entitled to recover these damages, in an amount to be determined at trial, from National Union.

**SECOND CLAIM FOR RELIEF**
**(Breach Of Contract Regarding Indemnification)**

60. Duke incorporates by reference Paragraphs 1 through 59 as though fully restated herein.

61. National Union sold Policies to Duke, which obligate National Union to pay "on behalf of [Duke] Loss arising from a Claim first made against [Duke] during the Policy Period . . . and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act of the Organization."

62. Furthermore, "Wrongful Acts" are defined to include a range of intentional torts, including breaches of duty, neglect, error, misstatements, misleading statements, omissions or acts, as well as libel, slander, or defamation.

10

63. Duke has fulfilled all of its duties under the National Union Policies, including any duty it may have had to notify National Union of the Underlying Claims, to provide National Union with information respecting the allegations in the Underlying Claims, and to cooperate with National Union.

64. National Union's indemnity obligations under one or more of the Policies in fact were triggered by the allegations asserted in the Underlying Claims, because those allegations fall under the definition of "Wrongful Act."

65. For example, National Union's indemnity obligations were triggered when, in 2007, the Three Duke Students threatened legal action against Duke for its alleged role in the investigation of and response to the Lacrosse team incident. The Three Duke Students demanded monetary relief from Duke for its alleged tortious conduct.

66. Duke promptly advised National Union of all Underlying Claims and the settlement with the Three Duke Students.

67. In spite of its duty to indemnify Duke for its settlement with the Three Duke Students, National Union refused to pay, and continues to refuse to pay, any of the settlement amount. As a result, Duke has been forced to bear the full financial impact of its settlement with the Three Duke Students.

68. Duke has complied with all conditions and obligations under the National Union Policies with respect to its rights to indemnification with respect to the Underlying Claims.

69. National Union's wrongful refusal to indemnify Duke in connection with the settlement with the Three Duke Students constitutes a breach of contract and caused Duke to expend its own monies in satisfaction of that settlement.

70. As a direct, foreseeable and proximate result of National Union's breach of

US2008 500730.1

contract, Duke has suffered damages, including incidental, consequential, and compensatory damages. Duke is entitled to recover these damages, in an amount to be determined at trial, from National Union.

## THIRD CLAIM FOR RELIEF
### (Declaratory Judgment Regarding Defense Costs)

71. Duke incorporates by reference Paragraphs 1 through 70 as though fully restated herein.

72. An insurer must pay Defense Costs if any facts or allegations bring the claim even potentially within the protection purchased.

73. Under the applicable standard, National Union is obligated under one or both of the National Union Policies to pay Duke's Defense Costs with respect to the Underlying Claims, subject only to any applicable retentions and limits of liability.

74. National Union has acknowledged expressly that one or both of the Policies potentially cover the Underlying Claims.

75. National Union has acknowledged that one or both of the Policies potentially cover the *McFadyen* and *Carrington* actions and the January 2008 *Pressler* action.

76. Because it concedes that one or both of the National Union Policies potentially cover at least certain of the allegations, National Union is obligated to pay all of the Defense Costs that Duke has, and may in the future, incur with respect to the potentially covered claims (subject only to applicable limits and retentions).

77. In spite of its duty not only to pay Defense Costs, but also to advance such costs, National Union refused to pay, and continues to refuse to pay, any Defense Costs.

78. Duke has fulfilled all of its duties under the National Union Policies, including

any duty it may have had to notify National Union of the Underlying Claims, to provide National Union with information respecting the allegations in the Underlying Claims, and to cooperate with National Union.

79. Duke has demanded from National Union payment of Defense Costs it has incurred in defending the Underlying Claims.

80. National Union has acknowledged that at least some of the Underlying Claims are covered under the Policies.

81. National Union has refused to pay Duke for any Defense Costs.

82. There is a justiciable controversy between Duke and National Union with respect to National Union's duties to advance Defense Costs to Duke in connection with the Underlying Claims.

**FOURTH CLAIM FOR RELIEF**
**(Declaratory Judgment Regarding Indemnification)**

83. Duke incorporates by reference Paragraphs 1 through 82 as though fully restated herein.

84. National Union sold Policies to Duke, which obligate National Union to pay "on behalf of [Duke] Loss arising from a Claim first made against [Duke] during the Policy Period . . .and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act of the Organization."

85. Furthermore, "Wrongful Acts" are defined to include any of Duke's breaches of duty, neglect, error, misstatements, misleading statements, omissions or acts, as well as libel, slander, or defamation.

86. National Union's indemnity obligations under one or more of the Policies in fact

were triggered by the allegations asserted in the Underlying Claims, because those allegations fall under the definition of "Wrongful Act."

87. Duke has fulfilled all of its duties under the National Union Policies, including any duty it may have had to notify National Union of the Underlying Claims, to provide National Union with information respecting the allegations in the Underlying Claims, and to cooperate with National Union.

88. Duke has demanded from National Union a payment of the indemnity it has incurred defending the Underlying Claims.

89. In spite of its duty to indemnify Duke for its settlement with the Three Duke Students, National Union refused to pay, and continues to refuse to pay, any of the settlement amount. As a result, Duke has been forced to bear the full financial impact of its settlement with the Three Duke Students.

90. In addition, Duke continues to litigate the player claims and the *Pressler* claim, all of which could result in further settlements or damages against Duke, and Duke should not again be forced to absorb the full financial impact of these results.

91. There is a justiciable controversy between Duke and National Union with respect to National Union's duties to indemnify Duke in connection with the Underlying Claims.

## FIFTH CLAIM FOR RELIEF
(Bad Faith Denial And Handling Of Claims)

92. Duke incorporates by reference Paragraphs 1 through 91 as though fully restated herein.

93. Although National Union acknowledged that the claims alleged in the Underlying Claims were potentially covered under one or both of the Policies and it thus had an obligation

14

and duty to protect Duke, National Union wrongfully refused (and continues to refuse) to indemnify Duke or advance Defense Costs to Duke.

94. Among other things, National Union:

   a. unreasonably and with wrongful intent withheld (and continues to withhold) payment of all of Duke's Defense Costs and indemnity expenses despite Duke's full compliance with all Policy requirements, and despite National Union's acknowledgment that certain of the Underlying Claims are potentially covered under one or both of the National Union Policies;

   b. denied Duke's claims under the Policies for Defense Costs and/or indemnity expenses even though it was aware that it lacked a legitimate, reasonable, or arguable basis for doing so;

   c. withheld payment of any of Duke's Defense Costs despite disputing only a portion of the Defense Costs incurred; and

   d. has otherwise acted in bad faith.

95. National Union's actions in regard to Duke's claims for indemnity and/or Defense Costs with respect to the Underlying Claims were willful, wanton, malicious, without justification or excuse, and taken in bad faith to further National Union's own improper objectives and with conscious intent to injure Duke and/or with disregard for the interests of Duke, to the prejudice and detriment of Duke, in violation of applicable common and statutory law.

96. Furthermore, National Union's conduct was intentional and motivated by National Union's own financial self-interest. In addition, upon information and belief, National Union's conduct was in willful and wanton disregard of its contractual and fiduciary obligations, and done with a reckless indifference for the rights of its insureds.

97. National Union did not act as a reasonable insurer would have acted under the same or similar facts and circumstances.

15

98. National Union's actions were repeated for each of the alleged Underlying Claims with such frequency as to indicate and establish a general business practice.

99. As a direct and proximate result of the bad faith conduct of National Union in wrongfully denying coverage to Duke, and wrongfully refusing to advance Defense Costs to Duke, Duke has sustained and incurred, and continues to incur, substantial damages and expenses.

100. As a direct, foreseeable, and proximate result of National Union's bad faith conduct and breach of their obligations to Duke, Duke is entitled to recover the full amount of its damages, including all incidental, consequential and compensable damages, along with pre-judgment interest and attorneys' fees.

101. As a direct and proximate result of the conduct of National Union as alleged hereinabove, Duke is entitled to recover, in addition to compensatory damages, punitive damages against National Union in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF
**(Unfair And Deceptive Trade Practices)**

102. Duke incorporates by reference the allegations set forth in Paragraphs 1 through 101 as though fully restated herein.

103. National Union's actions in connection with this matter have constituted violations of N.C. Gen. Stat. §§ 58-63-10 and 58-63-15, each of which constitute unfair and deceptive trade practices in violation of N. C. Gen. Stat. § 75-1.1 *et seq.* National Union's unfair and deceptive trade practices have included, without limitation, in addition to those actions described hereinabove, the following:

    a. even though National Union's obligations to advance Defense Costs to Duke and indemnify Duke for the Underlying Claims are reasonably clear,

16

US2008 500730.1

            National Union has not, in good faith, attempted to effectuate a fair and equitable settlement of Duke's Claims;

b.     National Union has compelled Duke to initiate this litigation to recover the amounts due to Duke under the Policies by offering substantially less (*i.e.* nothing) than the amounts Duke will ultimately recover from this litigation;

c.     National Union has attempted to settle Duke's Claims under the Policies for far less (*i.e.* nothing) than the amount a reasonable person would believe Duke is entitled to recover under the Policies;

d.     even though National Union's obligations to advance Defense Costs and indemnify Duke for the Underlying Claims are reasonably clear, (i) National Union has failed to promptly settle Duke's Claims for Defense Costs in order to influence Duke's settlement of its Claim for indemnification, and/or (ii) National Union has failed to promptly settle Duke's Claim for indemnification in order to influence Duke's settlement of its Claim for Defense Costs;

e.     National Union has unreasonably failed to acknowledge coverage and advance Defense Costs for the Underlying Claims;

f.     National Union failed and refused to provide coverage and a defense to Duke based on an unreasonable interpretation of the Policies;

g.     National Union otherwise engaged in unfair and deceptive practices in this matter.

h.     National Union's actions were repeated for each of the alleged Underlying Claims, such that National Union's acts were engaged in with such frequency as to indicate and establish a general business practice. National Union has therefore engaged in unfair and deceptive trade violations in violation of N.C. Gen. Stat. § 75-1.1 *et seq.*;

i.     such acts were in or affecting commerce; and/or

j.     such acts were the direct and proximate cause of damages to Duke.

US2008 500730.1

**PRAYER FOR RELIEF**

WHEREFORE, Duke respectfully demands judgment against National Union as follows:

1. On Duke's First and Second Claims for Relief, awarding Duke compensatory damages, in an amount to be determined at trial, arising from National Union's breach of its duties under the National Union Policies.

2. On Duke's Third and Fourth Claims for Relief, adjudging, decreeing and declaring, pursuant to N.C. Gen. Stat. § 1-254:

   a. that National Union, as a matter of fact and law, is liable to advance all sums for Duke's Defense Costs with respect to the Underlying Claims, and that National Union's duty to advance Defense Costs will continue until final resolution of the claims made against Duke in the Underlying Claims (each subject only to any applicable retentions and applicable limits of liability); and

   b. that National Union, as a matter of fact and law, is liable to indemnify Duke for any damages, fees (including attorneys' fees), expenses, settlement costs, disbursements or costs that Duke has paid or will be required to pay with respect to the Underlying Claims; each subject only to any applicable retentions and limits of liability.

3. On Duke's Fifth Claim for Relief, awarding Duke compensatory damages and punitive damages, in an amount to be determined at trial, arising from the bad faith denial and handling of Duke's claims under the Policies.

4. On Duke's Sixth Claim for Relief, awarding Duke, as against National Union, treble damages, pre- and post judgment interest, attorneys' fees, expenses, costs, settlement costs, and disbursements, pursuant to N.C. Gen. Stat. § 75-16 *et seq.*

5. On each of Duke's six Claims for Relief, awarding Duke, as against National Union, pre- and post-judgment interest, along with the fees incurred in this case (including attorneys' fees), expenses, settlement costs, disbursements and costs arising from this action; and

6. Granting Duke such other, further, and different relief as the Court deems just and proper.

This the 24th of November, 2008.

KILPATRICK STOCKTON LLP

/s/ Gregg E. McDougal
Gregg E. McDougal
N.C. State Bar No. 27290
gmcdougal@kilpatrickstockton.com
Betsy Cooke
N.C. State Bar No. 25353
bcooke@kilpatrickstockton.com
3737 Glenwood Avenue, Suite 400
Raleigh, NC 27612
Phone (919) 420-1800
Fax (919) 420-1700


GILBERT OSHINSKY LLP
Jerold Oshinsky
oshinskyj@gotofirm.com
Jonathan M. Cohen
cohenj@gotofirm.com
Ariel E. Shapiro
shapiroa@gotofirm.com
1100 New York Ave, N.W., Suite 700
Washington, D.C. 20005
Phone (202) 772-2200
Fax (202) 772-3333