## TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred under the doctrine of payment as Defendant has already paid all sums potentially owed under the Policies.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

In the alternative, Plaintiffs' claims are subject to set-off and/or recoupment.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for certain of the Defense Costs under the Policies is barred because only the 2006 Policy may apply to said Defense Costs and the Defense Costs must be reasonable and necessary and consented in writing by Defendant prior to Plaintiffs' incurring such costs, which is inapplicable under the instant facts. Among other things, the Defense Costs claimed by Plaintiff appear to be excessive, unreasonable, and, upon information and belief, unnecessary.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

DUKE UNIVERSITY et al v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA          Doc. 9

Plaintiffs' assertion that Defendant had a duty to defend the Plaintiffs pursuant to the Policies is barred since Plaintiffs never tendered the defense of any of the claims alleged in any of the Underlying Actions to Defendant.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for coverage under the 2006 Policy are barred by Exclusion 4(a), as modified by Endorsement #19.

Dockets.Justia.com

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for coverage under the 2006 Policy are barred by Exclusion 4(e).

### TWENTY-NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for coverage under the 2006 Policy are barred by Exclusion 4(p), as modified by Endorsement #4.

### THIRTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims for coverage under the 2006 Policy are barred by Exclusion 4(l).

### RESERVATION AND NON-WAIVER

Defendant reserves the right to plead additional affirmative defenses which may be adduced through further investigation, discovery, or at trial.

### COUNTERCLAIM

Pursuant to Fed. R. Civ. P., Rule 13(a)(1), Defendant National Union, counterclaiming against Plaintiffs, Duke and DUHS, alleges and says as follows:

1.     National Union is a foreign liability insurer, operating in the State of North Carolina pursuant to a certificate of authorization issued by the North Carolina Department of Insurance.

2.     Duke is a private non-profit educational institution chartered in the State of North Carolina with its principal place of business in Durham County, North Carolina.

3. DUHS is a private non-profit corporation organized under the State of North Carolina, with a principal place of business in Durham County, North Carolina.

4. For the period of December 4, 2005 until December 4, 2006, National Union issued to Duke a Not-For-Profit Individual and Organization Insurance Policy, bearing policy number 625-03-42 (hereinafter "the 2006 Policy"). A true copy of the 2006 Policy is attached hereto as Exhibit F.

5. Section 7(c) of the 2006 Policy provides as follows:

If during the Policy Period or during the Discovery period (if applicable) the Insureds shall be come aware of any circumstances which may reasonably be expected to give rise to a Claim being made against the Insured and shall give written notice to the Insurer of the circumstances and reasons for anticipating such a claim, with full particulars as to the dates, persons, and entities involved, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

6. On March 14, 2006, a woman alleged that she had been sexually assaulted by certain members of the 2005-2006 Duke Men's Lacrosse Team ("the Lacrosse Team").

7. On March 30, 2006, Duke mailed a letter with attached articles to National Union ("the March 30, 2006 letter"). A true copy of the articles attached by Duke to the March 30, 2006 letter to National Union is attached hereto as Exhibit A. The March 30, 2006 letter references the 2006 Policy and states as follows:

Please accept this letter and attached documentation as notification of an incident only as required by the policy conditions under the referenced policy. No claim has been made against Duke at this time. Rather than repeat the alleged circumstances, I have attached

a number of newspaper articles that summarize all that is publicly known about the situation at this time.

8.  On April 19, 2007, Duke advised National Union in writing that members of the Lacrosse Team had advised Duke that they were considering legal action against Duke and/or members of Duke's academic faculty "related to the incident" outlined in the March 30, 2006 letter. Duke also advised in the April 19, 2007 letter that it had retained the Wilmer Hale law firm to represent its interests.

9.  In response to the April 19, 2007, letter, on April 23, 2007, National Union advised Duke that the content of the April 19, 2007 letter was not a "Claim" as defined under the 2006 Policy, but that National Union would treat the letter as a continuing Notice of Circumstance relating back to March 30, 2006. National Union also specifically advised that Duke should not "admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of" National Union.

10.  On June 18, 2007, Duke verbally advised National Union for the first time that it had entered into a settlement with the Duke Three - David Evans, Collin Finnerty, and Reade Seligmann (the three members of the Lacrosse Team that had been indicted on charges of sexual assault which charges were later dismissed) - to resolve any claims the Duke Three may have had against Duke, and its staff and faculty. On that same day, Duke University publicly issued a "STATEMENT OF THE BOARD OF TRUSTEES AND THE PRESIDENT OF DUKE UNIVERSITY" stating that "This has been an extraordinary year for Duke students David Evans, Collin Finnerty and Reade Seligmann, who were accused of serious crimes they did not commit. In April, after a thorough review, the North Carolina Attorney General declared that they were innocent

of all charges and that the charges never should have been brought. We welcomed their exoneration and deeply regret the difficult year they and their families have had to endure. . . . The Board of Trustees and the President have also determined that it is in the best interests of the Duke community to eliminate the possibility of future litigation and move forward. For these reasons, and after considerable deliberation, the trustees have agreed to a settlement with each student."

11. After learning of Duke's settlement with the Duke Three, National Union reminded Duke that only settlements, stipulated judgment and defense costs which had been consented to by National Union could be recoverable under the policy.

12. Duke subsequently advised National Union that Duke would not share information with National Union on its settlement with the Duke Three due to the confidentiality provisions of the settlement.

13. In August of 2007, Duke advised National Union that Duke had been in discussions with the parents of certain of the unindicted members of the Lacrosse Team since January of 2007, but that there had been no written demands for monetary relief.

14. Also in August of 2007, Duke advised National Union that it had been contacted by Robert Ekstrand, an attorney for three of the unindicted members of the Lacrosse Team, and their respective families.

15. On September 24, 2007, attorneys for Duke met with attorneys for thirty-seven of the unindicted members of the Lacrosse ("the *Carrington* Attorneys"). Duke advised National Union of the meeting between its attorneys and the *Carrington*

Attorneys by way of letter dated October 1, 2007, which letter also confirmed that no formal demand had been made.

16. In response to Duke's letter of October 1, 2007, National Union informed Duke by way of a letter dated October 2, 2007, that based upon the information provided by Duke the players had not asserted a Claim, as that term is defined under the 2006 Policy, and that National Union would continue to treat the information as a continuing Notice of Circumstance relating back to the March 30, 2006 letter.

17. On October 16, 2007, National Union informed Duke via letter that until such time as it was informed that a Claim was made against the 2006 Policy, there could be no coverage for Duke's legal fees under the 2006 Policy.

18. On December 3, 2007, Duke informed National Union in writing that, ten months earlier it had received a request on behalf of the unindicted members of the Lacrosse Team to consider waiving the statute of limitations so that discussions could continue ("the December 3, 2007 letter").

19. Later on the same day – December 3, 2007 - National Union sent an email to Duke confirming receipt of the December 3, 2007 letter, which set forth that the December 3, 2007 letter constituted Duke's initial reporting of a Claim based upon "any request to toll or waive any statute of limitations", that this "is the first time this request for a waiver of the statute of limitations was reported to National Union", that a detailed coverage analysis from National Union would follow shortly, and that "National Union must reserve all of its other Policy rights and coverage defenses" and "acknowledges that Duke reserves all of its Policy rights and coverage defenses as well."

20.     On December 17, 2007, three unindicted members of the Lacrosse Team filed suit against Duke and DUHS and certain individuals employed by Duke and DUHS in an action styled *McFadyen, et al. v. Duke University, et al*, No. 1:07-CV-953 (M.D.N.C.) (hereinafter "the *McFadyen* Action").

21.     On February 6, 2008, National Union sent a letter to Duke pertaining to the allegations made by members of the Lacrosse Team which, among other things, confirmed that the allegations arose out of the circumstances reported by Duke to National Union in the March 30, 2006 letter. A redacted copy of the February 6, 2008 letter is attached hereto as Exhibit B.

22.     The February 6, 2008 letter disclaimed coverage for DUHS, Tara Levicy, and Theresa Arico based primarily on the fact that the allegations arose out of or were based upon medical or professional services not covered under the 2006 Policy. Subsequently, National Union also confirmed that coverage for Julie Manley was disclaimed on the same basis.

23.     On February 21, 2008, thirty-eight other unindicted members of the Lacrosse Team, and several of their parents, filed suit against Duke, DUHS, and certain individuals employed by Duke and DUHS in an action styled *Carrington, et al. v. Duke University, et al.*, No. 1:08-CV-119 (M.D.N.C.) (hereinafter "the *Carrington* Action").

24.     On April 23, 2008, National Union sent Duke a letter, acknowledging potential coverage for Duke and several of its employees under the 2006 Policy, subject to a full reservation of rights for claims asserted against them in the *Carrington* Action.

25. In September 2007, the former head coach of the lacrosse team, Michael Pressler filed a lawsuit in Durham Superior Court seeking rescission of a settlement agreement which he previously entered into with Duke, in an action styled *Pressler v. Duke University, et al.*, bearing file number 07 CVS 5223 (hereinafter "*Pressler I* Action").

26. In January of 2008, the *Pressler I* Action was voluntarily dismissed, and a new action was filed in Durham Superior Court solely for defamation, styled *Pressler v. Duke University, et al.*, and bearing file number 08 CVS 1311 (hereinafter "*Pressler II* Action").

27. On April 8, 2008, National Union sent Duke a letter under a reservation of rights, acknowledging potential coverage for Duke and John F. Burness for the allegations in the *Pressler II* Action under the 2006 Policy. A copy of the April 8, 2008 letter (with names redacted) is attached hereto as Exhibit D.

28. In the *McFadyen* Action, the *Carrington* Action, *Pressler I*, and *Pressler II* (collectively "the Underlying Actions"), the plaintiffs' allegations arise from the circumstances which were the subject of the March 30, 2006 letter.

29. In the *McFadyen* Action and the *Carrington* Action (collectively "the Player Actions"), the plaintiffs allege that Duke wrongfully blamed the plaintiffs for the alleged rape of March 14, 2006, in violation of their constitutional and other rights.

30. Under the Defense Provisions of the 2006 Policy, neither of the Plaintiffs ever tendered to Defendant the defense of any of the claims alleged in any of the Underlying Actions. As provided for in the 2006 Policy, Plaintiffs retained control of their defense and selected their own counsel to defend the Underlying Actions.

31.     Despite written requests by National Union, Plaintiffs refused to submit to National Union any of the bills for defense costs for any of the Underlying Actions until June 2008 at which time they supplied a portion of the bills. Plaintiffs did not supply the majority of the bills for the defense costs for the Underlying Actions until less than 30 days prior to the institution of this action by Plaintiffs.

32.     Pursuant to the 2006 Policy, Defendant has advanced and paid to Plaintiff Duke University as defense costs the full $5,000,000.00 policy limit.

33.     This action is commenced pursuant to 28 U.S.C. § 2201, *et seq*, seeking a declaration of the rights, status, and obligations of National Union, Duke, and DUHS pursuant to the 2006 Policy and the 2007 Policy with respect to the claims set forth in the Underlying Actions arising out of the false allegation of sexual assault made against members of the Lacrosse Team on March 14, 2006, and the immediate response to said allegations by Plaintiffs.

### FIRST COUNTERCLAIM FOR RELIEF
**(Applicability of 2007 Policy)**

34.     The allegations contained in Paragraphs 1 through 33 of this Counterclaim are realleged and incorporated herein by reference.

35.     The 2006 Policy is a "claims-made" liability insurance policy which, subject to its terms and conditions, provides coverage for Claims which are first made against an insured under the policy during the policy period and reported to National Union pursuant to the terms of the 2006 Policy for any actual or alleged wrongful act.

36.     The March 30, 2006 letter provided National Union with information regarding the alleged sexual assault of Crystal Mangum by members of the

Lacrosse Team, the aftermath of the allegation, including the adverse public statements concerning the Lacrosse Team, and the alleged violation of the constitutional rights and statements by DUHS personnel regarding the results of their examination of Crystal Mangum.

37.     The March 30, 2006 letter is a Notice of Circumstance under the 2006 Policy, providing National Union with facts and information out of which arose the claims which were settled by the Duke Three with Duke, the Players Actions, the *Pressler I* Action, and the *Pressler II* Action.

38.     National Union has acknowledged potential coverage, subject to a complete reservation of rights, for Duke under the 2006 Policy.

39.     For the period of December 4, 2006 until December 4, 2007, National Union issued to Duke a Not-For-Profit Individual and Organization Insurance Policy, bearing policy number 965-76-25 (hereinafter "the 2007 Policy"). A true copy of the 2007 Policy is attached hereto as Exhibit G.

40.     The 2007 Policy is a "claims-made" policy, providing coverage, subject to applicable exclusions, retentions, and limits of liability for claims arising from "wrongful acts" which are first made against an Insured in the policy term and first reported to National Union. During the 2007 Policy, the policy term was from December 4, 2006 until December 4, 2007.

41.     The coverage provided by the 2007 Policy is subject to a self-liquidating aggregate Limit of Liability of $10 million excess of a self-insured Retention of $500,000 for Loss arising from Claims alleging the same Wrongful Act or related Wrongful Acts.

42. Included in the 2007 Policy is an Exclusion 4(c), which provides in pertinent part that National Union shall not be liable to make any payment for Loss in connection with a Claim alleging or arising out of any circumstances of which notice has been given under a prior policy.

43. The 2007 Policy excludes coverage for any Loss in connection with a Claim alleging or arising out of the March 30, 2006 Letter pursuant to Exclusion 4(c) of the 2007 Policy.

44. National Union is entitled to a Judgment declaring the following:

    a.    The settlement with the Duke Three, the *McFadyen* Action, the *Carrington* Action, the *Pressler I* Action, and the *Pressler II* Action are only afforded potential coverage by the 2006 Policy, subject to the terms and conditions of the 2006 Policy, pursuant to the Notice of Circumstance provided in the March 30, 2006 Letter;

    b.    There is no coverage under the 2007 Policy for the settlement with the Duke Three, the *McFadyen* Action, the *Carrington* Action, the *Pressler I* Action, and the *Pressler II* Action pursuant to Exclusion 4(c) of the 2007 Policy; and

    c.    Defendant has satisfied any and all obligations owed to both of the Plaintiffs under the 2006 Policy.

## SECOND COUNTERCLAIM FOR RELIEF
### (Settlement with the Duke Three)

45.     The allegations contained in Paragraphs 1 through 44 of this Counterclaim are realleged and incorporated herein by reference.

46.     Duke never sought National Union's consent to enter into a settlement with attorneys for the Duke Three or the Duke Three.

47.     National Union never provided written consent to Duke to enter into a settlement with the Duke Three or the attorneys for the Duke Three.

48.     Duke has not even provided National Union with a copy of the settlement with the Duke Three.

49.     According to Clause 8 of the 2006 Policy, National Union is not obligated to contribute or indemnify Duke for its settlement with the Duke Three, in that, upon information and belief, Duke may have admitted or assumed liability with the Duke Three, entered into a settlement agreement with the Duke Three, and incurred legal fees without effectively associating with, or seeking and obtaining the written consent of, National Union.

50.     National Union is therefore entitled to a Judgment declaring that it is not obligated to contribute towards or indemnify Duke with respect to its settlement with the Duke Three.

## THIRD COUNTERCLAIM FOR RELIEF
### (Defense Costs incurred prior to December 3, 2007)

51.     The allegations contained in Paragraphs 1 through 50 of this Counterclaim are realleged and incorporated herein by reference.

52. Under the 2006 Policy, Duke was first required to obtain the written consent of National Union prior to incurring Defense Costs.

53. The 2006 Policy provides coverage and reimbursement for defense costs only in the defense of a Claim.

54. Duke only provided National Union with information which arose to the level of a Claim, as defined by the 2006 Policy, by way of the December 3, 2007 letter from Duke to National Union.

55. National Union did not provide Duke with written consent for the incursion of defense costs until receipt of this December 3, 2007, letter.

56. National Union is entitled to a Judgment declaring that Duke is not entitled to recover its defense costs under the 2006 Policy from National Union for any costs incurred prior to December 3, 2007.

## FOURTH COUNTERCLAIM FOR RELIEF
### (No Coverage for DUHS, Levicy, Manley, or Arico under the 2006 Policy)

57. The allegations contained in Paragraphs 1 through 57 of this Counterclaim are realleged and incorporated herein by reference.

58. In the Player Actions, the plaintiffs name as defendants, among others, DUHS, Theresa Arico, Julie Manley, and Tara Levicy. Against DUHS, Arico, Manley, and Levicy, the plaintiffs in both actions allege claims for relief which arise out of the medical examination each conducted with respect to the accuser, Crystal Mangum, in violation of their collective responsibilities "to provide forensic medical evidence collection and analysis services in the investigation."

59. In response to the plaintiffs' Complaints in the Player Actions, DUHS, Arico, Manley, and Levicy have stated:

Plaintiffs assert that the Duke health care providers [DUHS, Arico, Levicy] owed them a duty to use due care in the "forensic and/or medical examinations of Mangum," and that this duty included an obligation to use due care in assessing and reporting the results of that examination. (Compl. ¶ 505.) Plaintiffs further assert that the health care providers breached these duties by performing these clinical services in a subpar matter

* * *

Such claims are for medical malpractice, which is defined by North Carolina statute as an action that "aris[es] out of the furnishing [of] ... professional services in the performance of medical ... or other health care by a health care provider." N.C. Gen. Stat. § 90-21.11.

60.     Included in the 2006 Policy is an Exclusion 4(o), as modified by

Endorsement #4, which provides that National Union shall not be liable to make payment

for Loss in connection with a Claim made against an Insured:

Alleging, arising out of, based upon or attributable to the Insured's performance or rendering of or failure to perform or render medical or other professional services or treatments for others ...

61.     The claims made against DUHS, Levicy, Manley, and Arico in the

Players Actions arise out of the fact that DUHS was retained to provide medical and

other professional services to the investigation of Crystal Mangum's allegation of rape

and sexual assault against members of the Lacrosse Team.

62.     DUHS, Levicy, Manley, and Arico have asserted in their responses

to the Players Actions that the Players Actions against them arise out of the furnishing of

professional services and are properly characterized as a medical malpractice action.

63.     Upon information and belief, Durham Casualty Company, Ltd.

("DCC"), provided to DUHS a policy of insurance (hereinafter "the DCC Policy") which

specifically covers claims arising out of medical services. DCC is a captive insurance company that is wholly owned by Plaintiff Duke University.

64. National Union is entitled to a Judgment declaring that the 2006 Policy provides no coverage to DUHS, Levicy, Manley, or Arico for the claims made against them in the Players Actions.

**FIFTH COUNTERCLAIM FOR RELIEF**
**(Attorneys Fees)**

65. The allegations contained in Paragraphs 1 through 64 of this Counterclaim are realleged and incorporated herein by reference.

66. Plaintiffs' allegations in the Complaint that Defendant's conduct violated N.C.G.S. § 75-1.1 *et seq*, and constituted violations of the provisions N.C.G.S. §§ 58-63-10 and 58-63-15, are knowingly unfounded, malicious, frivolous, and in bad faith.

67. Defendant is entitled to recover its costs and its reasonable attorneys fees expended in this action pursuant to the provisions of N.C.G.S. § 75-16.1.

**THIRD-PARTY COMPLAINT AGAINST UNITED EDUCATORS INSURANCE,**
**A RECIPROCAL RISK RETENTION GROUP**

Pursuant to Fed. R. Civ. P., Rule 14, Third-Party Plaintiff National Union Fire Insurance Company of Pittsburgh, Pa., claiming against the Third-Party Defendant, United Educators Insurance, a Reciprocal Risk Retention Group, alleges and says as follows:

1. National Union Fire Insurance Company of Pittsburgh, Pa. (hereinafter "National Union") hereby incorporates and realleges its allegations in

37

response to the Plaintiffs' Complaint, its affirmative defenses, and its counterclaims alleged against Plaintiffs.

2.    United Educators Insurance, a Reciprocal Risk Retention Group ("UE") is a foreign insurance company in the business of offering policies of insurance in the State of North Carolina, with due authorization from the North Carolina Department of Insurance. UE's principal place of business is in the State of Maryland.

3.    From January 1, 2006, to January 1, 2007, UE had in effect a general liability policy of insurance bearing policy number GLX20060004400 which was issued to Plaintiff Duke University (hereinafter "the UE Policy"). From January 1, 2007, to January 1, 2008, UE had in effect a subsequent general liability policy of insurance bearing policy number GLX20070004400 which was also issued to Plaintiff Duke University.

4.    The applicable liability limit for the UE Policy is $25 million.

5.    From December 4, 2005, to December 4, 2006, UE also had in effect a directors and officers liability policy bearing policy number ELA200500044000 which provided a $5 million limit of liability.

6.    Upon information and belief, UE has acknowledged potential coverage for the allegations alleged in the Players Actions under the UE Policy.

7.    The 2006 Policy issued by National Union contains an "other insurance" clause which provides:

> Such insurance as is provided by this policy shall apply only as excess over any valid and collectible insurance. This policy shall be specifically excess of any other policy pursuant to which any other has a duty to defend a Claim for which this policy may be obligated to pay Loss.

8.     The UE Policy contains an "other insurance" clause which provides:

> This Policy shall at all times be excess over the greater of the Underlying Limit Retention amount, or the amount of any other insurance (including any insurance naming the Insured as "additional insured") available to the Insured covering an Occurrence covered by this Policy (other than insurance that is expressly and specifically excess of the limits of this Policy or quota-share in the same layer as this Policy), and nothing in this Policy or in any other policy shall be construed to require this Policy to contribute with, or subject this Policy to the conditions, conditions or limits of, such other insurance.

## FIRST THIRD-PARTY CLAIM FOR RELIEF
### (Pro-rata Contribution to National Union from UE)

9.     The allegations contained in Paragraphs 1 through 8 of this Counterclaim are realleged and incorporated herein by reference.

10.     Both the 2006 Policy and the UE Policy afford potential coverage to Duke and its employees for the allegations set forth in the Underlying Actions.

11.     The "other insurance" clauses in the UE Policy and the 2006 Policy are of identical effect and are inconsistent and mutually repugnant.

12.     Neither the "other insurance" clause of the UE Policy or the 2006 Policy can be given full effect according to its terms.

13.     The UE Policy was delivered to Plaintiff Duke University in the State of North Carolina

14.     According to North Carolina law, neither the "other insurance" clause of the UE Policy nor the 2006 Policy can be given effect, and in such instances, UE and National Union are required to contribute *pro rata* according to their respective policy limits towards the costs of defense and settlement of Plaintiffs with the claimants

in the Underlying Actions, subject to the remaining terms and conditions of the 2006 Policy and the UE Policy.

15. The applicable limits of the UE Policy are five times greater than the applicable limits of the 2006 Policy, and thus, the relative *pro rata* contribution between UE and National Union are one-sixth (16.7%) to National Union of the fair and reasonable legal fees incurred on behalf of Duke, and five-sixths (83.3%) to UE of the fair and reasonable legal fees incurred on behalf of Duke, subject to the terms, limits and obligations of the 2006 Policy and the UE Policy.

16. National Union is responsible for only one-sixth (16.7%) of the fair and reasonable legal fees incurred on behalf of Duke in the Underlying Actions, subject to the terms, limits and obligations of the 2006 Policy and UE is responsible for five-sixth (83.3%) of the fair and reasonable legal fees incurred on behalf of Duke in the Underlying Actions, subject to the terms, limits and obligations of the UE Policy.

17. National Union is entitled to recover from UE any amount it has paid in excess of its 1/6 share of Plaintiffs' covered loss.

## SECOND THIRD-PARTY CLAIM FOR RELIEF
### (Equitable Subrogation for National Union from UE)

18. The allegations contained in Paragraphs 1 through 17 of this Counterclaim are realleged and incorporated herein by reference.

19. National Union, under a reservation of rights and pursuant to the 2006 Policy, has advanced to Duke the $5 million policy limits of the 2006 Policy.

20. The policy limits advanced to Duke under the 2006 Policy cover Plaintiffs' defense costs as a result of the Underlying Actions.

21.     Pursuant to the terms of the UE Policy, has a duty to pay on behalf of Duke defense costs incurred in connection with the Underlying Actions up to its limit of liability. UE has thus far refused, upon information and belief, to pay such defense costs.

22.     National Union is thus entitled to recover by equitable subrogation from UE according to the liability limits of the UE Policy in an amount to be determined at trial.

### THIRD THIRD-PARTY CLAIM FOR RELIEF
### (Declaratory Judgment)

23.     The allegations contained in Paragraphs 1 through 22 of this Counterclaim are realleged and incorporated herein by reference.

24.     This action is commenced pursuant to 28 U.S.C. § 2201, *et seq*, seeking a declaration of the rights, status, and obligations of National Union and UE under the applicable insurance policies with respect to Plaintiffs' claims for defense costs and indemnification arising out of the Underlying Actions.

25.     National Union is entitled to a declaratory judgment stating that:

a.      The UE Policy is applicable with respect to certain of the Underlying Action allegations and the defense costs incurred in the Underlying Actions and the "other insurance" clauses in the 2006 Policy and UE Policy are inconsistent, mutually repugnant and cannot be reconciled .

b.      National Union is responsible for only one-sixth (16.7%) of the fair and reasonable legal fees incurred on behalf of

Plaintiffs in the Underlying Actions, subject to the terms, limits and obligations of the 2006 Policy; and

c. UE is responsible for five-sixths (83.3%) of the fair and reasonable legal fees incurred on behalf of Plaintiffs in the Underlying Actions, subject to the terms, limits and obligations of the UE Policy.

WHEREFORE, National Union respectfully prays the Court that:

1. Plaintiffs' claims for relief against National Union be denied in their entirety;

2. It enter a Declaratory Judgment pursuant to 28 U.S.C. § 2201, *et seq.*, adjudging, decreeing and declaring that:

 a. There is no coverage under the 2007 Policy for Plaintiffs in the Underlying Actions;

 b. There is no coverage under the 2006 Policy for Plaintiffs for Duke's settlement with the Duke Three;

 c. There is no coverage under the 2006 Policy for Plaintiffs for defense costs incurred by Plaintiffs prior to December 3, 2007;

 d. There is no coverage for DUHS, Levicy, Manley, or Arico under the 2006 Policy;

 e. Defendant has complied with all obligations owed to Plaintiffs under both the 2006 Policy and the 2007 Policy; and

f.  The "other insurance" clauses in the 2006 Policy and UE Policy are inconsistent, mutually repugnant and cannot be reconciled.

3.  National Union recover equitable subrogation from UE in an amount to be determined at trial arising from UE's refusal to pay defense costs in the Underlying Actions;

4.  The costs of this action be taxed against some party other than National Union;

5.  National Union recover its attorneys fees and other costs from Plaintiff; and

6.  National Union have and recover such other relief as the Court may deem just and proper.

This the 16th day of January, 2009.

BAILEY & DIXON, LLP

By: /s/ David S. Coats_____
    David S. Coats, N.C. State Bar No. 16162
    dcoats@bdixon.com
By: /s/ Dayatra T. King_____
    Dayatra T. King, N.C. State Bar No. 24355
    dking@bdixon.com
By: /s/ J.T. Crook_____
    J.T. Crook, N.C.S.B. 35232
    jcrook@bdixon.com
Attorneys for Defendant
Post Office Box 1351
Raleigh, North Carolina 27602
Telephone: (919) 828-0731
Facsimile: (919) 828-6592

## CERTIFICATE OF SERVICE

    I hereby certify that on the 16th day of January, 2009, I electronically filed the foregoing Answer, Counterclaim, and Third-Party Complaint with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

        Gregg E. McDougal
        Betsy Cooke
        Kilpatrick Stockton, LLP
        3737 Glenwood Ave, Suite 400
        Raleigh, NC 27612
        gmcdougal@kilpatrickstockton.com
        bcooke@kilpatrickstockton.com

        Jerold Oshinsky
        Jonathan M. Cohen
        Ariel Shapiro
        1100 New York Ave, N.W., Suite 700
        Washington, D.C. 20005
        Oshinskyj@gotofirm.com
        cohenj@gotofirm.com
        shapiroa@gotofirm.com

        This the 16th day of January, 2009.


            /s/ David S. Coats
            David S. Coats