UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | | |
|---|---|---|
| DUKE UNIVERSITY AND DUKE UNIVERSITY HEALTH SYSTEM, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | ) ) ) | Case Number: 1:08-CV-0854 |
| Defendant and Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| UNITED EDUCATORS INSURANCE, A RECIPROCAL RISK RETENTION GROUP, | ) ) ) | |
| Third-Party Defendant. | ) | |

**MEMORANDUM OF THIRD-PARTY DEFENDANT
UNITED EDUCATORS IN SUPPORT OF ITS MOTION TO DISMISS
OR STAY NATIONAL UNION'S THIRD-PARTY COMPLAINT**

Dockets.Justia.com

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................... 1

STATEMENT OF FACTS AND CIRCUMSTANCES ........................................................ 3

    A.    The Parties and the Insurance Policies ........................................................... 3

    B.    National Union's Third-Party Complaint ...................................................... 4

    C.    Salient Features of the Insurance Policies ..................................................... 4

    D.    The Importance of the Arbitration Provisions ............................................. 6

STATEMENT OF QUESTIONS PRESENTED .................................................................. 6

ARGUMENT ............................................................................................................................. 7

I.    THE COURT SHOULD DISMISS OR STAY THE THIRD-PARTY
    COMPLAINT BECAUSE THE COVERAGE ISSUES IT RAISES ARE
    SUBJECT TO ARBITRATION ................................................................................ 7

    A.    The Issues Presented by the Third-Party Complaint Are Within the Scope
        of a Mandatory Arbitration Clause .................................................................. 7

    B.    The Fact That National Union Is Not a Party to the
        Arbitration Agreement Does Not Change the Result ..................................... 8

II.    THE COURT SHOULD EXERCISE ITS DISCRETION UNDER RULE 14
    TO DISMISS THE THIRD-PARTY COMPLAINT .......................................... 10

III.    THE THIRD-PARTY COMPLAINT IS NOT RIPE AND THUS FAILS TO
    STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED ..................... 12

    A.    National Union's Contribution Claim Is Premature ................................... 12

    B.    National Union Has No Ripe Claim for Equitable Subrogation ............... 13

IV.    NATIONAL UNION'S CONTRIBUTION CLAIM FAILS AS A MATTER
    OF LAW BECAUSE THE UE EXCESS POLICY DOES NOT PROVIDE
    COVERAGE ON THE BASIS THAT NATIONAL UNION SUGGESTS ........ 15

    A.    United Educators Has No Present Obligation to Pay .................................. 16

    B.    The "Other Insurance" Provisions Are Not Mutually Repugnant ............. 16

V.    NATIONAL UNION'S CLAIM FOR DECLARATORY JUDGMENT WILL
    NOT SALVAGE ITS THIRD PARTY COMPLAINT ...................................... 20

CONCLUSION ...................................................................................................................... 20

# INTRODUCTION

Duke University is defending against claims and suits that arose in the aftermath of the false allegations of rape involving Duke's lacrosse team. Duke filed this case against National Union seeking insurance coverage for these claims and suits. National Union has now filed a third-party complaint against United Educators, which issued an excess liability policy to Duke, citing theories of equitable contribution, equitable subrogation and declaratory judgment. This Court should dismiss the third-party complaint. National Union's theories fail because they misstate the coverage provided by the United Educators policy. But there is no need to, and the Court ought not, address these coverage issues because National Union's claims may not be pursued in this forum and are premature in any event.

1.      The United Educators policy requires that disputed coverage issues be resolved in arbitration. Section 3 of the Federal Arbitration Act mandates stay or dismissal of a suit brought "upon any issue referable to arbitration." As National Union's claims depend on disputed issues of coverage under the United Educators policy, this Court must dismiss the third-party complaint.

2.      Federal Rule of Civil Procedure 14 grants the Court discretion to dismiss a third-party claim if its adjudication would prejudice the plaintiff (Duke) or the third-party defendant (United Educators). Here the third-party claims would undermine the agreement between Duke and United Educators to resolve disputes in an arbitral forum and prejudice them by prematurely forcing them to air disputes in a public forum even as Duke defends the underlying claims.

3.      National Union's claims are premature by their own terms. The underlying lawsuits are ongoing, defense costs are still being incurred, and the dollar amount ultimately

required to resolve the lacrosse claims remains unknown. An insurer's claim for equitable contribution does not arise until it is clear that the insurer is truly being asked to pay more than it owes — and this cannot be determined until the amount of any common obligation is determined. Similarly, a claim for equitable subrogation arises only if an insurer pays an obligation that it does not itself owe under its policy, not to an insurer who pays an amount that it does owe.

4.      If this Court were to pass these preliminary points and proceed to interpret the UE Excess Policy – which the Court should not do for the reasons set forth above – National Union has failed to state a claim upon which relief can be granted because its claims are inconsistent with controlling provisions of the insurance policies, including:

a.      Whereas National Union is contractually obligated to advance defense costs to Duke while the underlying litigation remains ongoing, the United Educators policy unambiguously provides that United Educators has no obligation to pay defense costs until Duke's liability in the underlying lacrosse actions is finally resolved by judgment or settlement.

b.      The plain terms of the "other insurance" provisions in the United Educators and National Union policies unequivocally establish National Union's policy as the first-line coverage, which must be exhausted before United Educators' policy can be called upon to provide coverage. The UE Excess Policy purchased by Duke specifically provides that it *does not contribute with* any other policy, and National Union's contribution theory must fail.

For these reasons, discussed below, the Court should dismiss the Third Party Complaint.

STATEMENT OF FACTS AND CIRCUMSTANCES

**A.      The Parties and the Insurance Policies**

1.      Plaintiff Duke University is currently the target of several lawsuits arising from its response to allegations that members of the 2005-2006 Duke men's lacrosse team were involved in a rape.  Two lawsuits, pending in this Court, were filed by groups of former team members and some of their parents.  The team's former coach also alleges a claim in North Carolina state court.

2.      On November 24, 2008, Duke filed this action against National Union Fire Insurance Company of Pittsburgh, P.A. ("National Union"), a subsidiary of American International Group, Inc. ("AIG").  Duke's Complaint alleges that National Union wrongfully failed to provide defense and indemnity coverage to Duke for the lacrosse claims.

3.      The two policies on which Duke has sued National Union were issued on AIG trademarked forms under the service-mark "Not-For-Profit Protector."  The first Protector policy was in effect from 12/4/05-12/4/06 and has policy limits of $5 million and is the one that National Union relies on here, as quoted below; the second covered 12/4/06-12/4/07 and has limits of $10 million.  Each provides claims-made coverage for "loss" in connection with "wrongful acts."  They also cover Duke's "defense costs" and require National Union to "advance" the costs of a claim "prior to its final disposition," with such advanced funds subject to repayment if later determined to have been paid for a loss not covered by the policy.

4.      Third-party defendant United Educators is not a conventional insurance company.  Rather, it is a Reciprocal Risk Retention Group – *i.e.*, an insurance and risk management facility authorized by federal law that is owned by its member organizations, including Duke.  United

3

Educators' 1100 members include a wide range of schools, colleges and universities. United Educators' unique focus enables it to work cooperatively with its member-owners to help prevent losses and minimize their liabilities.

5.     For the period 1/1/06 to 1/1/07, United Educators provided excess liability coverage to Duke under its Excess Liability Insurance Policy No. GLX20060004400, an occurrence-based policy with limits of $25 million (the "UE Excess Policy").

**B.     National Union's Third-Party Complaint**

6.     National Union purports to assert a Third-Party Complaint against United Educators based on the UE Excess Policy. National Union's theory is that if National Union is found to owe money to Duke, National Union can insist that United Educators share the burden because United Educators also provided insurance to Duke and, under *National Union*'s interpretation of the UE Excess Policy, it also owes coverage to Duke at this time.

7.     For National Union to prevail on its third-party claims, National Union would have to prevail on *all* of the coverage issues that determine whether or to what extent United Educators' has obligations *to Duke* under the UE Excess Policy. Thus, beyond the specific provisions of the UE Excess Policy discussed below, there may be other reasons why United Educators does not owe coverage to Duke. As explained below, none of those issues can properly be resolved in this forum because they are all reserved to arbitration and premature in any event.

**C.     Salient Features of the Insurance Policies**

8.     The UE Excess Policy differs significantly from National Union's "Protector."

a.    First, the UE Excess Policy is clearly designated an "Excess Liability Insurance Policy," meaning, in conventional parlance, that it sits above other applicable policies and retentions.  National Union's policies are described as a front line "Not-For-Profit Protector."

b.    Second, the Protector Policies specifically require National Union to advance defense costs (subject to recoupment) to Duke <u>before</u> final disposition of a claim against Duke – *i.e.*, while defense costs are being incurred.  In contrast, the UE Excess Policy states that United Educators will pay "damages," defined to include defense costs, "as soon as practicable *after* . . . the Insured's liability has been established by judgment after actual trial or by written agreement to which we have consented[.]"  UE Excess Policy ¶ 6 (emphasis added).[1]

c.    Third, National Union's "other insurance clause" is the *standard* type frequently held to be subject to contribution:

> Such insurance as is provided by this policy shall apply only as excess over any valid and collectible insurance.

National Union Policy § 14.  In contrast, the UE Excess Policy that Duke purchased from United Educators makes clear that it does <u>not</u> contribute with any other policy:

> This policy shall at all times be excess over the greater of the Underlying Limit Retention amount, or the amount of any other insurance (including any insurance naming any Insured as "additional insured") available to the Insured covering an Occurrence covered by this Policy . . . and *nothing in this Policy or in any other policy shall be construed to require this Policy to contribute with,* or subject this Policy to the terms, conditions or limits of, *such other insurance.*

---

[1] Specifically, "Damages" includes "Defense Costs," which "means the fees and expenses of investigation and defense of Claims . . . and includes reasonable attorneys' fees and disbursements[.]"  *Id.*, Definitions, ¶ 2.

UE Excess Policy, ¶ 26 (emphasis added).

     d.     Fourth, the UE Excess Policy provides for binding arbitration: "All disputes that may arise between the Insureds and [United Educators] in relation to this policy, or for its breach, shall be finally settled by arbitration held according to the Commercial Arbitration Rules of the American Arbitration Association. . . . The legal situs of the arbitration shall be New York, New York…." UE Excess Policy ¶¶ 18-19.

     e.     Fifth, the UE Excess Policy states that it "shall be governed by and construed in accordance with the internal laws of the State of New York[.]" UE Excess Policy ¶ 17.

### D. The Importance of the Arbitration Provisions

     9.     Arbitration reflects a choice about who shall resolve disputes, but it also has other benefits, including confidentiality. Coverage disputes may arise where the parties disagree, as here, about how a policy applies. Disputes also arise over how best to defeat efforts by claimants to impose unjust and excessive liabilities on a member-owner, involving issues of litigation strategy and costs. If a dispute arises between United Educators and a member over coverage or the way the member wishes to defend a case, United Educators will try to resolve the matter between itself and its member. As a last resort, the parties may turn to arbitration. It does not benefit Duke or United Educators to air a dispute over such issues publicly, particularly when that might interfere with the defense of the underlying claims or where the issues are premature.

## STATEMENT OF QUESTIONS PRESENTED

I.    Should the Third-Party Complaint should be dismissed (or stayed) because it depends on issues referable to arbitration?

II.    Should the Court exercise discretion under Fed. R. Civ. P. 14 to dismiss the Third-Party

Complaint because its adjudication would prejudice Duke and United Educators?

III.    Should the Third-Party Complaint be dismissed as premature?

IV.   Does the third-party claim for "pro rata contribution" fail as a matter of law under the clear and unambiguous language of the subject policies?

V.    Does the claim for declaratory judgment fall with the other third-party claims?

## ARGUMENT

## I.    THE COURT SHOULD DISMISS OR STAY THE THIRD-PARTY COMPLAINT BECAUSE THE COVERAGE ISSUES IT RAISES ARE SUBJECT TO ARBITRATION

### A.    The Issues Presented by the Third-Party Complaint Are Within the Scope of a Mandatory Arbitration Clause

The Federal Arbitration Act ("FAA") "is a congressional declaration of a liberal federal

policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S.

1, 24 (1983). It manifests the "strong federal policy in favor of enforcing arbitration agreements."

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985). Section 3 of the FAA, 9

U.S.C.A. § 3, provides that a federal court may not resolve issues referable to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States *upon any issue referable to arbitration* under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration. (emphasis added).

The UE Excess Policy requires that all disputes in relation to the policy be resolved in

arbitration, sited in New York. UE Excess Policy ¶¶ 18-19. Because the policy requires

arbitration of "all disputes that may arise between [Duke] and [United Educators] in relation to

this Policy," such disputes are "referable to arbitration," and National Union's third-party claims based on such coverage issues cannot proceed.  UE Excess Policy ¶ 18; 9 U.S.C.A. § 3.

National Union relies on the UE Excess Policy for each of its third-party claims.  Each of the three claims presumes, or seeks a declaration, that the UE Excess Policy owes coverage for the lacrosse claims and owes it now.  And each of those presumptions and requested declarations – with which United Educators disagrees – depends entirely on the interpretation or application of the applicable policy language.  Because each of National Union's claims involves arbitration-referable issues about United Educators' coverage obligations, § 3 of the FAA bars the Court from proceeding with it.[2]  Indeed, because <u>all</u> of the claims in the third-party action require an interpretation of coverage under the UE Excess Policy, dismissal, rather than a stay, is the proper disposition.[3]  Dismissal is especially preferred here, where National Union will suffer no prejudice on account of a dismissal because its third-party claims are not yet even ripe.  *See* Section III *infra*.

**B.** **The Fact That National Union Is Not a Party to the Arbitration Agreement Does Not Change the Result**

The fact that National Union is obviously not a signatory to the UE Excess Policy does not change the fact that the coverage issues upon which National Union's claims depend can only be resolved in arbitration.  Section 3 of the FAA requires that issues be referable to arbitration, not particular parties.  Thus, "an arbitration agreement must be enforced notwithstanding the presence

---

[2] *See United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001) ("If the issues in the case are within the contemplation of the arbitration agreement, the FAA's stay-of-litigation provision is mandatory, and there is no discretion vested in the district court to deny the stay.").

[3] *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable").

of other persons who are parties to the underlying dispute, but not to the arbitration agreement."[4]

*Moses H. Cone*, 460 U.S. at 20. And indeed, while it might in some sense be nice to resolve all insurance issues, between <u>all</u> parties, in a single forum, that rationale offers no escape whatsoever from the mandate of the FAA that issues subject to an agreement to arbitrate be determined in arbitration, not in court.[5] Thus, the "question is not ultimately one of weighing potential harm to the interests of the non-signatory, but of determining whether proceeding with litigation will destroy the signatories' right to a meaningful arbitration." *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A.*, 372 F.3d 339, 343 (5th Cir. 2004). Allowing National Union to proceed on its claims at this time, in this forum, would destroy United Educators' right to have disputes over coverage resolved in an arbitral forum. *See Texaco Exploration*, 243 F.3d at 912 (finding that adjudication of third-party claims where the third-party defendant has an arbitration agreement with the original plaintiff would "utterly thwart the policy of the FAA").

Indeed, National Union cannot, on the one hand, base its claims on the UE Excess Policy, and, at the same time, try to deny effect to one of the essential provisions of the policy, the arbitration clause. The Fourth Circuit and other circuit courts have repeatedly enforced § 3 of the

---

[4] That National Union's claim is a third-party claim is immaterial for purposes of application of § 3 of the FAA. *See Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 908 (5th Cir. 2001) (concluding "that the policy of liberal joinder…embodied in Rule 14(c)," the maritime correlative to Rule 14(a), "does not supersede the statutory right to enforce contractual arbitration guaranteed by the FAA"). *See generally Summer Rain v. Donning Co./Publishers, Inc.*, 964 F.2d 1455, 1461 (4th Cir. 1992) ("arbitrability is to be determined on an issue-by-issue-basis, without regard to the way that the issues are grouped into claims.").

[5] *Byrd*, 470 U.S. at 217 (the FAA requires arbitration "even where the result would be the possibly inefficient maintenance of separate proceedings, in different forums").

FAA against non-parties who seek to rely on an agreement containing an arbitration clause, barring those parties from circumventing the requirement to arbitrate.[6] The courts hold that a non-party that purports to rely on a contract for the substance of its claim must rely on the entirety of it, and thus is estopped from avoiding the arbitration clause. *See, e.g., R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 161 (4th Cir. 2004) ("the doctrine [of equitable estoppel] applies when one party attempts 'to hold [another party] to the terms of an agreement' while simultaneously trying to avoid the agreement's arbitration clause.") (quoting *Hughes Masonry Co. v. Greater Clark County School Bldg. Corp.*, 659 F.2d 836, 838 (7th Cir. 1981)). In the Fourth Circuit, it is sufficient that the claim being asserted by the third party is significantly related to the agreement containing the arbitration clause.[7] That is the case here.

## II. THE COURT SHOULD EXERCISE ITS DISCRETION UNDER RULE 14 TO DISMISS THE THIRD-PARTY COMPLAINT

Rule 14 provides another basis for the Court to dismiss the Third-Party Complaint because forcing United Educators to prematurely litigate claims subject to mandatory arbitration

---

[6] *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMGH*, 206 F.3d 411 (4th Cir. 2000) (non-signatory who benefits from enforcement of contract cannot avoid enforcement of arbitration clause); *see also Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753 (11th Cir. 1993) (equitable estoppel applies where non-signatories' claims "rely upon" the terms of the written agreement containing the arbitration clause).

[7] *See American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (outlining the "significantly related" test); *Long v. Silver*, 248 F.3d 309, 317 (2001) (permitting non-signatory agent and shareholder to compel arbitration under the "significantly related" test); *see also Nissan Fire & Marine Ins. Co., Ltd. v. Fortress Re, Inc.*, 2002 WL 737789 at *3-4 (M.D.N.C.) (applying the "significantly related" test).

would be prejudicial to United Educators and Duke.[8] *See, e.g., Dishong v. Peabody Corp.*, 219 F.R.D. 382, 385 (E.D. Va. 2003) ("courts need not permit the defendant to implead a third-party when doing so might prejudice the original plaintiff or the third-party defendant").[9]

Here, the Third-Party Complaint prejudices United Educators by (1) asking this Court to decide issues that United Educators and Duke committed to resolve in arbitration instead of litigation, and (2) to do so prematurely, before the underlying claims are resolved and before it is determined whether National Union will ever, in fact, have a viable claim for contribution. Furthermore, National Union will not be prejudiced in any material way if it is compelled to wait. To the contrary, as discussed in detail below, National Union's third-party claims are, at present, entirely contingent, and may ultimately be unnecessary. Accordingly, the Court should exercise its Rule 14 discretion to dismiss the Third-Party Complaint.[10]

---

[8] *See Duke v. Reconstruction Finance Corp.*, 209 F.2d 204, 208 (4th Cir. 1954) ("allowance of third-party procedure within Rule 14…rest[s] in the mature and informed discretion of the court.") (quoting *Bill Curphy Co. v. Lincoln Bonding & Insurance Co.*, 13 F.R.D. 146, 147 (D.Neb. 1952); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1443, at 297-98 (2d ed. 1990) (whether to allow a third-party action "under Rule 14 . . . [is] a question addressed to the sound discretion of the trial court.").

[9] This discretion exists whenever the third-party complaint is filed. *Dishong*, 219 F.R.D. at 385 (discretionary power over third-party practice where defendant filed the third-party complaint with its answer); *accord* 6 Wright, Miller & Kane, *supra* § 1460, at 458 (2d ed. 1990) (noting "the court's discretionary power to allow or deny impleader when the summons and the third-party complaint are served initially without leave of court.").

[10] The Court also has inherent power to stay the third-party action. *See Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936) (courts may stay after weighing "the competing interests" if the applicant can "make out a clear case of hardship or inequity in being required to go forward").

## III. THE THIRD-PARTY COMPLAINT IS NOT RIPE AND THUS FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED

As set forth above, National Union's claims depend on coverage issues that must be submitted to arbitration. But even if North Carolina law controls (as AIG expressly asserts), these claims are premature as a matter of North Carolina law.

### A. National Union's Contribution Claim Is Premature

The right of "contribution" invoked as National Union's first cause of action is based on the judge-made concept of "equitable contribution." That concept, as described by the North Carolina Supreme Court, is that a person "compelled to pay or satisfy the whole or to bear more than his just share of a common burden or obligation, upon which several persons are . . . bound to discharge, is entitled to contribution against the others to obtain from them payment of their respective shares." *Nebel v. Nebel*, 223 N.C. 676, 684-85, 28 S.E.2d 207, 213 (1943).

In cases where North Carolina courts have permitted contribution between insurers, the amount of the "common burden or obligation" — *i.e.*, the total amount expended in defense and indemnity for underlying claim(s) — was known when the contribution claim was made.[11] In that situation, the court can determine, in light of all the relevant facts, whether one insurer did indeed pay more, and the other less, than required in connection with the overall liability at issue.

In contrast, a party may not seek equitable relief while "[t]he record shows that the equities between the parties have not yet been determined[.]" *Bomer v. Campbell*, 70 N.C. App. 137, 139,

---

[11] *See Ames v. Continental Casualty Co.*, 79 N.C. App. 530, 340 S.E.2d 479 (1986); *Duke University v. St. Paul Mercury Ins. Co.*, 95 N.C. App. 663, 681-82, 384 S.E.2d 36, 47 (1989).

318 S.E.2d 841, 842 (1984). Thus, a claim for equitable contribution claim is premature if asserted before the court can ascertain the actual amount of the "common burden or obligation," and cannot proceed when it is "impossible to determine whether the plaintiff . . . discharged the common debt or . . . paid more than his share of the debt[.]" *Finch v. J.J. Barnes*, 102 N.C. App. 733, 738, 403 S.E.2d 552, 554-55 (1991) (Greene, J., dissenting), *rev'd*, 330 N.C. 192, 410 S.E.2d 57 (1991) (reversing "for the reasons stated in the dissenting opinion by Greene, J.").

That is the situation here: Duke is defending three lawsuits where multiple parties have asserted claims seeking significant damages, and which require substantial expenditures for their defense. There is no way to know what the total costs of defense and indemnity for the lacrosse claims will be when those claims are finally resolved, or whether National Union will pay more than its "share" of whatever the "common burden or obligation" ultimately turns out to be, particularly because National Union is battling Duke in this very lawsuit as to the total amount of coverage its policies provide for the underlying claims. For example, National Union will obviously have no right to "contribution" if final resolution of the lacrosse claims yields a total "burden or obligation" requiring National Union to pay its full limits even under its own proposed sharing theory. Conversely, there will be no need for sharing if National Union prevails so completely on its defenses and counterclaims that it ends up owing no coverage at all.

In sum, the contribution claim being advanced by National Union is premature.

**B.     National Union Has No Ripe Claim for Equitable Subrogation**

For all the reasons why the claim for equitable contribution is premature, so is the claim for equitable subrogation. But National Union's equitable subrogation theory is premature in

another basic respect as well. The "doctrine of equitable subrogation may be invoked if the obligation *of another* is paid by the plaintiff for the purpose of protecting some real or supposed right or interest of his own." *Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 277 N.C. 216, 221, 176 S.E.2d 751, 755 (1970) (emphasis added). It may only be asserted by an insurer that "*did not owe the claim*, in the first instance; [but rather] it was owed by another insurer who wrongfully refused to pay the claim." *John Alden Life Ins. Co. v. N.C. Ins. Guar. Ass'n*, 162 N.C. App. 167, 169, 589 S.E.2d 908, 910 (2004) (citation omitted; emphasis added). Thus, in *Nationwide Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, an insurer whose automobile policy covered the underlying claim, and which had a duty to defend, could not invoke equitable subrogation to recover defense costs and settlement payments from the insurer of a trailer also involved in the accident. 122 N.C. App. 449, 453, 470 S.E.2d 556, 559 (1996). Because the plaintiff insurer itself covered the loss, equitable subrogation could not be used to collect defense costs from another insurer.

Here, National Union clearly has an obligation to advance costs to Duke – and, if it turns out that it does not ultimately owe them, it will get its money back from Duke, not United Educators. Significantly, National Union's argument regarding the purported "mutual repugnance" of the "other insurance" clauses, even under its own terms, would at most allow National Union to obtain contribution from another insurer -- not to avoid its obligations to

Duke entirely. Thus, equitable subrogation is not a proper vehicle for a claim against United Educators. The proper claim would be for equitable contribution.[12]

Maybe someday National Union will make a payment outside the scope of its own coverage, which should be paid by United Educators, in order to preserve some right of its own – creating a basis for subrogation. It has not done so yet and its subrogation claim is premature.

## IV. NATIONAL UNION'S CONTRIBUTION CLAIM FAILS AS A MATTER OF LAW BECAUSE THE UE EXCESS POLICY DOES NOT PROVIDE COVERAGE ON THE BASIS THAT NATIONAL UNION SUGGESTS

As discussed above, this Court ought <u>not</u> construe the UE Excess Policy at the request of National Union because Duke and United Educators agreed to submit all such matters to binding arbitration, and the request is premature in any event. However, if the Court finds that it must examine the merits of the coverage issues raised by National Union, the resulting analysis will reveal that National Union's claims fail on their merits.[13] The applicable policy provisions demonstrate, first, that United Educators has no present obligation to pay anything in connection with the lacrosse claims; and second, that the UE Excess Policy expressly does not contribute with the "Protector" coverage provided by the National Union policy.

---

[12] National Union says that it "advanced to Duke the $5 million policy limits of [its] 2006 Policy[,]" to "cover Plaintiffs' defense costs as a result of the Underlying Actions." Third-Party Complaint ¶¶ 19-20. National Union's advance went toward fulfilling its contractual obligation to "advance" costs to Duke "prior to the final disposition of a Claim." National Union Policy § 8.

[13] Excerpts from the UE Excess Policy are at Tab 1. Excerpts from the National Union Policy are at Tab 2. They are properly considered on a motion to dismiss. *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D.Va. 1995)("[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment.")

### A.      United Educators Has No Present Obligation to Pay

National Union's "Not-For-Profit Protector" policy requires National Union to "advance" the "defense costs" associated with a claim "prior to its final disposition." Indeed, that obligation is reiterated five times: once in each of the four "insuring agreements," and again in the section of the policy specifically applicable to "defense costs." National Union Policy §§ 1, 8.

In contrast, the UE Excess Policy, in the section titled "Defense and Settlement," provides that UE "will pay Damages on behalf of an Insured as soon as practicable after . . . the Insured's liability has been established by judgment after actual trial or by written agreement to which we have consented[.]" UE Excess Policy, ¶ 6. "Damages" includes "Defense Costs." *Id.*, Definitions, ¶ 2. Thus, under these unambiguous provisions, United Educators' obligation to pay would not arise until *after* judgment or settlement to which United Educators has consented (and the "Underlying Limit Retention" has been exceeded). National Union can have no present right to contribution where United Educators has no present obligation to pay.

### B.      The "Other Insurance" Provisions Are Not Mutually Repugnant

In addition, National Union's claims necessarily fail because the alleged "mutual repugnance" between "other insurance clauses" that National Union pleads as the basis for its contribution claim simply does not exist.[14]

---

[14] National Union's attempt to apply North Carolina law to the coverage provided by the UE Excess Policy is misplaced. The parties agreed that the UE Excess Policy "shall be governed by and construed in accordance with the internal laws of the State of New York[.]" UE Excess Policy ¶ 17. However, the Court need not concern itself with choice of law because New York and North Carolina follow a similar approach to analysis of "other insurance" provisions.

An "other insurance" issue, like any other question of insurance coverage, is to be resolved on the basis of the applicable policy language.[15]  Consistent with this principle, courts faced with a dispute over priority of coverage will examine the relevant provisions of each policy to determine which pays first and which is excess.  They will not simply declare the mere existence of "other insurance clauses" in two insurance policies to be "mutually repugnant" and decline to give effect to either one without examining them to determine whether they can be reconciled.[16]

In cases of true "mutual repugnance," the policies "both contain identical excess clauses, or excess clauses which are worded in such a way that it is impossible to distinguish between them or to determine which policy is primary."  *Aetna Casualty & Sur. Co. v. Continental Ins. Co.*, 110 N.C. App. 278, 282, 429 S.E.2d 406, 409 (1993).  In such cases, "having contracted to cover the same risk on the same level," neither insurer is "permitted to argue that the other must bear the entire risk . . . because the effect of a contrary holding would be to leave the insured with no coverage at all[.]"  *State Farm Fire & Casualty Co. v. LiMauro*, 65 N.Y.2d 369, 374 (1985).

Therefore, to determine who pays first, or whether both policies contribute together, the court must examine the words of each policy and "the purpose each policy was intended to serve as

---

[15] *Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*, 351 N.C. 293, 305, 524 S.E.2d 558, 566 (2000) ("[w]here multiple policies appear to provide coverage . . . the insurers' respective obligations to pay are determined by examining each policy on its own terms"); *Bovis Lend Lease LMB, Inc. v. Great Am. Ins. Co.*, 855 N.Y.S.2d 459, 464 (1st Dep't 2008) (an insurance policy "is a contract between the insurer and the insured[,]" and the "extent of coverage (including a given policy's priority vis-à-vis other policies) is controlled by the relevant policy terms").

[16] *See, e.g., Hlasnick v. Federated Mut. Ins. Co.*, 136 N.C. App. 320, 330, 524 S.E.2d 386, 393 (2000), *aff'd in part*, 353 N.C. 240, 539 S.E.2d 274 (2000) ("[a] construction which will give a fair meaning to both . . . 'other insurance' clauses is preferable to finding repugnancy").

evidenced by both its stated coverage" as well as "the wording of its provision concerning excess insurance." *LiMauro*, 65 N.Y.2d at 374 (citations omitted).

Turning to the "other insurance" provisions in the policies at issue here, the essential point is apparent. The National Union policy merely states that "this policy shall apply only as excess over any valid and collectible insurance." National Union Policy § 14. In contrast, the "other insurance" provision of the UE Excess Policy provides that it "shall at all times be excess over the greater of the Underlying Limit Retention amount, or the amount of any other insurance . . . available to the Insured" and that "*nothing in this Policy or in any other policy shall be construed to require this Policy to contribute with,* or subject this Policy to the terms, conditions or limits of, *such other insurance.*" UE Excess Policy, ¶ 26 (emphasis added). Thus, Duke purchased a policy from United Educators that sits excess and does <u>not</u> contribute with another policy.[17]

An "insurance policy which purports to be excess coverage but contemplates contribution with other excess policies *or does not by the language used negate that possibility* must contribute ratably with a similar policy, but *must be exhausted before a policy which expressly negates contribution with other carriers,* or otherwise manifests that it is intended to be excess over other excess policies[.]" *LiMauro*, 65 N.Y.2d at 375-76 (citations omitted; emphasis added). The National Union policy – which does not "negate" the "possibility" of "contribution with other excess policies" – "must be exhausted before" the United Educators policy, which "expressly negates contribution with other carriers[.]"

---

[17] This brief does not, and need not, address which, or whether both, of the National Union policies are available.

The same result follows under the methodical approach of the North Carolina Supreme Court, which has explained the "other insurance" analysis as follows:

> The existence of the second contract, whether an insurance policy or otherwise, may or may not be an event which sets in operation or shuts off the liability of the insurance company under its own policy. Whether it does or does not have such effect, first[,] requires the construction of the policy to determine what event will set in operation or shut off the company's liability and, second, requires a construction of the other contract, or policy, to determine whether it constitutes such an event.

*Allstate Ins. Co. v. Shelby Mut. Ins. Co.*, 269 N.C. 341, 346, 152 S.E.2d 436, 440 (1967).

Looking first at the National Union provision, the "event" that would render the National Union coverage "excess" pursuant to its terms would be the existence of other "valid and collectible insurance." The question then becomes whether the UE Excess Policy is such "valid and collectible" insurance. The answer is no – the United Educators "other insurance" provision specifically states that the policy will not "contribute with" other available insurance. Thus, the United Educators coverage is not "collectible" at the same time that the National Union policy is "available." Indeed, United Educators' coverage also is not "collectible" for the reasons explained in Section IV.A - *i.e.*, United Educators can have no obligation to pay damages (including defense costs) until *after* the insured's liability has been established by a judgment or a settlement. The National Union policy therefore is not excess to the United Educators coverage.

By contrast, from the perspective of the United Educators provision, the existence of the National Union policy is an "event" which renders any United Educators coverage "excess." Under the terms of the provision, such an event consists of the existence of "other insurance . . . available to the Insured covering an Occurrence covered by this Policy." As explained above, the

National Union policy is "available" "other insurance."  Consequently, National Union's coverage is "such other insurance" with which the UE Excess Policy expressly declines to contribute - and of which the UE Excess Policy is excess, pursuant to its terms.

In sum, the "other insurance" provisions of the National Union and United Educators policies, consistent with the other differences between those policies (including the character of the respective policies as "Protector" and "Excess," and National Union's obligation to advance defense costs, as compared to the end-of-day nature of United Educator's obligation) establishes the order of coverage.  National Union's pays first, and United Educators' Excess Policy potentially comes into play only when National Union's coverage is exhausted.

## V.    NATIONAL UNION'S CLAIM FOR DECLARATORY JUDGMENT WILL NOT SALVAGE ITS THIRD PARTY COMPLAINT

National Union's request for a declaration cannot salvage its complaint.  The declaration it seeks simply restates its contribution theory, asking for a declaration that the "other insurance" clauses in the policies "are inconsistent, mutually repugnant and cannot be reconciled."  Third-Party Complaint ¶ 25.  For the reasons discussed in Sections III and IV, *supra*, that claim is not viable substantively.  Moreover, casting it as a request for declaration does not overcome the requirement that the issue be arbitrated.  A federal court has a "unique and substantial discretion" in deciding whether to exercise jurisdiction over a claim for declaratory relief, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995), and that discretion is properly exercised when the claim ought not be adjudicated in a judicial forum and is not properly considered at this time.

### CONCLUSION

For the foregoing reasons, this Court should dismiss the Third Party Complaint.

Respectfully submitted this the 3rd day of March, 2009.


                                        SMITH, ANDERSON, BLOUNT, DORSETT,
                                        MITCHELL & JERNIGAN, L.L.P.

*Of Counsel*                            By: /s/ K. Alan Parry
                                        James K. Dorsett, III
CROWELL & MORING LLP                    NCSB 7695
Clifton S. Elgarten                     K. Alan Parry
Kathryn A. Underhill                    NCSB 31343
Elaine Panagakos                        Attorneys for Third-Party Defendant
Michael T. Carolan                      P. O. Box 2611
1001 Pennsylvania Ave, N.W.             Raleigh, NC  27602-2611
Washington, DC 20004                    Telephone:  (919) 821-1220
Telephone: (202) 624-2500               Facsimile:  (919) 821-6800
Facsimile: (202) 628-5116               jdorsett@smithlaw.com
                                        aparry@smithlaw.com

<u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that a copy of the foregoing document was served on the following parties to this action by electronic filing and/or by depositing a copy of the same in the United States Mail postage prepaid and addressed to:

David S. Coats
dcoats@bdixon.com
J.T. Crook
jcrook@bdixon.com
Bailey & Dixon
Attorneys for Defendant
P. O. Box 1351
Raleigh, North Carolina 27602

Gregg E. McDougal
gmcdougal@kilpatrickStockton.com
Betsy Cooke
bcooke@kilpatrickstockton.com
Kilpatrick Stock, LLP
3737 Glenwood Ave., Suite 400
Raleigh, NC 27612

Jerold Oshinsky
Jonathan M. Cohen
Ariel Shapiro
1100 New York Ave., N.W., Suite 700
Washington, D.C. 20005

This the 3rd day of March, 2009.

/s/ K. Alan Parry