UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
Case Number: 1:08-CV-0854

| | |
|---|---|
| DUKE UNIVERSITY AND DUKE UNIVERSITY HEALTH SYSTEM, INC., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., | ) ) ) ) |
| Defendant and Third-Party Plaintiff, | ) ) ) ) |
| v. | ) ) |
| UNITED EDUCATORS INSURANCE, A RECIPROCAL RISK RETENTION GROUP, | ) ) ) ) |
| Third-Party Defendant. | ) ) |

**DEFENDANT AND THIRD-PARTY PLAINTIFF NATIONAL UNION'S
MEMORANDUM OF LAW IN OPPOSITION TO THIRD-DEFENDANT'S MOTION TO
DISMISS OR STAY**

Dockets.Justia.com

# TABLE OF CONTENTS

NATURE OF THE CASE ..................................................................... 1

STATEMENT OF FACTS .................................................................. 2

STATEMENT OF QUESTIONS PRESENTED ............................................ 4

ARGUMENT .................................................................................. 5

I.    STANDARD OF REVIEW ........................................................... 5

II.   NORTH CAROLINA LAW APPLIES AND IS CONTROLLING ............. 6

III.  NORTH CAROLINA LAW AFFORDS UNITED EDUCATORS
      NO RIGHT TO COMPEL ARBITRATION OF THE THIRD-
      PARTY COMPLAINT WITH NATIONAL UNION ........................... 9

      A.    The Federal Arbitration Act has No Bearing upon
            the Issues Presented by United Educators' Motions ...................... 9

      B.    National Union Cannot Be Bound Under North Carolina Law
            to an Arbitration Agreement Existing Exclusively Between
            United Educators and Duke ................................................. 11

      C.    By Its Terms, the Arbitration Provision of the UE Policy Does
            Not Encompass Claims Arising Outside of the UE Policy ............... 14

IV.   NATIONAL UNION'S CLAIMS ARE JUSTICIABLE AND RIPE FOR
      JUDICIAL RESOLUTION .......................................................... 15

V.    THE "OTHER INSURANCE" CLAUSES IN THE 2006 POLICY
      AND THE UE POLICY CANNOT BE RECONCILED
      HARMONIOUSLY AND ARE, THUS, MUTUALLY REPUGNANT ...... 17

CONCLUSION ............................................................................... 20

Defendant and Third-Party Plaintiff National Union Fire Insurance Company of Pittsburgh, Pa. (hereinafter "National Union") respectfully submits the foregoing Memorandum in response to Third-Party Defendant United Educators Insurance, a Reciprocal Risk Retention Group's Motion to Dismiss, and in the alternative, to Stay National Union's Third-Party Complaint, in which it shows the Court as follows:

## NATURE OF THE CASE

Duke University ("Duke") and Duke University Health Systems ("DUHS") (hereinafter, collectively referred to as "Duke") initiated this action against National Union asserting claims for declaratory relief as to insurance coverage obligations for defense costs and indemnification, for alleged breach of contract, and for alleged bad faith and unfair and deceptive trade practices arising out of two policies of insurance issued to Duke by National Union and three legal actions[1] (hereinafter "the Underlying Actions") brought against Duke and others by individuals associated with the 2005-2006 Duke Men's Lacrosse Team ("the Lacrosse Team"), as well as a settlement agreement entered into between Duke and David Evans, Collin Finnerty, and Reade Seligmann (hereinafter "the Duke Three"). The Underlying Actions, and Duke's settlement with the Duke Three, can all be traced back to an allegation of rape made by Crystal Mangum on March 14, 2006.

In response to Duke's Complaint, National Union denied breaching the insurance policies and further asserted a Counterclaim, seeking a declaratory judgment as to the nature and extent of its coverage obligation with respect to the Underlying Actions and the Duke Three settlement. Also, National Union asserted a Third-Party Complaint

---

[1] *McFadyen, et al. v. Duke University, et al,* No. 1:07-CV-953 (M.D.N.C.) ("the *McFadyen* Action"); *Carrington, et al. v. Duke University, et al.,* No. 1:08-CV-119 (M.D.N.C.) ("the *Carrington* Action"); and *Pressler v. Duke University, et al.,* Durham Superior Court, 08 CVS 1311 (the "*Pressler I* Action")

against Duke's liability insurer, United Educators, a Reciprocal Risk Retention Group (hereinafter "United Educators"), requesting a declaratory judgment as to the nature and extent of United Educators' coverage obligations with respect to the Duke Three Settlement and the Underlying Actions, along with claims for equitable subrogation and contribution. Prior to the filing of the Third-Party Complaint, National Union paid to Plaintiff Duke University as defenses costs the full $5,000,000.00 policy limit pursuant to the 2006 Policy. (Third-Party Complaint ¶32).

In response to the Third-Party Complaint, United Educators filed a Motion to Dismiss or Stay National Union's Third-Party Complaint. United Educators' asserts that the claims set forth in the Third-Party Complaint are subject to arbitration, that the failure to arbitrate these claims would prejudice Duke and United Educators, that National Union's claims are premature, and that the claims further fail to state a claim upon which relief may be granted.

### STATEMENT OF FACTS

In the early hours of March 14, 2006, Crystal Mangum reported to a nurse at Duke University Hospital that she was sexually assaulted at a party hosted by the Lacrosse Team. While the sexual assault investigation was ongoing, all but one of the members of the Lacrosse Team were ordered to submit to a DNA test; the entire team was suspended by Duke's President; and their coach, Mike Pressler, resigned. Before the indictments against the Duke Three were made, the allegation of rape was highly publicized in the local news media, and the Lacrosse Team was allegedly vilified by members of the Durham community.

2

Prior to the indictments of the Duke Three, Duke sent - on March 30, 2006 - a letter via facsimile to National Union, providing notification of an incident, and including several news articles highlighting not only the rape allegation, but also the publicity which the rape allegation had engendered. [Answer, ¶ 35, Exhibit A].

As of the date of the March 30, 2006, letter, Duke had in effect a policy of insurance issued by National Union for the policy period December 4, 2005 to December 4, 2006, bearing policy no. 625-03-42 ("the 2006 Policy"), with liability limits of $5 Million and a self-insured retention of $500,000.00. [Answer, ¶ 13]. The 2006 Policy is "Claims-Made" Policy, affording coverage "for only those claims that are first made against the Insured during the Policy Period and reported in writing to the Insurer". [2006 Policy]. National Union also issued to Duke a subsequent "claims-made" policy of insurance for the policy period December 4, 2006 to December 4, 2007, bearing policy no. 965-76-25 ("the 2007 Policy").

As acknowledged in their memorandum, United Educators issued to Duke a policy of insurance bearing policy no. GLX20060004400, providing liability coverage for the policy period of January 1, 2006 until January 1, 2007 (hereinafter "the UE Policy"). [Third-Party Complaint, ¶ 3]. The limit of liability under the UE Policy is $25 Million per occurrence, with an underlying limit retention of $2 Million. [Third-Party Complaint, ¶ 3]. Upon information and belief, Duke applied for the UE Policy in North Carolina, and the UE Policy was delivered to Duke in Durham, North Carolina. [Third-Party Complaint, ¶ 13]. The UE Policy is a general liability policy covering Duke's interests in North Carolina. [Complaint, ¶'s 7-8]. Furthermore, the North Carolina Department of

Insurance licenses United Educators to sell insurance in the State of North Carolina.

[Third-Party Complaint, ¶ 38].

National Union's "other insurance" clause in Paragraph 14 in both the

2006 Policy and the 2007 Policy, provides as follows:

> Such insurance as is provided by this policy shall apply only as excess over any valid and collectible insurance. This policy shall be specifically excess of any other policy pursuant to which any other insurer has a duty to defend a Claim for which this policy may be obligated to pay Loss.

[Third-Party Complaint, ¶ 7].

The UE Policy contains a similar "other insurance" clause which reads as

follows:

> This Policy shall at all times be excess over the greater of the **Underlying Limit Retention** amount, or the amount of any other insurance ... available to the **Insured** covering an **Occurrence** covered by this Policy (other than insurance that is expressly and specifically excess of the limits of this Policy or quota-share in the same layer as this Policy), and nothing in this Policy or in any other policy shall be construed to require this policy to contribute with, or subject this Policy to the terms, conditions or limits of, such other insurance.

[Third-Party Complaint, ¶ 8]. National Union has acknowledged potential coverage for

Duke in the Underlying Actions under the 2006 Policy. [Answer, ¶ 42]. United

Educators is believed to have acknowledged potential coverage for Duke in the

Underlying Actions under the UE Policy. [Third-Party Complaint, ¶ 6].

## STATEMENT OF QUESTIONS PRESENTED

I.    Whether North Carolina law is determinative of the legal issues presented by United Educators' dual motions.

II.    Whether North Carolina law will compel National Union to arbitrate the claims set forth in the Third-Party Complaint in the absence of a written agreement to arbitrate.

III.      Whether National Union's claims for a declaratory judgment present a ripe, actual controversy warranting judicial resolution.

IV.      Whether the "Other Insurance" Clauses in the 2006 Policy and the UE Policy can be reconciled harmoniously or are mutually repugnant.

## ARGUMENT

### I.    STANDARD OF REVIEW

United Educators invokes two separate provisions of Rule 12(b) in support of their motions to dismiss: (1) lack of subject matter jurisdiction; and (2) failure to state a claim upon which relief may be granted. Of the four stated justifications in support of dismissal, the first two involve the presence of an arbitration provision in the UE Policy, while the latter two address the claims asserted in the Third-Party Complaint. United Educators' Memorandum fails to address a standard of review for the separate grounds for dismissal. However, it appears (and National Union will assume) that the subject matter jurisdiction contention relates to arbitrability, while the remaining questions concern a Rule 12(b)(6) analysis. As both involve a different standard of review, a discussion of each standard will be addressed separately.

A motion to dismiss pursuant to Rule 12(b)(1), "should be granted only in very limited circumstances." *RPR & Assocs. v. O'Brien/Atkins Assocs., P.A.*, 921 F.Supp. 1457, 1460 (M.D.N.C. 1995). The "moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* at 1461. As such, this Court may dismiss this case only if it is convinced that National Union and United Educators agree upon the jurisdictional facts, and those facts show that this Court should be divested of jurisdiction.

On a motion to dismiss for failure to state a claim, the burden of proof is on the movant to show that the pleader has failed to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Indeed, a claim may proceed "even if it appears that a recovery is very remote and unlikely." *Id.* at 556. Given the heightened standard placed upon a movant, Courts of this judicial circuit are prohibited from dismissing a claim "unless it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). In reviewing the actual claims, courts are instructed to take all well-pleaded allegations of the complaint as true, and to further construe all facts and inferences in a light most favorable to the pleader. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

The Third-Party Complaint asserts three separate claims for relief: (1) Equitable Subrogation; (2) Pro-Rata Contribution; and (3) Declaratory Judgment for the respective coverage obligations between United Educators and National Union. Given the procedural context of the case, the Declaratory Judgment is ripe and presents an actual case or controversy. Further, as the declaratory relief prayed for in the Counterclaim and Third-Party Complaint bears upon the claims for subrogation and contribution, each state sufficient facts giving rise to a right to relief under North Carolina law. As a consequence, United Educators' motions to dismiss National Union's claims for relief should be denied.

## II.     NORTH CAROLINA LAW APPLIES AND IS CONTROLLING

United Educators asserts that their legal arguments should be governed by New York law. [UE Policy, ¶ 17; UE Memorandum, p. 6]. In support of this assertion, United

Educators relies upon the "Governing Law and Interpretation" clause of the UE Policy, which reads as follows:

> This Policy shall be governed by and construed in accordance with the internal laws of the State of New York, except insofar as such laws may prohibit payment in respect of punitive damages....

This choice of law provision, however, contravenes North Carolina law as it applies to the interpretation of the UE Policy and these underlying claims.

North Carolina courts have long held as void any provision in a contract of insurance made in North Carolina which declares that the insurance policy shall be construed according to the laws of another state. *Cordell v. Brotherhood of Locomotive Fireman & Enginemen*, 208 N.C. 632, 640, 182 S.E. 141, 146 (1935).[2] As a consequence, United Educators' choice of New York law for the interpretation of their respective motions is rendered meaningless and void. The questions to be resolved on this preliminary issue are, instead, what choice of law rule this Court must follow, and in what State was the UE Policy made.

As this is a diversity action, this Court is obliged to follow the choice of law rule prevailing in this State. *Lowe's N. Wilkesboro Hardware, Inc. v. Fidelity Mut. Life Ins. Co.*, 319 F.2d 469, 472 (4th Cir. 1963). Generally, North Carolina has long adhered to the common law doctrine of *lex loci contractus*. *Roomy v. Allstate Ins. Co.*, 256 N.C. 318, 322, 123 S.E.2d 817, 820 (1962). This doctrine declares that the substantive law of the State where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract. *Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000).

---

[2] Conversely, choice of law provisions in a non-insurance contract are typically given effect in North Carolina. *Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980).

Although framed as an exception, for purposes of liability insurance policies in particular, North Carolina law will apply to the interpretation of an insurance policy if North Carolina has a close connection with the interests insured. *Collins & Aikman Corp. v. Hartfod Accident & Indem. Co.*, 335 N.C. 91, 95, 436 S.E.2d 243, 246 (1993). This exception is embodied in G.S. § 58-3-1, which declares that "[a]ll contracts of insurance on ... interests in this State shall be deemed to be made therein." Where, as in the UE Policy, the interests to which the policy provides liability coverage are exclusively in North Carolina, the policy will be deemed to have been made in North Carolina, without regard to where the application for insurance was made. *Collins & Aikman Corp. v. Hartford Acc. & Indem. Co.*, 106 N.C. App. 357, 361-62, 416 S.E.2d 591, 593-94 (1992).

In this case, both the general rule and the stated exception mandate that the UE Policy was <u>made</u> in North Carolina. First, as Duke is a North Carolina institution, the last act of creation for the UE Policy was delivery of the policy to Duke in Durham, North Carolina. Accordingly, pursuant to the doctrine of *lex loci contractus*, the UE Policy would be deemed <u>made</u> in North Carolina, and subject to construction and interpretation pursuant to North Carolina law. *See Fortune Ins. Co.*, 351 N.C. at 428, 526 S.E.2d at 466. Second, the UE Policy is, by its very terms, a commercial liability policy. The interests that are insured under the UE Policy exist solely in North Carolina; its principal insured, Duke University and its affiliates, are each chartered and exist solely under the laws of the State of North Carolina. As a consequence, North Carolina bears a close connection with the interests insured under the UE Policy, and accordingly, North

Carolina law must be the principal legal standard by which United Educator's motions

should be judged. *See Collins & Aikman*, 335 N.C. at 95, 436 S.E.2d at 245-46.[3]

### III. NORTH CAROLINA LAW AFFORDS UNITED EDUCATORS NO RIGHT TO COMPEL ARBITRATION OF THE THIRD-PARTY COMPLAINT WITH NATIONAL UNION

#### A. The Federal Arbitration Act has No Bearing upon the Issues Presented by United Educators' Motions.

In arbitration provisions subject to the Federal Arbitration Act ("FAA"), a Court

is called upon to determine "whether the specific dispute is covered by the substantive

scope of the agreement and whether the parties had a valid agreement to arbitrate." *Ellen*

*v. A.C. Schultes of Maryland, Inc.*, 172 N.C. App. 317, 320, 615 S.E.2d 729, 731-32

(2005). Generally, guidance for the resolution of these two points is found in the federal

substantive case law derived from the Federal Arbitration Act. 9 U.S.C. § 1, *et seq*; *See*

*International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411

(4th Cir. 2000). However, because the arbitration clause in this case exists in a policy of

insurance, the rules and substantive case law derived and governed by the FAA have no

bearing upon United Educators' dual motions. Instead, resolution of both questions fall

exclusively within the purview of North Carolina law, and North Carolina's own Revised

Uniform Arbitration Act.

The authority of the Federal Arbitration Act reaches only to "a contract

evidencing a transaction *in commerce*." 9 U.S.C. § 2, [Emphasis added]. Insurance, and

the offering of policies of insurance have, however, long-been carved out of the

---

[3] Moreover, even if North Carolina law was not so clear, the Third-Party Complaint involves claims between National Union and UE who are not parties to a contract together. As UE successfully argued in the Tenth Circuit, an insurance contract choice of law provision does not apply to a contribution dispute between two insurers. Rather, the law of the state with "the most significant relationship" with the issue must apply. *Farmington Cas. Co. v. United Educators Insurance Risk Retention Group. Inc.*, 36 Fed.Appx. 408, 2002 WL 1277937 (10th Cir. 2002) [holding that Colorado and not New York law controlled the insurers' contribution dispute despite the New York choice of law provision in the insurance contract].

definition of what qualifies as "in commerce". *Wilson v. Supreme Conclave*, 174 N.C. 628, 94 S.E. 443, 445 (1917), *cert. denied*, 249 U.S. 583 (1919); *see also New York Life Ins. Co. v. Cravens*, 178 U.S. 389 (1900). In *Wilson*, the North Carolina Supreme Court wrote emphatically that "insurance is not interstate commerce." 174 N.C. 628, 94 S.E. at 445. The Court's conclusion in *Wilson* was based upon the United States Supreme Court's equally unequivocal assertion that "[t]he business of insurance is not commerce. The contract of insurance is not an instrumentality of commerce." *New York Life Ins. Co. v. Cravens*, 178 U.S. at 401. As a consequence, questions regarding the scope, enforcement, construction and interpretation of insurance policies, including arbitration provisions contained therein, are governed exclusively under state substantive law. G.S. § 58-3-1[4]; *see also, Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983) ("the Federal Arbitration Act ... create[d] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.").

Instead of the FAA, in light of the absence of a transaction in commerce, this Court must measure its analysis of United Educators' motions by the North Carolina Revised Uniform Arbitration Act ("NCRUAA") as set forth in G.S. § 1-569.1, *et seq. See LSB Financial Services, Inc. v. Harrison*, 144 N.C. App. 542, 546, 548 S.E.2d 574, 577 (2001). Indeed, reference to federal law would be improper, given that this is a diversity case, and that "in diversity cases, when state law provides an answer, federal courts must abide by that law." *Guy v. Travenol Laboratories, Inc.*, 812 F.2d 911, 917 (4th Cir. 1987); *see also Washington v. Union Carbide Corp.*, 870 F.2d 957, 962 (4th Cir.

---

[4] Section I, Subparts A. and B. of United Educators' Memorandum are based exclusively upon the Federal Arbitration Act, and the substantive case law derived therefrom. The FAA has no application to the issues presented by United Educators' Motion to Dismiss or Stay, and Sections I and II of United Educators' memorandum should be disregarded as irrelevant.

1989) ("Federal courts are permitted under *Erie R.R. Co. v. Tompkins* ... to rule upon state law as it presently exists and not to surmise or suggest its expansion.").

Because North Carolina has developed its own framework for resolving the arbitrability of disputes arising under the NCRUAA, application of substantive federal law arising out of an inapplicable statute is improper.

> **B.  National Union Cannot Be Bound Under North Carolina Law to an Arbitration Agreement Existing Exclusively Between United Educators and Duke.**

Under the NCRUAA, the primary responsibility of the trial judge on a motion to compel arbitration is to determine whether there exists between the parties a valid agreement to arbitrate. *CIT Group/Sales Financing, Inc. v. Bray*, 141 N.C. App. 542, 539 S.E.2d 690 (2000). "While public policy favors arbitration, parties may not be compelled to arbitrate their claims unless there exists a valid agreement to arbitrate as specified by [the NCRUAA]." *Thompson v. Norfolk S. Ry. Co.*, 140 N.C. App. 115, 120, 535 S.E.2d 397, 400 (2000). The existence of an agreement to arbitrate is to be judged pursuant to the requirements of general contract law. *Southern Spindle & Flyer Co., Inc.* v. *Milliken & Co.*, 53 N.C. App. 785, 786, 281 S.E.2d 734, 735 (1981).

"Before a valid contract can exist, there must be a mutual agreement between the parties as to the terms of the contract." *Burgess v. Jim Walter Homes, Inc.*, 161 N.C. App. 488, 491, 588 S.E.2d 575, 577 (2003). G.S. § 1-596.6 further requires that any such agreement between the parties be in writing, and subject to a meeting of the minds and the intention of the contracting parties. *Ibid.* There can be no dispute that there is no agreement, in writing, between National Union and United Educators to arbitrate the scope of coverage provided by the UE Policy to Duke. Accordingly, and as alluded to

above, United Educators by way of this motion is attempting to bypass this significant obstacle by the invocation of an equitable doctrine which arises solely under the Federal Arbitration Act.[5]

Under the FAA, a non-signatory to an agreement containing an arbitration provision may be equitably estopped from avoiding arbitration of a dispute if he or she has received a direct benefit from the agreement. *Int'l Paper Co.*, 206 F.3d at 418. This doctrine has, however, <u>never</u> been applied to an arbitration agreement under the NCRUAA. As such, application of the doctrine of equitable estoppel must conform to general contract law in North Carolina. *See Southern Spindle*, <u>supra</u>.

In North Carolina, a party claiming the benefits of the doctrine of equitable estoppel must plead and prove three essential elements: "(1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action based thereon of such a character as to change his position prejudicially." *Countrywide Home Loans v. Bank One, N.A.*, __ N.C. App. __, 661 S.E.2d 259, 263, *disc. rev. denied*, 362 N.C. 680, 669 S.E.2d 745 (2008). On the part of the party to be estopped, North Carolina law requires that the claimant show (1) "conduct reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert"; (2) "intention or expectation that such conduct shall be acted upon the by other party"; and (3) "knowledge, actual or constructive, of the real facts." *Ibid.*

There is no argument in United Educators' memorandum that would qualify National Union as a party subject to estoppel under North Carolina law. Further, there

---

[5] In addition, the UE Policy limits the arbitration clause to "disputes that may arise between the Insureds [Duke] and us [UE] in relation to this Policy" and does not purport, in any manner to extend arbitrability to disputes involving any other entities.

are no facts known to National Union or apparent within the Third-Party Complaint which would afford the benefits of estoppel to United Educators. As such, there is no basis in law or fact sufficient to bind National Union under North Carolina contract law to an arbitration agreement to which it was not a party.

Should this Court entertain a theory of estoppel as set forth in United Educators' Memorandum, it remains apparent that the remedy of estoppel is still unavailable to United Educators as it cannot show that National Union, by way of its Third-Party Complaint, has received a "direct benefit" under the UE Policy. *See Int'l Paper Co.*, 206 F.3d at 418.[6] What amounts to a "direct benefit" under a contract containing an arbitration provision is amorphous at best. However, what amounts to an "indirect benefit" not warranting estoppel has been clearly and unequivocally defined as a "benefit derived from an agreement ... where the nonsignatory exploits the contractual relation of the parties to an agreement, but does not exploit (and thereby assume) the agreement itself." *MAG Portfolio Conslut, GMBH v. Merlin Biomed Group, LLC*, 268 F.3d 58, 61 (2d Cir. 2001).

In the present case, National Union is not seeking the benefit of coverage on its own behalf. Further, it is not seeking to recover on its own behalf under the UE Policy. Instead, it is pointing to the relationship between Duke and United Educators and asserting that a coverage obligation exists for United Educators given its relationship with Duke. This is not a direct benefit under the UE Policy. Instead, it seeks benefits arising in equity between the parties due to their respective agreements with Duke.

---

[6] A "direct benefit" is a threshold issue to the right of a party to an arbitration agreement to compel a non-signatory to participate in an arbitration proceeding.

Under the NCRUAA, there is no qualifying written arbitration agreement between National Union and United Educators. The arbitration provision of the UE Policy exists only between United Educators and Duke. Further, principles of North Carolina contract law cannot bind National Union's Third-Party claims against United Educators to the arbitration clause. There is no indication or proof of mutual assent or a meeting of the minds between National Union and United Educators to arbitrate. *See Burgess*, 161 N.C. App. at 491, 588 S.E.2d at 577. Further, there is no allegation that National Union was a third-party beneficiary or assumed the position of Duke under the UE Policy. As such, the initial question presented to this Court by United Educators' dual motions cannot be satisfied and, accordingly, the Motion to Dismiss for lack of subject matter jurisdiction, or in the alternative, to Stay the Third-Party Complaint should be denied. Further, there is no basis for the Court to exercise its discretion to dismiss this action upon any unfounded fear of prejudice alleged by United Educators. [UE Memorandum, pp. 10-11]

> **C.** **By its Terms, the Arbitration provision of the UE Policy Does Not Encompass Claims Arising Outside of the UE Policy.**

The arbitration provision of the UE Policy requires that "[a]ll disputes that may arise between the **Insureds** and **us** in relation to this Policy, or for its breach, shall be finally settled by arbitration." [UE Policy, ¶ 18]. At bottom, the nature of the dispute as set forth in the Third-Party Complaint is whether United Educators must participate, along with National Union, in the reimbursement of Duke in the Players' Actions as the defense costs have already exceeded the limit of liability in the 2006 Policy. [Third-Party Complaint, ¶ 6, 10, 20-21]. United Educators has presumably acknowledged potential coverage to Duke, and Duke has not sued or brought a claim against United Educators in this or any other binding forum arising out of the UE Policy. Indeed, it appears that Duke

has no present dispute with United Educators, and is content to allow National Union and United Educators to litigate their respective disputes amongst themselves. As such, there is no dispute which would be subject to the express terms of the UE Policy arbitration clause, and United Educators cannot force National Union to arbitrate claims not envisioned by the terms of the policy.[7]

## IV. NATIONAL UNION'S CLAIMS ARE JUSTICIABLE AND RIPE FOR JUDICIAL RESOLUTION.

National Union's Third-Party Complaint against United Educators seeks a declaration, pursuant to 28 U.S.C. § 2201, *et seq.*, that the UE Policy affords coverage to Duke for certain aspects of the claims set forth in the Underlying Actions, and a judicial construction of the "other insurance" clauses contained within the 2006 Policy and the UE Policy. [Third Party Complaint, ¶ 25a.].[8] The Third-Party Complaint also asserts equitable claims of subrogation and contribution which are dependent upon the relief sought by National Union by way of the requested declaratory judgment. [Third-Party Complaint, ¶'s 10-22]. Given the current procedural posture of the this case, and the existence of the Underlying Actions, the matters set forth in the Third-Party Complaint are ripe and justiciable.

A "declaratory judgment action is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996)

_____

[7] An insurer's equitable subrogation claim, brought in court, against another insurer to recover all or a portion of sums paid to or on behalf of a mutual insured is certainly typical and a claim successfully brought by UE. *United Educators Ins. v. Everest Indemnity Ins. Co.,* 2009 WL 210714 (M.D. Fla. 2009).
[8] The third-party claim for declaratory relief corresponds to the declaratory relief sought by Plaintiffs in the Complaint as well as National Union's declaratory counterclaim. In fact, parsing out the third-party declaratory claim from these other declaratory claims, all of which arise out of the same facts and underlying claims, could lead to an inconsistent result.

[internal citations omitted]. Apart from its discretion to stay a declaratory action which relates to an underlying state court case, a federal district court has jurisdiction to consider such a claim when it involves "an actual controversy, a genuine dichotomy of contention upon which specific relief may be granted." *Hanes Dye & Finishing Co. v. Caisson Corp.*, 309 F.Supp. 237, 240 (D.C.N.C. 1970). A pleading presents "an actual controversy ... that is ripe for decision" when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972).

A qualifying "controversy", under the Declaratory Judgment Act "must be a real and substantial controversy admitting of specific relief through a degree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *West v. Bank of Commerce & Trusts*, 153 F.2d 566, 569 (4th Cir. 1946). Generally, declaratory justiciability exists "in the insurance context ... when the parties disagree as to the terms, rights, or obligations of the insurance policy." Vol. 12, *Moore's Federal Practice,* §57.22[8][b].

In the present case, National Union has already advanced the limits of the 2006 Policy to Duke, and asserts in its Counterclaim that the advancement of the limits of that policy extinguish its coverage obligation to Duke in the Underlying Actions. Both National Union and United Educators have acknowledged potential coverage in the Underlying Actions. The controversy involving National Union and United Educators is real and not hypothetical, and involves significant amounts of money. As such, there can be no serious argument disputing that an actual controversy exists and is ripe. *See Lake*

*Carriers' Ass'n,* supra.  As such, National Union's Third-Party Complaint for a

Declaratory Judgment is not premature, but ripe, and given its ability to resolve the

attendant equitable claims, is proper for judicial resolution.

United Educators' argument would suggest that it is National Union's

responsibility, prior to seeking a declaration of United Educator's coverage obligation, to

advance payments pursuant to the "claims-made" 2007 Policy (which National Union

contends is not applicable) in addition to the policy limits of the claims made 2006 Policy

which National Union has already paid and wait for a resolution of the Underlying

Actions before recovering such payments from United Educators.  Such an argument

disregards the fact that "a party is not required in all instances to take irretrievable steps

and accrue peril before he may obtain a declaration of his rights." *A.S. Abell Co. v. Chell,*

412 F.2d 712, 719 (4th Cir. 1969).  Given the procedural posture of this case, National

Union is manifestly able to seek a declaration of the respective coverage obligation

between itself and United Educators, and United Educators' arguments to the contrary,

especially in light of the absence of a duty to arbitrate, should be disregarded.  Again,

National Union has already exhausted its applicable [2006 Policy] limit of liability and its

claim for contribution from UE is ripe.

> **V.    THE "OTHER INSURANCE" CLAUSES IN THE 2006 POLICY
> AND THE UE POLICY CANNOT BE RECONCILED
> HARMONIOUSLY AND ARE, THUS, MUTUALLY REPUGNANT.**

In their supporting Memorandum, United Educator's appropriately states the

general rule that in North Carolina, "[w]hen two policies both contain identical excess

clauses, or excess clauses which are worded in a way that it is impossible to distinguish

between them or to determine which policy is primary, the clauses are deemed mutually

17

repugnant and neither excess clause will be given effect." *Aetna Cas. & Sur. Co. v. Continental Ins. Co.*, 110 N.C. App. 278, 282, 429 S.E.2d 406, 409 (1993). Consistent with the general rule, National Union alleges in its Third-Party Complaint that the "other insurance" clauses contained in both the 2006 Policy and the UE Policy were mutually repugnant, thereby requiring this Court to order a *pro rata* contribution to any "loss" incurred by Duke in the Underlying Actions.

In considering dual "other insurance" clauses, where both "effectively provide that, if there is other insurance covering the same loss, then the insurer will pay only the excess beyond what is payable under the other policy", they are deemed mutually repugnant, and incapable of reconciliation. *Aetna Cas. & Sur. Co.*, 110 N.C. App. at 282, 429 S.E.2d at 409 [holding that non-identical "other insurance" clauses are mutually repugnant excess clauses]. In attempting to construe dueling provisions, North Carolina courts are instructed to look at the purpose or intent of the coverage obligation under each policy. *Allstate Ins. Co. v. Shelby Mut. Ins. Co.*, 269 N.C. 341, 348-49, 152 S.E.2d 436, 442 (1967).

Neither the 2006 Policy nor the UE Policy contain a duty to defend Duke in the Underlying Actions. The 2006 Policy states on its front cover, "The Insurer Does Not Assume Any Duty to Defend". The UE Policy also contains similar language which reads "We have no duty to defend any Insured". [UE Policy, p. 6, ¶ 7]. Both policies, however, contain provisions for advancing or reimbursing the costs of defense incurred by an insured for a potentially covered claim. [2006 Policy, p. 1; UE Policy, p. 2]. The 2006 Policy sets forth that National Union advance defense costs prior to final disposition while the UE Policy requires an incursion of costs in excess of the underlying limit

retention. [2006 Policy, p. 1; UE Policy, p. 6]. As alleged in the Counterclaim, as well as the Third-Party Complaint, Plaintiffs' liability for defense costs (which is defined as "Damages" in the UE Policy, p. 2) has exceeded the UE Underlying Limit Retention of $2,000,000 which should trigger a defense cost reimbursement obligation by UE. Presumably (as will be borne out through discovery), UE has conceded this in writing (as they have confirmed a coverage obligation) and, if not, then allegedly withholding this consent when Plaintiffs have incurred such defense costs would render this policy provision void and contrary to public policy under North Carolina law. *See Greensboro v. Reserve Ins. Co.*, 70 N.C. App. 651, 321 S.E.2d 232 (1984) ("[A]ny contract of insurance contrary to public policy is invalid and unenforceable").

The 2006 Policy provides that the coverage afforded "shall apply only as excess over any valid and collectible insurance." [2006 Policy, ¶ 14, p. 12]. The UE Policy, as set forth above, provides that it will be "excess over ... the amount of any other insurance available" and that "nothing in this Policy ... shall be construed to require this Policy to contribute with ... such other insurance." United Educators is relying upon the secondary clause of its "Other Insurance" provision to assert that the two clauses can be reconciled together.

Although the language utilized is not identical, in effect, both policies provide, consistent with the holding in *Aetna*, "if there is other insurance covering the same loss, then the insurer will pay only the excess beyond what is payable under the other policy." *See Aetna,* 110 N.C. App. at 282, 429 S.E.2d at 409. In such circumstances, both clauses are mutually repugnant, and the coverage afforded to Duke in the Underlying Actions

should be prorated according to the respective limits of the 2006 Policy and the UE

Policy.

## CONCLUSION

For the foregoing reasons, United Educators' Motions should be denied.

Respectfully submitted, this the 14th day of April, 2009.

BAILEY & DIXON, LLP

By: /s/ David S. Coats
    David S. Coats, N.C. State Bar No. 16162
    dcoats@bdixon.com
By: /s/ Dayatra T. King
    Dayatra T. King, N.C. State Bar No. 24355
    dking@bdixon.com
By: /s/ J.T. Crook
    J.T. Crook, N.C.S.B. 35232
    jcrook@bdixon.com
Attorneys for Defendant
Post Office Box 1351
Raleigh, North Carolina 27602
Telephone: (919) 828-0731
Facsimile: (919) 828-6592

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th of April, 2009, I electronically filed the foregoing Response Memorandum with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Gregg E. McDougal
Betsy Cooke
Kilpatrick Stockton, LLP
3737 Glenwood Ave, Suite 400
Raleigh, NC 27612
gmcdougal@kilpatrickstockton.com
bcooke@kilpatrickstockton.com
*Attorneys for Plaintiffs*

Jerold Oshinsky
Jonathan M. Cohen
Ariel Shapiro
1100 New York Ave, N.W., Ste. 700
Washington, D.C. 20005
Oshinskyj@gotofirm.com
cohenj@gotofirm.com
shapiroa@gotofirm.com
*Attorneys for Plaintiffs*

James K. Dorsett, III
K. Alan Parry
Smith Anderson Blount Dorsett
    Mitchell & Jernigan
Post Office Box 2611
Raleigh, North Carolina 27602-2611
jdorsett@smithlaw.com
aparry@smithlaw.com
*Attorneys for Third-Party
    Defendants*

Clifton S. Elgarten
Kathryn A. Underhill
Elaine Panagakos
Michael T. Carolan
1001 Pennsylvania Ave, N.W.
Washington, D.C. 20004
*Attorneys for Third-Party
    Defendants*

This the 14th day of April, 2009.

/s/ David S. Coats
David S. Coats