UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | | |
|---|---|---|
| DUKE UNIVERSITY AND DUKE UNIVERSITY HEALTH SYSTEM, INC. | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | ) ) ) ) | Case Number: 1:08-CV-0854 |
| Defendant and Third-Party Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| UNITED EDUCATORS INSURANCE, A RECIPROCAL RISK RETENTION GROUP, | ) ) ) ) | |
| Third-Party Defendant. | ) | |

**REPLY MEMORANDUM OF THIRD-PARTY DEFENDANT
UNITED EDUCATORS IN SUPPORT OF ITS MOTION TO DISMISS
OR STAY NATIONAL UNION'S THIRD-PARTY COMPLAINT**

Each of National Union's theories for sustaining its Third-Party Complaint is precluded as a matter of modern black letter law.

I.  **National Union's Opening Suggestion That North Carolina Law Overrides New York Law Is Immaterial**

National Union begins its opposition brief ("Opposition") with a diversionary argument about North Carolina law overriding the New York choice of law clause in the United Educators Excess policy ("UE Excess Policy"). There is no reason for the Court to reach that argument, or any other choice of law question, because they are not material to <u>any</u> of the issues presented by this motion. The dispositive points are as follows, and do not depend on choice of law:

(1) The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* (2006), *i.e.*, federal law, not any state arbitration law, resolves the arbitration issues in this case. National Union does not dispute that if the FAA applies – and it does – its Third-Party Complaint must be dismissed.

(2) United Educators demonstrated in its Memorandum of Law In Support of Its Motion to Dismiss or Stay ("Memorandum") that each of the substantive causes of action asserted by National Union – equitable contribution and equitable subrogation – is premature as a matter of *North Carolina* substantive law. Memorandum at 12-15. (Indeed, National Union does not dispute that these claims are premature as a matter of North Carolina substantive law.)

(3) The availability of declaratory relief in this Court, and the scope of discretion under Federal Rule of Civil Procedure 14, are matters of federal law.

(4) Finally, if the Court were to reach the substantive issues under the insurance policies (though because of the arbitration clause and ripeness issues, it should not do so), by applying the plain language of the policies, this Court would conclude that there was no "mutual

repugnance" as a matter of *North Carolina law*. See Memorandum at 15-20. Under North Carolina law (as much as New York law), the UE Excess Policy is an excess policy and does not "contribute with" National Union's Protector policy.

In sum, there is no reason to determine whether North Carolina law would override the N.Y. choice of law clause in the UE Excess Policy because whether or not North Carolina law would apply to the state law issues, National Union's Third-Party Complaint must be dismissed.

## II. Insurance is "Commerce" and the Federal Arbitration Act Applies to National Union's Third-Party Claims

National Union argues that "North Carolina law affords United Educators no right to compel arbitration." Opposition at 9. But North Carolina law is beside the point because the <u>Federal</u> Arbitration Act applies. The Federal Arbitration Act is, of course, a federal statute. Its application depends on the meaning of the words "involving commerce." 9 U.S.C. § 2. And the meaning to be given these words in a federal statute is a question of federal law. *Jerome v. U.S.*, 318 U.S. 101, 104 (1943) (interpretation of a federal statute "is not . . . dependent on state law").

Moreover, the answer to the question here – whether interstate insurance contracts are "commerce" and subject to the Federal Arbitration Act – has been answered in the affirmative by the U.S. Supreme Court. The Supreme Court has held in numerous cases that the FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause." *Perry v. Thomas*, 482 U.S. 483, 490 (1987); *see also Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 277 (1995) (same). And the Court has held since 1944 that interstate insurance is "interstate commerce" under the Commerce Clause; "No commercial enterprise of any kind which conducts its activities across state lines has been held to

2

be wholly beyond the regulatory power of Congress under the Commerce Clause. We cannot make an exception of the business of insurance." *United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533, 553 (1944). *See Hart v. Orion Ins. Co.*, 453 F.2d 1358, 1360 (10th Cir. 1971) ("Prior to [*South-Eastern Underwriters*], it was assumed that issuing an insurance policy was not a transaction of commerce. *South-Eastern Underwriters* held that interstate insurance transactions were subject to federal regulation under the Commerce Clause.").[1]

In so declaring, the Supreme Court overrode a hoary old line of cases that had adopted a cramped view of "interstate commerce," particularly for insurance, in the 19th and early 20th centuries.[2] As the Supreme Court has explained, those narrower definitions of "commerce" are no longer relevant, having been abrogated by later cases. *See Dobson*, 513 U.S. at 275 ("The pre-New Deal Congress that passed the [FAA] in 1925 might well have thought the Commerce Clause did not stretch as far as has turned out to be so. But it is not unusual for this Court in similar circumstances to ask whether the scope of a statute should expand along with the expansion of the Commerce Clause power itself, and to answer the question affirmatively – as . . . we do here."). Consequently, "[e]very court faced with the application of the FAA to an insurance contract has

---

[1] In response to *South-Eastern Underwriters*, Congress enacted the McCarran-Ferguson Act, 15 U.S.C. § 1011-12 (2006), allowing states to regulate insurance. But Congress's decision not to exercise its Commerce Clause power to regulate insurance does not mean that insurance is "not commerce" subject to general federal laws applicable to commerce. McCarran-Ferguson does <u>not</u> allow a state's general state arbitration act to override the FAA. *Miller v. National Federal Life Ins. Co.*, 588 F.2d 185, 187 (5th Cir. 1979); *Hart*, 453 F.2d at 1360; *Hamilton Life Ins. Co. of N.Y. v. Republic Nat. Life Ins. Co.*, 408 F.2d 606, 611 (2nd Cir. 1969).

[2] National Union cites those old cases, including *Wilson v. Supreme Conclave*, 174 N.C. 628 (1917), and *New York Life Ins. Co. v. Cravens*, 178 U.S. 389 (1900), both of which pre-date *South-Eastern Underwriters* and the development of modern Commerce Clause jurisprudence.

3

concluded that the FAA does apply." *Commonwealth Enterprises v. Liberty Mutual In. Co.*, 958 F.2d 376, 377 (9th Cir. 1992) (unpublished disposition); *see, e.g., Edstrom Industries Inc. v. Companion Life Ins. Co.,* 516 F.3d 546, 549 (7th Cir. 2008) (Posner, J.) ("It is true that the [insurance] contract in which the clause is embedded affects interstate commerce, and so the federal act is applicable.") (citing 9 U.S.C. § 2 and *Dobson, supra); Sims v. Clarendon Nat'l Ins. Co.,* 336 F. Supp. 2d 1311, 1316 (S.D. Fla. 2004) ("Because the Policy was issued by a [New Jersey] corporation to a Florida resident, it involves interstate commerce and the FAA applies.").[3]

Contrary to National Union's assertion, the fact that jurisdiction is founded on diversity of citizenship does not change the analysis. That is because the FAA is an overriding substantive law that applies to all claims subject to its plain language – "involving commerce" – including in diversity cases. The Supreme Court has so held. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 406 (1967) ("Federal courts are bound to apply rules enacted by Congress with respect to matters – here, a contract involving commerce – over which it has legislative power.").

The UE Excess Policy was issued by a Vermont risk retention group, headquartered in Maryland, to a North Carolina educational institution. It is "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The FAA defines "commerce" to include "commerce among the several States[.]" 9 U.S.C. § 1. Thus, the FAA and the full "body of federal substantive law of arbitrability" applies to this case. *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24 (1983).

---

[3] In the exercise of its Commerce Clause power, Congress enacted the Liability Risk Retention Act of 1986, 15 U.S.C. § 3901 *et seq.* (2006), pursuant to which United Educators is regulated.

4

In its Opposition, National Union makes no effort whatsoever to suggest that the plain language of § 3 of the FAA, and the established body of federal arbitration law, does not require dismissal of its Third Party Complaint. *See, e.g., Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220 (1987) ("The [FAA] . . . provides that a court *must* stay its proceedings if it is satisfied that *an issue before it is arbitrable* under the agreement") (emphasis added). Thus, for the reasons set forth in United Educators' motion, Memorandum at 7-10,[4] National Union's third-party claims must be dismissed under § 3 of the FAA.

At most, National Union claims that there is no contract between itself and United Educators under North Carolina law.[5] But that is not controlling under § 3 of the FAA, and even National Union concedes that under the FAA, a non-signatory to an agreement containing an arbitration clause may be equitably estopped from avoiding the arbitration clause when he benefits from the agreement. Opposition at 12. Here, the FAA applies and "[b]ecause the determination of whether . . . a nonsignatory, is bound by the [relevant] contract presents no state law question of

---

[4] Although National Union suggests that United Educators seeks to compel arbitration of the third-party claims, Opposition at 4, 9-15, United Educators' motion seeks to <u>dismiss</u> such claims on the grounds that their adjudication would impair the arbitration rights of Duke and United Educators, particularly because they are premature. If the claims are not dismissed, United Educators would of course seek to compel National Union to arbitrate.

[5] National Union errs in contending that "parsing out the third-party declaratory claim" from the claims National Union and Duke assert against each other "could lead to an inconsistent result." Opposition at 15 n. 8. The claims in the main action concern coverage under the National Union policies, and the claims which must be arbitrated concern coverage under the UE policy. National Union also suggests that there is no present dispute between United Educators and Duke, but there are certainly disputed coverage issues between United Educators and Duke, subject to arbitration. Further, that the arbitration is not yet pending (as the Duke/United Educators disputes could end up resolved through negotiations) is irrelevant; the standard is whether a party is "in default in proceeding," 9 U.S.C. § 3, and United Educators is not.

5

contract formation, or validity, [the court] look[s] to the 'federal substantive law of arbitrability' to resolve this question." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMGH*, 206 F.3d 411, 417, n. 4 (4th Cir. 2000) (quoting *Moses H. Cone*, 460 U.S. at 24).

Indeed, National Union's suggestion that *state law* estoppel principles would not require arbitration by a non-signatory is itself incorrect. National Union does not cite any precedent supporting its view, asserting merely in the negative that there is no state law support for subjecting a non-signatory to arbitration. Opposition at 12. But the Court of Appeals of North Carolina has, in fact, acknowledged that estoppel principles do apply under North Carolina law, just as under the FAA. *See Ellen v. A.C. Schultes of Maryland, Inc.*, 172 N.C. App. 317, 615 S.E.2d 729, 732 (2005).[6] That is because federal estoppel principles are based on ordinary common law rules, which hold that a party is estopped from claiming the benefit of a contract while disclaiming its obligations, such as arbitration. *See id.* (citing *In'tl Paper*, 206 F.3d at 418). Estoppel "operates to prevent one party from holding another party to the terms of an agreement while simultaneously avoiding the same agreement's arbitration clause." *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 165 (4th Cir. 2004) (citation omitted).

National Union vaguely suggests that it claims no direct benefit under the UE Excess Policy and thus it cannot be estopped. Opposition at 13. But National Union's claims depend

---

[6] National Union's citation to *Countrywide Home Loans v. Bank One, N.A.*, is inapt as that case involved the doctrine of *detrimental* reliance: "the party whose words or conduct induced another's detrimental reliance may be estopped to deny the truth of his earlier representations …." 2008 N.C. App. LEXIS 1004, 661 S.E.2d 259, 263 (2008) (quoting *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 17, 591 S.E.2d 870 (2004)). That variant of estoppel is not at issue here – and it is not the only form of estoppel.

6

entirely on the UE Excess Policy. Without that policy, National Union has no claim.[7] Having claimed the benefit of what it says are coverage obligations that United Educators owes Duke under the UE Excess Policy, National Union is bound to respect the arbitration clause. In "the arbitration context, the doctrine recognizes that [National Union] may be estopped from asserting that the lack of [its] signature on a written contract precludes enforcement of the contract's arbitration clause when [it] has consistently maintained that other provisions of the same contract should be enforced to benefit [it]." *Int'l Paper*, 206 F.3d at 418. And, as demonstrated, the arbitration clause bars National Union from proceeding with its Third-Party Complaint.

### III. The Court May Dismiss the Third-Party Claims Under Rule 14

National Union does not challenge the fact that Rule 14 of the Federal Rules of Civil Procedure independently provides this Court a basis to decline jurisdiction over third-party claims that belong in arbitration and are not ripe in any event. Thus, even apart from the mandate of the FAA, this Court should exercise its discretion to strike National Union's Third-Party Complaint.

### IV. National Union's Claims Are Not Ripe For Declaratory Judgment, Just As They Are Not Ripe Under State Law

National Union does not contest that (as shown in Section III of United Educators' Memorandum) its equitable contribution and subrogation claims are premature as a matter of North Carolina law. Instead, it asserts that its claim for declaratory judgment saves the day. It says that its substantive claims "are dependent upon" its declaratory claim, which is "ripe, and . . .

---

[7] The benefits National Union seeks are "direct" because they derive from the UE Excess Policy itself. *See MAG Portfolio Consult, GMBH v. Merlin Biomed Group, LLC*, 268 F.3d 58, 61 (2nd Cir. 2001) ("The benefits must be direct – that is to say, flowing directly from the agreement.").

7

proper for judicial resolution." Opposition at 15, 17.  National Union is wrong, because its declaratory judgment claim is just as premature as its substantive claims.  Where state substantive law serving important policy goals regards a claim as hypothetical and premature, a court should not take jurisdiction over the same claim in the guise of a request for declaratory relief.

The exercise of declaratory judgment jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, is a matter of district court discretion.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287-88 (1995) ("[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.").  That discretion may properly be exercised only when the controversy is "of *sufficient immediacy and reality* to warrant the issuance of a declaratory judgment."  *White v. National Union Fire Insurance Co. of Pittsburgh, PA*, 913 F.2d 165, 168 (4th Cir. 1990), *quoting Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (emphasis added).  The claim must reflect a controversy capable of "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *West v. Bank of Commerce & Trusts*, 153 F.2d 566, 569 (4th Cir. 1946).

Thus, this Court's power to issue a declaratory judgment cannot salvage claims that are still hypothetical under state substantive law.  As demonstrated by United Educators, the issues upon which National Union seeks a declaration *may never arise at all*.  Memorandum at 12-13.  We will not know until the end of the day, when the underlying claims are resolved, whether National Union has paid more than its fair share of Duke's total liability for those claims, so as to be entitled to equitable contribution; we assuredly are not likely to have a situation where National

Union pays amounts that it does not itself owe to Duke, so as to be entitled to equitable subrogation. If National Union ends up owing its full limits under its policies *irrespective of* United Educators' alleged coverage, then it will <u>never</u> have a claim for contribution or for equitable subrogation. Thus, the issues purportedly presented by National Union for decision may never need to be resolved, are hypothetical only, and are not proper for declaratory judgment.[8]

Moreover, the North Carolina case law effectively and wisely allows underlying cases to be resolved before contribution or equitable subrogation claims proceed – thus avoiding the possibility that insurer disputes would interfere with the defense of underlying claims. *See, e.g.*, Memorandum at n. 11. North Carolina law's reluctance to resolve such claims prematurely counsels against seizing jurisdiction over these claims under color of declaratory judgment.

## V. The "Other Insurance" Clauses Are Not Mutually Repugnant, And National Union's Policy Pays First

National Union suggests that its policy and the UE Excess Policy impose the same obligations with respect to paying Duke's defense costs and that United Educators now has an obligation to pay such costs because the "underlying limit retention" has been exceeded. Opposition at 18-19. But this is flatly wrong: *National Union* has a contractual obligation to "advance defense costs" before resolution of a claim. In contrast, United Educators' obligation to pay "damages," including defense costs, does not arise until *after* "the Insured's liability has been

---

[8] *United Educators Insurance v. Everest Indemnity Insurance Co.*, 2009 WL 210714 (M.D. Fla. 2009), cited by National Union (Opposition at 15 n. 7), reflects the right approach: United Educators asserted equitable subrogation *after* the underlying action was settled to recover sums it paid, but did not owe.

9

established by judgment after actual trial or by written agreement" *and* the "ultimate net loss" has been determined to exceed the "underlying limit retention."

Next, while conceding that "the language utilized is not identical," National Union asserts that the "other insurance" provisions in its Protector policy and in the UE Excess Policy have the same "effect," and that this creates "mutual repugnance." Opposition at 19. But the other insurance clauses here do not have the "same effect" because they do not have the same language.

National Union cites *Aetna Casualty & Surety Co. v. Continental Insurance Co.*, 110 N.C. App. 278, 282, 429 S.E.2d 406, 409 (1993), in which the court concluded that, "try as we might, we can discern no material difference" in the two "other insurance" provisions at issue in the case before it. The *Aetna* court acknowledged that "mutual repugnance" is limited to the situation where "two policies both contain identical excess clauses, or excess clauses which are worded in such a way that it is impossible to distinguish between them or to determine which policy is primary[.]" *Id.* Here, the "other insurance" clause in the UE Excess Policy contains a basic provision that National Union's lacks, namely that "nothing in this Policy . . . shall be construed to require this Policy to contribute with . . . such other insurance." That clause precludes the contribution that National Union claims – and reinforces the conclusion that the UE Excess Policy is an excess policy that pays, if at all, only after National Union's pays. The UE Excess Policy does not contribute, pursuant to the plain language of the policy, and thus North Carolina law.

## CONCLUSION

The Court should dismiss the Third-Party Complaint.

Respectfully submitted this the 1st day of May, 2009.

                                      SMITH, ANDERSON, BLOUNT, DORSETT,
                                      MITCHELL & JERNIGAN, L.L.P.

*Of Counsel*                                By: /s/ K. Alan Parry
                                      James K. Dorsett, III

CROWELL & MORING LLP         NCSB 7695
Clifton S. Elgarten                    K. Alan Parry
Kathryn A. Underhill               NCSB 31343
Elaine Panagakos                  Attorneys for Third-Party Defendant
Michael T. Carolan                P. O. Box 2611
1001 Pennsylvania Ave., N.W.    Raleigh, NC  27602-2611
Washington, DC 20004             Telephone:  (919) 821-1220
Telephone: (202) 624-2500        Facsimile:  (919) 821-6800
Facsimile: (202) 628-5116         jdorsett@smithlaw.com
                                      aparry@smithlaw.com

<u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that a copy of the foregoing document was served on the following parties to this action by electronic filing and/or by depositing a copy of the same in the United States Mail postage prepaid and addressed to:

>David S. Coats
>dcoats@bdixon.com
>J.T. Crook
>jcrook@bdixon.com
>Bailey & Dixon
>Attorneys for Defendant
>P. O. Box 1351
>Raleigh, North Carolina  27602
>
>Gregg E. McDougal
>gmcdougal@kilpatrickstockton.com
>Betsy Cooke
>bcooke@kilpatrickstockton.com
>Kilpatrick Stockton, LLP
>3737 Glenwood Ave., Suite 400
>Raleigh, NC  27612
>
>Jerold Oshinsky
>Jonathan M. Cohen
>Ariel Shapiro
>1100 New York Ave., N.W., Suite 700
>Washington, D.C.  20005

This the 1st day of May, 2009.

/s/K. Alan Parry