IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
Civil Action No: 1:08-CV-0854

| | |
|---|---|
| DUKE UNIVERSITY; DUKE UNIVERSITY HEALTH SYSTEM, INC., </br></br>Plaintiffs, </br></br>v. </br></br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., </br></br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) |  |

**PLAINTIFFS' RESPONSE TO THIRD-PARTY DEFENDANT UNITED EDUCATORS' MOTION TO DISMISS OR STAY THIRD-PARTY COMPLAINT**

Plaintiff Duke University ("Duke") hereby files this Response to the Motion to Dismiss or Stay National Union's Third-Party Complaint filed by Third-Party Defendant United Educators Insurance ("UE").[1]  *See* Dkt. 9.  In its Motion and Memorandum in Support, UE argues that this Court should dismiss National Union's third-party claims against it due to National Union's alleged failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

As a preliminary matter, UE's Motion is predicated in large part on various substantive arguments concerning the underlying policies that UE issued to Duke.  In effect, UE seeks to have this court "examine the *merits* of the coverage issues" surrounding the UE policies, and to dismiss the claims brought against UE on that basis.

---

[1] In filing this Response, Duke addresses solely UE's substantive arguments that UE does not have a current obligation to pay Duke's Defense Costs; Duke's Response does not purport to address the arguments raised by UE concerning the arbitrability of this dispute.

US2008 616301.1

*See* UE Mem. in Supp. at 15 (emphasis added). UE's substantive arguments as to the proper interpretation of the parties' policies raise complex factual and legal issues well beyond the scope of National Union's Third Party Complaint; accordingly, they are not appropriate for adjudication on a Rule 12(b)(6) Motion. Further, even if the Court chooses to address UE's substantive arguments surrounding the policies at this stage of the litigation, the various positions taken by UE in its Motion to Dismiss are lacking in legal merit, and are rather an attempt to limit or delay UE's obligations to provide insurance coverage to Duke under the policies that it issued. Such an attempt should be rejected by this Court.

## PRELIMINARY STATEMENT

This case arises out of the ongoing failure of National Union and UE to advance and pay all of Duke's defense costs and indemnity costs with respect to certain claims and lawsuits brought against Duke by various individuals associated with the Duke University 2005-2006 Men's Lacrosse Team (the "Lacrosse cases"). *See generally* Compl. ¶ 1.[2] Both National Union and UE have expressly acknowledged that their policies potentially cover the allegations made against Duke in the underlying Lacrosse cases. *See, e.g.*, National Union Countercl. ¶ 38; National Union Third-Party Compl. ¶ 6. Indeed, the allegations in the Lacrosse cases fall squarely within the policies' coverage. Rather than meeting their defense-payment obligations, however, National Union and UE have pointed to one another, with each insurer asserting that the other should pay first or

---

[2] Duke hereby incorporates the Factual Background section of its November 24, 2008 Complaint against National Union as if fully stated herein. *See* Dkt. 1.

2

instead. While Duke's insurers continue to dispute their respective defense-payment duties, Duke has had to pay substantial amounts of its own money to defend itself from the claims made against it.

With respect to UE, the UE Policies expressly obligate UE "to pay on behalf of" Duke all of Duke's covered Defense Costs. *See* UE Policies § 1 at 1 (UE Mem. in Supp. Ex. 1).[3] Given this language, UE must pay Duke's Defense Costs as they are incurred. Nonetheless, in its Motion to Dismiss, UE attempts to avoid its contractual responsibility to pay Defense Costs on Duke's behalf, relying on two substantive arguments.

First, UE argues that UE's defense-payment obligations arise only after National Union has first paid $5 million to Duke under its 2005-2006 policy. UE Mem. in Supp. at 18-20. UE takes this position *despite the fact* that National Union has already paid $5 million under its 2005-2006 policy; thus, UE cannot use this argument to excuse or delay its concomitant payment obligation. UE's position also fails under the case law, which flatly forbids insurers from withholding payments to their policyholder while the insurers engage in a dispute as to which of them must pay first. *See E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 860 F. Supp. 124, 127 (S.D.N.Y. 1994).

Second, UE asserts that its defense-payment obligation is not triggered unless and until Duke becomes legally obligated to pay an underlying claim based on a "judgment after trial" or a settlement to which UE consents. *See* UE Mem. in Supp. at 16. This

---

[3] UE only attached one of Duke's policies to its Memorandum in Support of its Motion to Dismiss.

3

argument fails, however, because it would transform UE's "pay on behalf of" obligation into an obligation to indemnify Duke only after Duke pays its own Defense Costs.

In any event, as discussed below, UE's arguments in support of dismissal go well beyond the scope of a standard Rule 12(b)(6) Motion; essentially, UE is asking this Court to make a substantive determination as to Duke's right to insurance coverage under these policies. Because such a determination would be premature at this stage of the litigation, and would be inappropriate in ruling on a Motion to Dismiss under Rule 12, UE's Motion should be denied. However, even assuming that this Court opts to "examine the merits of the coverage issues" under the UE policies, UE Mem. in Supp. at 15, both of UE's substantive arguments in support of dismissing the claims fail, because they conflict with the policy language and with a number of well-established principles of insurance law.

## FACTUAL BACKGROUND

For the relevant policy periods, Duke purchased three I&O policies from National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and UE, which cover Duke and certain individuals for claims alleging a wide array of wrongful acts. *See* National Union Countercl. ¶¶ 4, 39; National Union Third-Party Compl. ¶ 5. For the policy period covering December 4, 2005 to December 4, 2006, Duke purchased a first-layer claims-made I&O policy from National Union (the "National Union 2005 I&O Policy"). *See* National Union Countercl. ¶ 4. The National Union 2005 I&O Policy has an aggregate limit of $5 million, subject to a $500,000 aggregate retention. National Union Answer, Ex. F. For that same policy period, Duke purchased a second-layer I&O policy from UE (the "UE 2005 I&O Policy"), which is in excess of the National Union

2005 I&O Policy. *See* National Union Third-Party Compl. ¶ 5. The UE 2005 I&O Policy also contains a $5 million aggregate limit. *Id.* For the policy period from December 4, 2006 to December 4, 2007, Duke purchased a single I&O policy from National Union, which has a $10 million aggregate limit and is subject to a $500,000 aggregate retention (the "National Union 2006 I&O Policy"). National Union Countercl. ¶ ¶ 39, 41.

Duke also purchased general liability ("GL") insurance from UE for the periods January 1, 2006 to January 1, 2007 (the "UE 2006 GL Policy") and January 1, 2007 to January 1, 2008 (the "UE 2007 GL Policy"). National Union Third-Party Compl. ¶ 3. Each of the two UE Policies has a per occurrence limit of liability of $25 million, each subject to a $2 million retention. *See generally* UE Policies.

The Insuring Agreement of each of the UE Policies obligates UE "to pay on behalf of [Duke]" the "Ultimate Net Loss" that Duke "shall be obligated to pay" as "Damages." *See* UE Policies § 1, at 5. "Damages" is defined as expressly including "Defense Costs," which consist of, in relevant part, "the fees and expenses of investigation and defense of Claims, and the costs of appeal or similar bonds for amounts up to the Limit of Liability, and includes reasonable attorneys' fees and disbursements." UE Policies § 1, at 1-2.

Duke fully complied with its obligations under the pertinent policies. *See* National Union Countercl. ¶¶ 7-8, 13-15, 18. Additionally, both National Union and UE have expressly recognized that their policies potentially cover the allegations made against Duke in the underlying Lacrosse cases. *Id.* ¶ 38; National Union Third-Party Compl. ¶ 6. Yet both UE and National Union have refused to reimburse Duke for the substantial

5

amounts that Duke has incurred in Defense Costs in defending the underlying Lacrosse cases. Rather than fulfill their obligations under the policies, UE and National Union have chosen to argue among themselves as to which company should pay first. Indeed, it was only *after* Duke filed its Complaint against National Union that National Union finally paid Duke $5 million—an amount equal to the aggregate limit of the National Union 2005 I&O Policy (but well below the amount of Defense Costs that Duke has already incurred in connection with the Lacrosse cases).

Now, faced with third-party claims against it, UE attempts to argue that it has no present duty to pay any Defense Costs. Because UE's arguments are well beyond the scope of a Rule 12(b)(6) Motion to Dismiss, and because its arguments against being liable to Duke lack merit, its Motion to Dismiss the Third-Party Complaint should be denied.

## ARGUMENT

I. **UE'S ARGUMENTS INVOLVE SUBSTANTIVE LEGAL AND FACTUAL DISPUTES WELL BEYOND THE SCOPE OF A MOTION TO DISMISS**

As an initial matter, UE's Motion to Dismiss raises various issues surrounding the substantive terms of the UE Policies and the contours of UE's obligations in light of those provisions. In effect, UE, through its Motion, asks this court to "examine the merits of the coverage issues" between the parties. *See* UE Mem. in Supp. at 15.[4] Yet

---

[4] Among other substantive issues raised in UE's Motion, UE makes arguments concerning "the character of the respective policies as 'Protector' and 'Excess' and National Union's obligation to advance defense costs as compared to the end-of-day nature of United Educator's obligation." *See* UE Mem. in Supp. at 20. Such substantive merits arguments are plainly inappropriate in ruling on a Motion to Dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

6

UE's substantive arguments are well beyond the scope of a standard Motion to Dismiss under Rule 12(b)(6), and, accordingly, UE's Motion—predicated on a number of substantive policy issues, legal issues, and questions of fact between the parties—should be denied as premature at this stage of the litigation.[5]

UE's Motion raises various merits arguments concerning the substance of the underlying policies and their proper interpretation. *See generally* UE Mem. in Supp. at 15-20. A ruling on the coverage questions raised by UE would plainly affect Duke; essentially, UE wants to dispose of certain pivotal issues of insurance coverage through the limited mechanism of a Motion to Dismiss. If, as UE urges, this Court were to make a substantive determination at this stage as to the "merits of the coverage issues," UE Mem. in Supp. at 15, Duke would be severely prejudiced, as the insured seeking coverage from multiple insurers—particularly given the early stage of the proceedings and the fact that no discovery has yet commenced between the parties.

Simply put, UE's substantive arguments concerning the insurance policies and their scope are inappropriate for a Motion to Dismiss. *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (in ruling on a Rule 12(b)(6) motion the court is "not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses"); *Hall v. Tawney*, 621 F.2d 607, 614-15 (4th Cir. 1980) (court

---

[5] Similarly, National Union's Memorandum of Law in Opposition to UE's Motion raises a number of premature legal and substantive issues that are not appropriately resolved on a motion to dismiss. *See, e.g.*, National Union Mem. in Opp. at 19 (arguing that, because the "other insurance" clauses in the UE and National Union policies are mutually repugnant, "the coverage afforded to Duke in the Underlying Actions should be prorated according to the respective limits of the 2006 Policy and the UE Policy"). As with UE's substantive arguments, the issues raised in National Union's response Brief should not be considered by the Court at this time.

in ruling on a Rule 12(b)(6) motion should not assess the substantive merits of plaintiffs' case or the likely outcome of claims when later subject to "full discovery and other pre-trial procedures or eventually, if need be, to the testing of proof on trial"); Wright & Miller, 5B *Federal Practice and Procedure* § 1356 (stating that the Rule 12(b)(6) Motion "is not a procedure for resolving . . . the substantive merits of the plaintiff's case"); *see also Piper Jaffray Cos., Inc. v. Nat'l Union Fire Ins. Co.*, 967 F. Supp. 1148, 1154-55 (D. Minn. 1997) (stating, in light of conflicting interpretations of language in an insurance policy, that "only with the benefit of a complete record can the Court resolve this question [of coverage]," and, accordingly, that "it is premature to dismiss this action or otherwise declare the rights of the parties" with respect to the policy); *Commercial Union Assur. Co., PLC v. Professional Divers of New Orleans, Inc.*, No. 95-2449, 1997 WL 39291, at *11 (E.D. La. 1997) (refusing to dismiss case where questions concerning meaning of policy language and facts surrounding the circumstances of underlying claim remain "necessary to a determination of a coverage issue").

Given the fact that no discovery as to the facts of this dispute has yet been undertaken—indeed, the facts as to when Duke's coverage was triggered remain disputed by the insurers—and Duke has not yet been provided an opportunity to establish its right to coverage under the respective policies, this court should deny UE's substantive arguments as premature for purposes of ruling on a Rule 12(b)(6) Motion. Nevertheless, even assuming this Court chooses to delve into the underlying policies at issue in this case and how they should be interpreted, dismissal of UE as a Third-Party Defendant is still inappropriate, since the language of the policies demonstrates that UE has a present,

8

ongoing legal duty to pay Duke's Defense Costs and the applicable law favors Duke's position.

II. **UE'S SUBSTANTIVE ARGUMENTS FAIL BECAUSE UE HAS A CURRENT AND ONGOING OBLIGATION TO PAY DUKE'S DEFENSE COSTS**

   A. North Carolina law governs the dispute between Duke and UE.

With regard to the substantive arguments made by UE, UE first asserts that New York law governs the interpretation of the insurance policies between Duke and UE, relying on the New York choice of law provision contained in UE's policies. *See* Mem. in Supp. at 6-7; UE 2005 I&O Policy § 24; UE GL Policies § 17. Contrary to this assertion, the New York choice of law provision referred to by UE is void and unenforceable as a matter of North Carolina law—and North Carolina law plainly applies to this dispute.

Section 58-3-1 of the North Carolina General Statutes provides that "*[a]ll contracts* of insurance on property, lives, or interest in this State shall be deemed to be made therein . . . and are subject to the laws thereof." *Id.* (emphasis added). The Supreme Court of North Carolina has expressly applied this statute to a provision in an insurance policy—comparable to the one in the UE Policies—that provided for the policy to be "governed by, subject to, or construed only according to the laws of the State of New York," concluding that the provision was "void insofar as the courts of this State are concerned." *See Cordell v. Bhd. of Locomotive Firemen & Enginemen*, 208 N.C. 632 (1935); *see also St. Paul Fire & Marine Ins. Co. v. Hanover Ins. Co.*, 187 F. Supp. 2d

9

584 (E.D.N.C. 2000). Because UE's Policies involve the coverage of property and interests located in the state of North Carolina, the Policies are "deemed to be made" within the state of North Carolina, and their interpretation is likewise governed by North Carolina, rather than New York, law.[6] Indeed, the application of New York law to the Policies would contravene the strong fundamental public policy of North Carolina, as set forth in N.C. Gen. Stat. § 58-3-1, requiring that contracts concerning the insurance of interests or property located within the state be interpreted under North Carolina law.

> B. UE Cannot Withhold Defense Payments While The Insurers Dispute Which Insurer Must Pay First.

National Union and UE each have independent contractual obligations to pay Duke's covered Defense Costs. Despite this obligation, National Union and UE continue to point the finger at one another, arguing as to which insurer should be required to pay Duke first. Under both the language of the policies and the applicable law, however, National Union and UE are plainly prohibited from withholding Defense Costs based on ongoing disputes between them as to which insurer has to pay first and how to allocate between them the responsibility to pay Defense Costs.

It is well-established that insurers may not withhold defense payments from their policyholders while the insurers dispute which carrier should pay first. That is, "payment

---

[6] Although Duke contends that North Carolina law governs this dispute, the analysis of UE's substantive arguments under New York law leads to the same conclusion—namely, that UE's claims lack legal merit—since New York law, like North Carolina, makes clear that an insurer has an unequivocal duty to defend if a claim "even potentially" falls within the terms of the policy. *See, e.g.*, *B.P. Air Conditioning Corp. v. One Beacon Ins. Group*, 8 N.Y.3d 708, 713-14, 840 N.Y.S.2d 302, 305 (2007); *see also Int'l Couriers Corp. v. North River Ins. Co.*, 44 A.D.3d 568, 569, 844 N.Y.S.2d 253 (App. Div. 1st Dep't 2007).

of claims of the insured must take priority over matters of inter-insurer allocation." *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 860 F. Supp. 124, 127 (S.D.N.Y. 1994). As the *Squibb* court explained:

> Although entitled to allocation in connection with disputes among carriers, an insurer cannot decline to pay amounts due under its policy until matters of pro rata allocation among carriers are resolved. To permit this would encourage delay in resolving inter-insurer disputes since each disputing insurer could claim it need not pay until the other's status is determined. Such a procedure would also require adjudication of the status of each carrier before any would be required to pay under the policies involved. This would exalt obfuscation and defeat the contractual obligations undertaken in the policies involved.

*Id.*

Nevertheless, UE asserts that it has no obligation to pay Duke under UE's GL policies *unless and until* National Union pays its full policy limits for each applicable National Union policy. At the same time, UE does nothing to refute the fact that National Union has *already* paid $5 million under the National Union 2005 I&O Policy, an amount equal to the full limits of that Policy.[7]

The insurers cannot properly withhold payment while they argue among themselves as to which insurer must pay first. Because UE concedes that at least certain of the allegations are potentially covered under at least one of its policies—namely, the policy that is in excess of the National Union 2005 I&O Policy under which National

---

[7] Instead, UE continues to refuse to pay Duke's Defense Costs. While National Union and UE engage in a protracted dispute as to which insurer is obligated to pay Duke, Duke has been forced to bear the financial impact of its own defense and settlements, notwithstanding the tens of millions of dollars of insurance it purchased from these insurers.

11

Union has already paid its full limits—UE currently is obligated to pay Defense Costs that Duke has, and may in the future, incur with respect to the potentially covered claims.

      C.      The UE Policies Obligate UE To Pay Duke's Defense Costs As They Are Incurred.

The UE Policies expressly obligate UE "*to pay on behalf* of [Duke]" Duke's Ultimate Net Loss, which includes Defense Costs. UE Policies § 1, at 1 (emphasis added). Despite this language, in an effort to evade—or at least delay—its defense-payment obligations, UE's Motion relies on separate language in Paragraph 6 of the UE Policies, arguing that it is obligated to reimburse Duke's Defense Costs only *after* Duke pays these costs itself, and, further, that UE's obligations are only triggered after Duke's liability is established by a "judgment after trial" or a settlement to which UE consents.

UE's proposed interpretation completely ignores the Policy's "pay on behalf of" language and with the well-established law that requires insurers to pay defense costs *as they are incurred*. The "pay on behalf of" language makes plain that UE must stand in Duke's shoes, paying Defense Costs as they are incurred so that Duke is not required to pay these expenses out of pocket. *See PepsiCo. v. Cont'l Cas. Co.*, 640 F. Supp. 656, 659 (S.D.N.Y. 1986) (under a "pay on behalf of" policy, insurer must pay defense costs as they are incurred). Indeed, the use of "pay on behalf of" language in the UE Policy makes the Policy akin to a liability policy, rather than one for indemnity. *See* Thomas F. Segalla, 7A *Couch on Insurance* § 103.5 (3d ed. 2008) ("An insurance policy is one of liability, rather than indemnity, where it states that the insurer 'will pay on behalf of the insured . . .'"). In contrast to an indemnity policy, a "pay on behalf of" policy obligates

12

an insurer to pay "as soon as the insured incurs liability for the loss; the insured need not pay the loss first." *Little v. MGIC Indem. Corp.*, 836 F.2d 789, 793 (3d Cir. 1987).

The U.S. Court of Appeals for the Ninth Circuit, in *Okada v. MGIC Indemnity Corp.*, 823 F.2d 276 (9th Cir. 1986), went to great lengths to distinguish between liability policies—like the UE Policies at issue in this case—and indemnity policies. According to the court, a policy that is based on "loss as incurred" rather than on "loss paid out" is properly characterized as a liability policy. In addressing policy language similar to the language used in the UE Policies, the court held:

> Since the policy is for liability rather than indemnity, payment by MGIC for loss is not conditioned upon the payment of damages by the directors. Whenever "loss" occurs (*i.e.*, whenever the directors are "legally obligated to pay" on a covered claim), MGIC must pay that amount. The policyholders thus are assured that they need not expend their own funds in order to receive protection for liability. The costs of the "defense of legal actions" are included in the definition of "Loss" in Section 1(d). Thus, in the absence of other provisions, the policy demands that MGIC *pay those costs when the directors become legally obligated to pay them*.

*Okada*, 823 F.2d at 280 (emphasis added).

Entirely ignoring the "pay on behalf of" language in the Policies, as well as the law requiring an insurer to pay Defense Costs as they are incurred, UE argues in its Motion that under Paragraph 6 its defense-payment obligation does not arise unless and until "liability is established by judgment after actual trial" or a settlement to which UE consents. UE Policy ¶ 6. UE takes this position despite the fact that the intent of the "judgment after actual trial" language is to apply solely to UE's separate *indemnity*

13

obligation; the language appears in an entirely separate section of the Policies. In contrast, there is no such qualifying language in the opening clause, which sets forth UE's broad and general obligation to pay any "Loss," including Defense Costs, "on behalf of" Duke. *See* UE Policies §1.

Further, although it is true the UE Policies provide that UE shall not be required to pay "Damages" until "after the Insured's liability has been established by judgment after actual trial or by written agreement," UE Policies ¶ 6, the limiting language of Paragraph 6 is inconsistent with UE's broader obligation, contained in the opening section of the UE Policies, to "pay on behalf of" Duke its "Ultimate Net Loss," which is expressly defined as including Defense Costs. *Id.* at 5, 2. Given this inconsistency, the broad "pay on behalf of" language trumps the narrow (and inartfully worded) indemnity language of Paragraph 6, thereby demonstrating that UE has a *present* duty to pay Defense Costs as incurred. *See, e.g.*, *Okada*, 823 F.2d at 278, 280 (where Policy similarly requires the insurer to "pay . . . on behalf of" the insured all "Loss" that the insured becomes "obligated to pay," concluding that insurer has a duty to pay defense costs as they are incurred—and that insurer's attempt to limit this broad duty via separate policy language rendered the policy internally inconsistent and ambiguous, such that it should be construed against the insurer and in favor of the concurrent duty to pay defense costs); *Little*, 836 F.2d at 794-95 (finding "Loss" to be broadly defined as including Defense Costs, and holding that any confusion as to separate limiting language in the policy—purporting to narrow the duty to pay—should be construed against the insured, thereby "requir[ing] it to pay [] defense costs as they come due").

14

UE's argument against its concurrent obligation to pay contradicts the bedrock principle of insurance law that the defense-payment obligation is far broader than the duty to pay for liability. Under applicable law, an insurer's duty to defend "is broader than its obligation to pay damages incurred by events covered by a particular policy." *Pulte Home Corp. v. Am S. Ins. Co.*, 647 S.E.2d 614, 617 (N.C. Ct. App. 2007); *see also BP Air Conditioning*, 8 N.Y.3d at 713-14, 840 N.Y.S.2d at 305 (same). The same standard applies to determine whether a claim or lawsuit triggers an insurer's duty to defend or its duty to pay defense costs. *See Fed. Ins. Co. v. Kozlowski*, 18 A.D.3d 33, 41-42, 792 N.Y.S.2d 397 (App. Div. 1st Dep't 2005) ("insurers are required to make contemporaneous interim advances of defense expenses where coverage is disputed") (citation omitted).[8] Accordingly, an insurer "is excused from its duty to defend only if the facts [alleged in the claim or complaint] are *not even arguably* covered by the policy." *Pulte*, 647 S.E.2d at 617 (citation omitted) (emphasis added). Here, UE has already recognized that some or all of the claims against Duke are potentially covered under the UE Policies. Thus, UE must cover Duke's Defense costs as they are incurred.

Under UE's proposed interpretation the Policies, UE would never be obligated to pay Duke's Defense Costs if Duke prevailed in an underlying claim in any pre-litigation motion—for example, on a motion to dismiss, which is not a "judgment *after trial*." UE GL Policies ¶ 6. Based on UE's proposed reading of Paragraph 6, UE would feasibly

---

[8] *See also In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 464 (S.D.N.Y. 2005) (same); *HLTH Corp. v. Agric. Excess & Surplus Ins. Co.*, C.A. No. 07C-09-102 RRC, 2008 WL 3413327, at *13 (Del. Super. Ct. July 31, 2008) (applying the same general principles where insurer's duty was to advance legal costs as applicable to the duty to defend).

15

never be obligated to pay Duke's Defense Costs if Duke defeated liability at any earlier stage of the litigation (since there would be no "liability established"). *Id.* In effect, then, UE argues that it only has to pay for an unsuccessful defense.

UE's interpretation of the GL Policy begs an illogical result: under its view, any insured would opt to incur some liability—even if there were none whatsoever—as a way to shift costs to the insurer, rather than vigorously defending liability to protect the insurer's assets. This interpretation would violate the well-established rule that an insurance policy should not be construed in a manner that would lead to absurd results. *See Catalina Enter., Inc. Pension Trust v. Hartford Fire Ins. Co.*, 67 F.3d 63, 66 (4th Cir. 1995) (stating that it is "axiomatic" that a court should avoid reading an insurance policy "in a way that produces an absurd result, especially when a reasonable interpretation is available"); *Garman v. New York Life Ins. Co.*, 501 F. Supp. 51, 53 (N.D. Ill. 1980) ("[A] literal interpretation of one [policy] provision should be avoided if such interpretation leads to unreasonable or absurd results.").

UE's interpretation of the Policies would render meaningless UE's duty in section 1 to pay Defense Costs *on Duke's behalf*. At the very minimum, because the "pay on behalf of" language is wholly inconsistent and irreconcilable with Paragraph 6 of the Policies, the provisions should be construed against UE and in favor of Duke. *See, e.g.*, *In re Hudson Holding Assocs.*, 108 B.R. 32, 35 (Bankr. S.D.N.Y. 1989) (citing *Westchester Resco Co. v. New England Reinsurance Corp.*, 818 F.2d 2, 3 (2d Cir. 1987) for the proposition that it is "fundamental" that where a written contract contains a "contradiction or apparently inconsistent provisions, the '*contra proferentem*' principle

16

requires that the contract be construed against the drafter"); *see also Okada*, 823 F.2d at 280-81 (separate policy language purporting to limit insurer's duty to pay any and all "Loss" "simply is unclear in its attempt," and therefore must be construed in favor of an interpretation that favors a "contemporaneous" payment obligation); *Little*, 836 F.2d at 794-96 (where policy is internally inconsistent, it must be construed in favor of a general "duty of contemporaneous payment").

At the very least, UE's reading of Paragraph 6 establishes a potential ambiguity in the Policy, which forecloses dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In construing insurance policies, "[a]n ambiguity exists where . . . 'the language of the policy is fairly and reasonably susceptible to either of the constructions asserted by the parties.'" *Maddox v. Colonial Life and Accident Ins. Co.*, 280 S.E.2d 907, 908 (N.C. 1981) (citation omitted); *N.C. Counties Liab. & Prop. Joint Risk Mgmt. Agency v. Curry*, 662 S.E.2d 678, 680 (N.C. Ct. App. 2008) (same) (citation omitted). North Carolina courts have long held that when a court is presented with evidence of ambiguous contractual language, a pending motion to dismiss must be denied. *See St. Paul Fire & Marine Ins. Co. v. Freeman-White Assocs., Inc.*, 366 S.E.2d 480, 484 (N.C. 1988) (holding that because the contract language at issue was ambiguous, the trial court erred in granting the motion to dismiss.); *Branch Banking and Trust Co. v. Lighthouse Fin. Corp.*, No. 04 CVS 1523, 2005 WL 1995410, at *5 (N.C. Super. Ct. July 13, 2005) (holding that "[t]he question[] of whether or not the contract is ambiguous . . . [is] better suited for summary judgment rather than Rule 12(b)(6)," and denying the motion to dismiss). In Duke's case, the relationship between the broad "pay on behalf of" language

in the UE Policy and the more narrow language contained in Paragraph 6 creates an inherent ambiguity within the UE Policy, thereby rendering this dispute inappropriate for dismissal based on UE's proposed construction.

In summary, UE's Motion raises a number of substantive issues concerning the proper interpretation of the UE Policies and the merits of the parties' dispute concerning UE's obligations under those Policies. Because such substantive arguments go well beyond the scope of a Motion to Dismiss under Rule 12(b)(6), UE's arguments against National Union's claims are prematurely raised, and its substantive positions should not be considered at this early stage of the litigation.

Nevertheless, even assuming this Court chooses to evaluate UE's substantive arguments, UE's Motion to Dismiss should nevertheless be denied, since its position is inconsistent with both the language of the Policies and applicable law.

US2008 616301.1

## **CONCLUSION**

For the foregoing reasons, Duke respectfully requests that this Court deny UE's Motion to Dismiss the Third-Party Complaint filed against it by National Union.

This the 4th day of May, 2009.

                                        KILPATRICK STOCKTON LLP

                                        /s/ Gregg E. McDougal_____
                                        Gregg E. McDougal
                                        N.C. State Bar No. 27290
                                        gmcdougal@kilpatrickstockton.com
                                        3737 Glenwood Avenue, Suite 400
                                        Raleigh, NC 27612
                                        Phone (919) 420-1800
                                        Fax (919) 420-1700

                                        GILBERT OSHINSKY LLP
                                        Jerold Oshinsky
                                        oshinskyj@gotofirm.com
                                        Jonathan M. Cohen
                                        cohenj@gotofirm.com
                                        Ariel E. Shapiro
                                        shapiroa@gotofirm.com
                                        Gilbert Oshinsky LLP
                                        1100 New York Ave, N.W., Suite 700
                                        Washington, D.C. 20005
                                        (202) 772-2200 Telephone

                                        *Attorneys for Plaintiffs Duke University and*
                                        *Duke University Health System, Inc.*

US2008 616301.1

# **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed with the Court using the CM/ECF system which will automatically send notice to the following counsel of record:

> **BAILEY & DIXON, LLP**
> David S. Coats
> dcoats@bdixon.com
>
> **SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL, AND JERNIGAN LLP**
> James Kye Dorsett , III
> jdorsett@smithlaw.com
>
> John T. Crook
> jcrook@smithlaw.com
>
> Kirk Alan Parry, Jr.
> aparry@smithlaw.com

And via first-class mail, postage prepaid, to the following non-CM/ECF participants:

> **CROWELL & MORING, LLP**
> Clifton S. Elgarten
> Elaine Panagakos
> Kathryn Underhill
> Michael T. Carolan
> 1001 Pennsylvania Ave., N.W.
> Washington, DC 20004

This 4th day of May, 2009.

                                      /s/  John M. Moye
                                      John M. Moye

KILPATRICK STOCKTON LLP
3737 GLENWOOD AVENUE
SUITE 400
RALEIGH, NC 27612