UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | | |
|---|---|---|
| DUKE UNIVERSITY AND DUKE UNIVERSITY HEALTH SYSTEM, INC. | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | ) ) ) ) | Case Number: 1:08-CV-0854 |
| Defendant and Third-Party Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| UNITED EDUCATORS INSURANCE, A RECIPROCAL RISK RETENTION GROUP, | ) ) ) ) | |
| Third-Party Defendant. | ) ) | |

**UNITED EDUCATORS' REPLY TO DUKE'S RESPONSE TO UNITED EDUCATORS' MOTION TO DISMISS OR STAY THE THIRD-PARTY COMPLAINT**

Duke University and Duke University Health System, Inc.'s "Response" to United Educators' Motion To Dismiss or Stay does <u>not</u> take issue with United Educators' showings:

(a) that National Union's Third-Party Complaint raises arbitrable issues that cannot proceed in this Court without undermining United Educators' arbitration agreement with Duke[1];

(b) that both Fed. R. Civ. P. 14 and 28 U.S.C. § 2201 (the Declaratory Judgment Act) grant this Court additional discretion to decline to proceed with National Union's claims; and

(c) that as a matter of North Carolina law, National Union's claims are premature.

Consequently, because the substantive issues concerning the meaning of the insurance policies belong in arbitration and are premature in any event, this Court should have no occasion to address those substantive issues concerning the meaning of the insurance policies.[2]

Nonetheless, in an abundance of caution, United Educators demonstrated (in Part IV of its opening Memorandum) that even if the Court were to reach those substantive issues of insurance

---

[1] Because the issues are referable to arbitration and decision here would undermine the arbitration clause, United Educators is entitled to a stay or dismissal under Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3. *See* United Educators' Memorandum In Support Of Its Motion to Dismiss or Stay the Third Party Complaint ("UE Memorandum") at 7-9. Moreover, even if stay or dismissal were not otherwise required, state or federal law estoppel principles would require National Union to proceed in arbitration, not in this Court. *See* UE Memorandum at 9-10; UE Reply In Support of Its Motion To Dismiss at 5-7.

[2] Duke says that "UE is asking this Court to make a substantive determination as to Duke's right to insurance coverage under these policies." Response at 4. But United Educators actually emphasized that coverage issues must be submitted to arbitration and that this Court should *not* address them. *See, e.g.,* UE Memorandum at 1, 2, 4, 7-8, 11, 12, 15, 20. United Educators explained that "if," contrary to United Educators' urging, "the Court finds that it must examine the merits of the coverage issues raised by National Union, the resulting analysis will reveal that National Union's claims fail on their merits." *Id.* at 15.

coverage, National Union's Third Party Complaint would have to be dismissed because National Union's insurance coverage theories are inconsistent with the plain language of the insurance policies. Duke takes issue only with that aspect of United Educators' Memorandum – the substantive issues of insurance coverage. But Duke's substantive coverage arguments are properly made only in the arbitration forum. United Educators addresses those issues here (as it did in its opening Memorandum) simply to show that the UE Excess Policy cannot be read to support Duke's or National Union's theories.

### A. Duke's Assertions About Disputes Between Insurers Miss The Mark

Duke contends that the existence of disputes between insurance companies over allocation or similar issues should not affect Duke's receiving coverage that is now supposedly owed to it. Duke Response at 10-11. Duke's theory applies, however, only when *both* insurers actually have current obligations to the insured. If, as is the case here, United Educators does <u>not</u> have a present obligation to Duke under the express terms of its UE Excess Policy, then a dispute among insurers will not create such an obligation and the ostensible theory that Duke cites simply does *not* apply. The existence of a dispute between insurers does not create an obligation to pay the insured if the terms of the insurance policy at issue do not create such an obligation.[3]

---

[3] Moreover, even if the Court were to consider and agree with Duke's assertion that United Educators has a present obligation to pay its defense costs, dismissal of National Union's Third-Party Complaint would still be required here. As United Educators demonstrates in its opening Memorandum at 16-20, the "other insurance" provisions in the applicable policies negate the allegations regarding "mutual repugnance" and "pro rata contribution" that form the basis of National Union's claims. Duke's Response does not dispute that point.

2

### B. Duke Misconstrues United Educators' Obligation With Respect to the Payment of Defense Costs

Duke focuses primarily on United Eductors' showing that its Excess Policy[4] only pays at the end of the day, when Duke's obligations have been finally determined by judgment or settlement. *See* Duke Response at 12-18.[5] In arguing that these policy provisions providing for payments being made after judgment or settlement do not mean what they say, Duke cites cases involving insurance policies that provide for a "duty to defend" the insured, suggesting that a duty to defend creates an immediate obligation on the part of the insurer to protect the insured. Duke Response at 15. Indeed, where a duty to defend is provided in the policy, it ordinarily requires the insurer to step in for and immediately provide the insured "legal representation" against claims possibly within the policy's coverage. *International Paper Co. v. Continental Casualty Co.*, 35 N.Y.2d 322, 325 (1974).

"Duty to defend" case law, however, is inapposite to the issue presented here, which, at most, involves an obligation to pay for the cost of defense, not to provide a defense. The UE

---

[4] Duke cites three United Educators policies: the 2006 UE Excess Policy, a successor Excess Policy for 2007, and a claims-made policy for the 12/4/05-12/4/06 period which was excess over the National Union policy for that period. Duke Response at 4-5. However, the 2006 UE Excess Policy is the only one relied on by National Union for its claims and thus the only one at issue here. In addition, Duke asserts that United Educators "concedes" potential coverage of the lacrosse claims under the UE claims-made policy. Duke is incorrect; United Educators made no such concession. To the contrary, United Educators has repeatedly informed Duke that the claims-made policy is inapplicable to the lacrosse claims.

[5] Duke asserts that "North Carolina law governs the dispute between Duke and UE." Response at 9. But choice of law is immaterial to the motion to dismiss. *See* UE Reply In Support of Its Motion to Dismiss at 1-2. Moreover, with respect to "the dispute between Duke and UE," any choice of law issue must be resolved in arbitration.

Excess Policy is indisputably *not* a "duty to defend" policy. UE Excess Policy ¶ 7 ("We have no duty to defend any insured[.]") The potential obligation to pay for the costs of defense under the UE Excess Policy is based upon the definitions section of the policy which defines "damages" to include "defense costs." *Id.*, ¶ 2. Paragraph 6 of the policy then establishes when UE must pay for "damages." It specifies that United Educators will pay "damages" "as soon as practicable after" two things: "the Insured's liability has been established by judgment after actual trial or by written agreement to which [UE has] consented;" and "it has been determined that the Ultimate Net Loss as a result of the Occurrence in question exceeds the Underlying Limit Retention amount." In other words, United Educators can be obligated to pay "damages" -- including "defense costs" -- only *after* the underlying matter has been concluded and it can be seen what is actually covered under the policy. *Stonewall Insurance Co. v. Asbestos Claims Management Corp.*, 73 F.3d 1178, 1219 (2d Cir. 1995) (upholding district court's conclusion that "under policies containing a duty to reimburse defense costs but not a duty to defend, the Insurers have a duty to reimburse defense costs for claims that are established to be covered through judgment and settlement, and not for claims only potentially falling within the policy's coverage.")

Outside of duty to defend policies, courts have refused to imply an obligation to pay defense costs "as incurred" where no such obligation was stated in the policy.[6] None of the cases cited by Duke that required an insurer to pay defense costs "as incurred" involves a policy that -- like United Educators' policy -- expressly directs the timing of payment to take place *after* the

---

[6] *See In re Kenai Corp.,* 136 B.R. 59 (S.D.N.Y. 1992); *In re Ambassador Group, Inc.,* 738 F. Supp. 57 (E.D.N.Y. 1990).

4

underlying liability was resolved. Indeed, many of the cases cited by Duke specifically note that the policies at issue lacked policy language that would have required a different result.[7]

There is no "inconsistency" between the timing provisions of Paragraph 6 and the Insuring Agreement of the policy in Paragraph 1. The Insuring Agreement is expressly "subject to the Limit of Liability, exclusions, definitions, conditions and other terms of this Policy" – one of which, of course, is Paragraph 6. Thus, the agreement in Paragraph 1 to "pay on behalf of the Insureds [the applicable] portion of the Ultimate Net Loss" -- *i.e.*, that United Educators will, at an appropriate time, be obliged to pay creditors (including perhaps lawyers) directly on behalf of Duke, rather than merely reimburse Duke for payments that Duke has already made -- is itself expressly subject to Paragraph 6, which describes <u>when</u> payments have to be made by United Educators, which is after liability is established. There is nothing inconsistent about United Educators making a payment "on behalf of" Duke "after [its] liability has been established[.]"

---

[7] *See Pepsico, Inc. v. Continental Casualty Co.*, 640 F. Supp. 656, 659 (S.D.N.Y. 1986) ("under the policy" at issue, "final judgment is not a prerequisite to payment of defense costs.") *See also Little v. MGIC Indemnity Corp.*, 836 F.2d 789, 793-94 (3d Cir. 1987) ("To infer any other, later time for the insurer's duty to pay would be arbitrary because nothing in [the applicable policy provision] gives any guidance as to when this later time might be"); *Okada v. MGIC Indemnity Corp.*, 823 F.2d 276, 280 (9th Cir. 1986) (policy included the costs of the "defense of legal actions" in definition of "Loss"; "Thus, in the absence of other provisions, the policy demands that MGIC pay those costs when the directors become legally obligated to pay them.").

*In re Worldcom, Inc. Securities Litigation*, 354 F. Supp.2d 455 (S.D.N.Y. 2005), also cited by Duke, involved a National Union policy that *expressly obligated* the insurer to advance defense costs prior to the disposition of a claim. The *Worldcom* court took pains to distinguish *Stonewall*, *Kenai* and *Ambassador Group* on the basis of their different policy language, including the lack of any requirement to advance defense costs prior to the disposition of a claim. *Id.* at 467.

5

Duke is also incorrect that "the intent of the 'judgment after actual trial' language is to apply solely to UE's separate *indemnity* obligation[.]" Response at 13-14. That is not what the insurance policy says. The Definitions section creates a single obligation to pay covered "damages," including "defense costs" – and to make that payment, pursuant to Paragraph 6, after the insured's liability has been established by judgment or settlement. Neither does Paragraph 6, as Duke contends, "beg[] an illogical result" where the insured defeats "liability at any earlier stage of the litigation (since there would be no 'liability established')." Response at 15-16. At that point, the insured's "liability" *would* be "established" as zero.

### C. Duke Gains No Interpretation Advantage From the Alleged Ambiguity of the Policy

Paragraph 17 of the UE Excess Policy specifically provides for a situation in which the language of the policy "is deemed to be ambiguous or otherwise unclear," requiring that in that event, "the issue shall be resolved in the manner most consistent with the relevant provisions . . . without regard to authorship of the language and without any presumption or arbitrary interpretation or construction in favor of either the Insureds or [UE]." UE Excess Policy ¶ 17. Courts routinely enforce such provisions,[8] and there is no reason why a court would not enforce

---

[8] *See MK Ballistic Systems v. Simpson*, 2009 WL 86699 at *4 (N.D. Cal. 2009) (enforcing provision that "rules of construction to the effect that ambiguity is construed against the drafting Party shall be inapplicable in any dispute"); *In re Enron Corporation Securities, Derivative & "ERISA" Litigation*, 391 F. Supp.2d 541, 578 (S.D. Tex. 2005) (applying provision similar to UE Paragraph 17); *Young v. Stump*, 669 S.E.2d 148, 150-51 (Ga. App. 2008) (enforcing provision that contract "should be construed with fairness as between the parties and not more strictly enforced against one or the other party"); *DaimlerChrysler Corp. v. G-Tech Professional Staffing, Inc.*, 678 N.W.2d 647, 650 (Mich. App. 2003) ("Here, the parties specifically agreed

(continued…)

6

such a provision especially where, as here, the contract is between two sophisticated parties.[9]

Thus, Duke errs in asserting that any "inconsisten[cy]" in the policy is to be construed "against UE and in favor of Duke." Response at 16. Such issues are to be resolved "in the manner most consistent with the relevant provisions," not by automatic default to the interpretation urged by Duke.

## CONCLUSION

The Court should dismiss or stay the Third-Party Complaint.

Respectfully submitted this the 20th day of May, 2009.

SMITH, ANDERSON, BLOUNT,
DORSETT,MITCHELL & JERNIGAN, L.L.P.

*Of Counsel*

CROWELL & MORING LLP
Clifton S. Elgarten
Kathryn A. Underhill
Elaine A. Panagakos
Michael T. Carolan
1001 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

By: /s/ K. Alan Parry
James K. Dorsett, III
NCSB 7695
K. Alan Parry
NCSB 31343
Attorneys for Third-Party Defendant
P. O. Box 2611
Raleigh, NC 27602-2611
Telephone: (919) 821-1220
Facsimile: (919) 821-6800
jdorsett@smithlaw.com
aparry@smithlaw.com

---

(continued)
that the contract should not be construed against its drafter, and the parties may agree to any terms they wish that are not otherwise prohibited by law.")

[9] *Cf. Fountain Powerboat Industries, Inc. v. Reliance Insurance Co.*, 119 F. Supp.2d 552, 555 (E.D.N.C. 2000) ("when the parties to the insurance agreement are sophisticated and jointly negotiate the policy, there is no need to construe ambiguities against the insurance company.")

7

<u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that a copy of the foregoing document was served on the following parties to this action by electronic filing and/or by depositing a copy of the same in the United States Mail postage prepaid and addressed to:

>David S. Coats
>dcoats@bdixon.com
>J.T. Crook
>jcrook@bdixon.com
>Bailey & Dixon
>Attorneys for Defendant
>P. O. Box 1351
>Raleigh, North Carolina  27602
>
>Gregg E. McDougal
>gmcdougal@kilpatrickstockton.com
>Betsy Cooke
>bcooke@kilpatrickstockton.com
>Kilpatrick Stockton, LLP
>3737 Glenwood Ave., Suite 400
>Raleigh, NC  27612
>
>Jerold Oshinsky
>Jonathan M. Cohen
>Ariel Shapiro
>1100 New York Ave., N.W., Suite 700
>Washington, D.C.  20005

This the 20th day of May, 2009.

/s/K. Alan Parry