IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DUKE UNIVERSITY, and <br> DUKE UNIVERSITY HEALTH <br> SYSTEM, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL UNION FIRE <br> INSURANCE CO., <br><br> Defendant and <br> Third-party Plaintiff, <br><br> v. <br><br> UNITED EDUCATORS INSURANCE, <br><br> Third-party Defendant. | 1:08CV854 |

ORDER AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on the motion to dismiss or to stay the third-party Complaint filed by Third-Party Defendant United Educators Insurance ("United Educators"). (Docket No. 23.) This matter has been fully briefed, and the Court heard argument on the motion on January 25, 2010. For the reasons stated herein, this Court recommends that the third-party Complaint claims be stayed to allow Defendant National Union to initiate arbitration against United Educators.

A.   **Facts, Claims, and Procedural History**

Plaintiff Duke University and Duke University Health System, Inc., ("Duke") filed this action against National Union Fire Insurance Co. ("National Union") claiming that National Union breached its insurance policies by failing to advance and/or pay all of Duke's defense costs with respect to certain claims and lawsuits brought against Duke and certain of its directors, officers, and other insureds by various individuals associated with the Duke University 2005-2006 Men's Lacrosse Team (the "underlying claims"). (Docket No. 1, Complaint.)

National Union in turn filed a third-party Complaint against United Educators claiming that it was entitled to contribution from United Educators as well as subrogation and for declaratory relief. (Docket No. 8, Third-Party Complaint.)

The primary argument of United Educators is that the third-party Complaint against it should be dismissed or stayed because the coverage issues it raises are subject to arbitration pursuant to the insurance policy between United Educators and Duke. (Docket No. 24, Third-Party Def.'s Mem. in Supp. of Motion to Dismiss.) United Educators raises other arguments in support of dismissal or a stay, but the Court finds that the arbitration argument is dispositive and that the other issues need not be addressed. (*Id*.)

The insurance policy issued by United Educators to Duke contains an arbitration clause. (*Id*., Ex. 1 ¶ 18.) It reads as follows:

> All disputes that may arise between the Insureds and us in relation to this Policy, or for its breach, shall be finally settled by arbitration held according to the Commercial Arbitration Rules of the American Arbitration Association, by which the Insureds and we agree to be bound.

(Docket No. 24, Ex. 1 ¶ 18.)

National Union claims in its third-party Complaint that it is entitled to contribution from United Educators based on this policy between Duke and United Educators which contains that arbitration clause. (Docket No. 9, Answer at 39-40.) National Union also claims that based on this same policy it is entitled to recover by equitable subrogation from United Educators according to the liability limits of this policy in an amount to be determined at trial. (*Id*. at 40-41.) Finally, National Union seeks a declaratory judgment stating that the policy between Duke and United Educators is applicable with respect to the underlying claims and that United Educators is responsible for approximately 83% of the legal fees incurred by Duke on the underlying claims, subject to the policy limitations. (*Id*. at 41-42.)

National Union objects to the motion to dismiss or to stay. (Docket No. 31, Def.'s Mem. of Law in Opp'n to Third-Party Def.'s Motion to Stay or Dismiss.) With respect to United Educators' arbitration argument, National Union contends that North Carolina law, rather than the Federal Arbitration Act, applies and that under that law it cannot be bound by the arbitration agreement between Duke and United Educators. (*Id*.) If federal law applies, National Union argues that it has not received a "direct benefit" under the policy at issue and therefore is not subject to equitable estoppel. (*Id*. at 13.) Finally, National Union argues that

by its terms the arbitration clause does not encompass claims arising outside of the policy. (*Id*. at 14.)

**B. <u>Governing Law</u>**

The Federal Arbitration Act provides that:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

In addition, 9 U.S.C. § 3 provides that if suit is brought in federal court "upon any issue referable to arbitration under an agreement in writing for such arbitration," the court upon being satisfied that the issue involved in the suit is referable to arbitration under the agreement, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

If an action involves both arbitrating and non-arbitrating parties, the decision whether to stay litigation among the non-arbitrating parties pending the outcome of the arbitration is left to the court's discretion in controlling its docket. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n.22 (1983).

C.  **Analysis**

The federal law of arbitrability controls the question whether National Union is bound by the arbitration clause in the insurance policy between Duke and United Educators. State law governs such issues as the validity, revocability, or enforceability of contracts generally, but the federal substantive law of arbitrability is applicable to "any arbitration agreement within the coverage of" the Federal Arbitration Act (FAA) (9 U.S.C. § 2). *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000). Under the FAA, a written provision in any "contract evidencing a transaction involving commerce" to settle a controversy by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

National Union argues that because the arbitration clause at issue is in an insurance policy, which allegedly does not constitute "commerce," the rules and substantive law of the FAA "have no bearing" upon the motions at issue. (Docket No. 31 at 9.) National Union, however, relies upon cases decided upon a now out-dated view of the expanse of Congress' Commerce Clause power expressed in the FAA. (*Id.* at 10 (citing cases decided in the early 1900's for the proposition that insurance policies are not interstate commerce).)

The Supreme Court now interprets the phrase "involving commerce" as used in the FAA broadly. *See Allied-Bruce Terminix Cos., v. Dobson*, 513 U.S. 265, 281-82 (1995) ("involving commerce" requires only that the transaction in fact involve interstate commerce,

-5-

and does not require that the parties contemplated an interstate commerce connection). Courts now routinely find that insurance policies issued by a foreign corporation to citizens of particular states "involve commerce" and are subject to the FAA. *See Edstrom Indus., Inc. v. Companion Life Ins. Co.*, 516 F.3d 546, 549 (7th Cir. 2008) ("It is true that the [insurance] contract in which the clause is embedded affects interstate commerce, and so the [FAA] is applicable."); *Wailua Assocs. v. Aetna Cas. and Sur. Co.*, 904 F. Supp. 1142, 1147 n.2 (D. Haw. 1995) (The "United States Supreme Court has long recognized that the word 'commerce' as used in the Commerce Clause includes insurance."); *Kong v. Allied Prof'ls Ins. Co.*, No. 8:07-cv-2142-T-17, 2008 WL 2853677 (M.D. Fla. July 22, 2008) (insurance policy purchased through interstate commerce falls under coverage of FAA). National Union alleges in its third-party Complaint that United Educators is a foreign insurance company with its principal place of business in Maryland. (Docket No. 9 at 38.) Because Duke is a North Carolina entity, the contract made between them "involved commerce." National Union's argument that insurance contracts do not "involve commerce" under the FAA must therefore be rejected.

National Union concedes that under the FAA, a non-signatory to an agreement containing an arbitration provision may be equitably estopped from avoiding arbitration of a dispute if he received a direct benefit from the agreement. (Docket No. 31 at 12); *Int'l Paper Co.*, 206 F.3d at 418; see *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 160 (4th Cir. 2004). National Union argues, however, that it is not receiving a

direct benefit under the contract because it is neither seeking the benefit of coverage on its own behalf nor seeking to recover on its own behalf under the policy. (Docket No. 31 at 13.)

In *International Paper*, the Fourth Circuit found that International Paper was estopped from refusing to arbitrate its dispute with Schwabedissen because "[t]he Wood-Schwabedissen contract provides part of the factual foundation for every claim asserted by International Paper against Schwabedissen." 206 F.3d at 418. The same can be said for National Union's claims against United Educators; each claim in the third-party Complaint is based on the Duke-United Educators' insurance policy which contains the arbitration clause. Similar to the approach used in *International Paper*, the Fourth Circuit in *R.J. Griffin* looked to the "basis for the . . . claims" to determine whether a party was seeking a direct benefit from the contract. *R.J. Griffin*, 384 F.3d at 162. National Union has no contract with United Educators. Its claims rest entirely on the asserted obligations of United Educators to Duke under the insurance policy containing the arbitration clause. Although National Union may not be seeking coverage on its own behalf or to recover on its own behalf, it is claiming a benefit under the contract – the alleged obligation of United Educators under the contract to pay a portion of Duke's defense costs. National Union may not "'claim the benefit of the contract and simultaneously avoid its burdens.'" *Int'l Paper*, 206 F.3d at 418 (quoting *Avila Group, Inc. v. Norma J. of California*, 426 F. Supp. 537, 542 (S.D.N.Y. 1977)).

National Union's final argument is that the terms of the arbitration clause cover only the disputes that may arise between Duke and United Educators, and there are no such

-7-

disputes. (Docket No. 31 at 14.) The contract, of course, only mentions these entities because they are the only parties to the contract. National Union does not cite any authority in support of this argument. This argument is subsumed by the theory of equitable estoppel. Because National Union seeks to hold United Educators to this agreement, it is equitable to hold National Union to the arbitration clause in the agreement. *See R.J. Griffin,* 384 F.3d at 160.

Accordingly, United Educators' motion to stay all of the claims in National Union's third-party Complaint should be granted until arbitration has been had on those claims. *See* 9 U.S.C. § 3. Because less than all of the claims in this action are to be arbitrated, dismissal is not warranted. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (dismissal appropriate when all issues raised must be submitted to arbitration).

## Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that the motion to stay the third-party Complaint filed by Third-Party Defendant United Educators Insurance (Docket No. 23) be granted as set out above. Upon any order adopting this Recommendation, National Union shall initiate arbitration against United Educators within 60 days.

Further, **IT IS ORDERED** that discovery shall now commence between Plaintiffs and Defendant National Union under the exceptional track. LR26.1. The Court incorporates in this Scheduling Order pages 6-8 of the Joint Rule 26(f) Report, Docket No. 46.

                                                /s/ P. Trevor Sharp
                                           United States Magistrate Judge

Date: February 4, 2010