UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
Case Number: 1:08-CV-0854-UA-PTS

DUKE UNIVERSITY AND DUKE )
UNIVERSITY HEALTH SYSTEM, )
INC., )
)
v. )
)
NATIONAL UNION FIRE )
INSURANCE COMPANY OF )
PITTSBURGH, PA., et al. )

**DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER AND RECOMMENDATION THAT THE COURT GRANT THIRD-PARTY DEFENDANT UNITED EDUCATOR'S MOTION TO STAY**

Defendant and Third-Party Plaintiff National Union Fire Insurance Company of Pittsburgh, PA. (hereinafter "National Union"), pursuant to 28 U.S.C. § 636(b)(1)(B), and (C) and Fed. R. Civ. P. 72(b), hereby objects to the Magistrate Judge's recommendation to grant the motion of Third-Party Defendant United Educators, a Reciprocal Risk Retention Group (hereinafter "United Educators"), to stay National Union's Third-Party Complaint claims.

## NATURE OF THE CASE

Duke University and Duke University Health System, Inc. (hereinafter, collectively "Duke"), commenced this action to recover from National Union the proceeds of two separate National Union-issued insurance policies for the costs of Duke's defense of three separate legal actions[1] brought against Duke and others by individuals associated with the 2005-2006 Duke Men's Lacrosse Team ("the Lacrosse Team"), as

---
[1] *McFadyen, et al. v. Duke University, et al*, No. 1:07-CV-953 (M.D.N.C.) ("the *McFadyen* Action"); *Carrington, et al. v. Duke University, et al.*, No. 1:08-CV-119 (M.D.N.C.) ("the *Carrington* Action"); and *Pressler v. Duke University, et al.*, Durham Superior Court, 08 CVS 1311 (the "*Pressler I* Action")

well as indemnification for a settlement entered into between Duke and David Evans, Collin Finnerty, and Reade Seligmann (hereinafter "the Duke Three"). (Docket No. 1, ¶'s 2, 30-34).[2]

In response to Duke's Complaint, National Union asserted that it had fulfilled its obligation to Duke under both policies. National Union filed, contemporaneous with the filing of its Answer, a Third-Party Complaint against UE alleging three principle causes of action: (1) declaratory judgment; (2) equitable subrogation; and (3) pro-rata contribution. In response, United Educators moved to dismiss or stay National Union's Third-Party Complaint based upon an arbitration clause between UE and Duke in the general liability policy issued by United Educators to Duke.

On February 4, 2010, Magistrate Judge Sharp issued a Memorandum Opinion and Recommendation recommending that this Court grant United Educators' Motion to Stay, and directing National Union to initiate arbitration against United Educators of its Third-Party claims within sixty (60) days of the Court's order adopting that recommendation.

## STATEMENT OF THE FACTS

According to the media, in the early hours of March 14, 2006, Crystal Mangum reported to a nurse at Duke University Hospital that she was sexually assaulted at a party hosted by the Lacrosse Team. While the sexual assault investigation was ongoing, all but one of the members of the Lacrosse Team were ordered to submit to a DNA test; the entire team was suspended by Duke's President; and their coach, Mike Pressler, resigned. Before the criminal indictments against the Duke Three were made, the allegation of rape

---

[2] National Union has advanced to Duke the $5m policy limit under the 2006 Policy. Third-Party Complaint ¶ 19.

was highly publicized in the local news media, and the Lacrosse Team was allegedly vilified by members of the Durham community.

Prior to the indictments of the Duke Three, Duke sent - on March 30, 2006 - a letter by facsimile to National Union, providing notification of an incident, and including several news articles highlighting not only the rape allegation, but also the publicity which the rape allegation had engendered. [Answer, ¶ 35, Exhibit A].

As of the date of the March 30, 2006, letter, Duke had in effect a policy of insurance issued by National Union for the policy period December 4, 2005 to December 4, 2006, bearing policy no. 625-03-42 ("the 2006 Policy"), with liability limits of $5 Million and a self-insured retention of $500,000.00. [Answer, ¶ 13]. The 2006 Policy is a "claims-made" policy, affording coverage "for only those claims that are first made against the Insured during the Policy Period and reported in writing to the Insurer". [2006 Policy]. National Union also issued to Duke a subsequent "claims-made" policy of insurance for the policy period December 4, 2006 to December 4, 2007, bearing policy no. 965-76-25 ("the 2007 Policy").

United Educators issued to Duke a policy of insurance bearing policy no. GLX20060004400 providing liability coverage for the policy period of January 1, 2006 until January 1, 2007 (hereinafter "the UE Policy"). [Third-Party Complaint, ¶ 3]. The limit of liability under the UE Policy is $25 Million per occurrence, with an underlying limit retention of $2 Million. [Third-Party Complaint, ¶ 3].

National Union's "other insurance" clause in Paragraph 14 in both the 2006 Policy and the 2007 Policy, provides as follows:

> Such insurance as is provided by this policy shall apply only as excess over any valid and collectible insurance. This policy shall
3

> be specifically excess of any other policy pursuant to which any other insurer has a duty to defend a Claim for which this policy may be obligated to pay Loss.

[Third-Party Complaint, ¶ 7].

The UE Policy contains a similar "other insurance" clause which reads as follows:

> This Policy shall at all times be excess over the greater of the **Underlying Limit Retention** amount, or the amount of any other insurance ... available to the **Insured** covering an **Occurrence** covered by this Policy (other than insurance that is expressly and specifically excess of the limits of this Policy or quota-share in the same layer as this Policy), and nothing in this Policy or in any other policy shall be construed to require this policy to contribute with, or subject this Policy to the terms, conditions or limits of, such other insurance.

[Third-Party Complaint, ¶ 8]. National Union has acknowledged potential coverage for Duke in the Underlying Actions under the 2006 Policy. [Answer, ¶ 42]. United Educators has also acknowledged potential coverage for Duke in the Underlying Actions under the UE Policy. [Third-Party Complaint, ¶ 6].

The UE Policy contains the following provision:

> All disputes that may arise **between the Insureds and us in relation to this Policy**, or for its breach, shall be finally settled by arbitration held according to the Commercial Arbitration Rules of the American Arbitration Association, by which the Insureds and we agree to be bound.

[Docket No. 24, Ex. 1 ¶ 18; emphasis added].

## STANDARD OF REVIEW

Pursuant to Rule 72(b) of the Federal Rules of Civil procedure, once a timely objection has been made to a magistrate's recommendation, the district judge assigned to the case "shall make a de novo determination upon the record, or after additional

4

evidence, of any portion of the magistrate's disposition to which specific written objection has been made in accordance with this rule." Moreover, "the district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate with instructions."

## OBJECTIONS

Simply put, National Union's third-party claims seek recovery of sums from UE based upon a determination of the meaning of the competing "other insurance" clauses in the UE and the National Union policies in light of the underlying claims and the relative policy limits in the UE and National Union policies. There is no dispute between UE and Duke and neither UE nor Duke has requested arbitration under the UE Policy which, again, limits arbitration to disputes between UE and Duke. It does not appear conscionable to compel National Union, which does not have any arbitration provision in its policy, to arbitrate its third-party claims against UE in New York as per an arbitration provision in the insurance contract between UE and Duke.

Among other things, that would (1) coerce an arbitration panel in New York to decide the meaning of the language of National Union's policy (which has certainly never been agreed upon), and (2) potentially lead to inconsistent results as the Court determining Duke's claims in this proceeding will likewise have to interpret the language of National Union's policy which may not comport with an arbitration panel's interpretation. Three parties are affected by the interpretation of the National Union and UE policies – Duke, UE, and National Union. If the Magistrate's recommendation is followed two separate coverage proceedings in two separate forums would proceed but with only two of the three parties in interest privy to each proceeding.

5

I. NATIONAL UNION OBJECTS TO THE MAGISTRATE'S RECOMMENDATION THAT NATIONAL UNION MUST ARBITRATE ITS CLAIMS AGAINST UNITED EDUCATORS, AS ARBITRATION OF ITS CLAIMS NECESSARILY INVOLVES A DETERMINATION OF ITS COVERAGE OBLIGATION UNDER THE 2006 POLICY, WHICH HAS NO ARBITRATION PROVISION.

The Magistrate recommends that the Court adopt United Educators' position that the existence of an arbitration provision in the UE Policy requires that any dispute which tangentially involves the UE Policy must be arbitrated, no matter the identity of the parties to the actual dispute, or the nature of the dispute itself. In reaching this determination, the Magistrate must also necessarily conclude that the dispute between Duke and National Union tangentially involves the UE Policy. The Magistrate's conclusion that the UE Policy requires "disputes that may arise between the Insureds and United Educators in relation to this Policy" to be submitted to arbitration, similarly requires National Union, which is not a party to the UE insurance contract, to submit to arbitration the interpretation and application of the National Union policy's "other insurance" provision.

National Union objects to the reformation of National Union's policy to require National Union to go to arbitration when Duke, the insured who is party to the UE policy, does not currently have a dispute requiring arbitration with United Educators regarding the UE Policy. National Union objects to requiring a non-party to an insurance contract such as National Union to arbitrate any dispute with United Educators, even as to the manner in which National Union's own insurance contract will be construed in conjunction with the UE Policy –particularly when there is no ongoing dispute between the two parties to the UE insurance contract. This decision thus requires National Union to submit to an arbitration panel the construction of its policy language, separate and

6

apart from the declarations sought by both Duke and National Union in the present action.

All parties to this proceeding, including United Educators, must agree that "arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agree so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). What United Educators omits, and the Magistrate failed to recognize, is that the basis of the Third-Party Complaint deals not only with the coverages available to Duke under the UE Policy, but also under the 2006 Policy. (Duke and UE have now represented in open court that they have no dispute regarding coverage available to Duke.)

In the Third-Party Complaint, National Union makes the following allegations:

> 7. The 2006 Policy issued by National Union contains an "other insurance" clause which provides:
>
>> Such insurance as is provided by this policy shall apply only as excess over any valid and collectible insurance. This policy shall be specifically excess of any other policy pursuant to which any other has a duty to defend a Claim for which this policy may be obligated to pay Loss.
>
> 8. The UE Policy contains an "other insurance" clause which provides:
>
>> This Policy shall at all times be excess over the greater of the Underlying Limit Retention amount, or the amount of any other insurance (including any insurance naming the Insured as "additional insured") available to the Insured covering an Occurrence covered by this Policy (other than insurance that is expressly and specifically excess of the limits of this Policy or quota-share in the same layer as this Policy), and nothing in this Policy or in any other policy shall be construed to require this Policy to contribute with, or subject this Policy to the conditions, conditions or limits of, such other insurance.
>
> ....

7

> 11. The "other insurance" clauses in the UE Policy and the 2006 Policy are of identical effect and are inconsistent and mutually repugnant.
>
> 12. Neither the "other insurance" clause of the UE Policy or the 2006 Policy can be given full effect according to its terms.
>
> ....
>
> 14. ... UE and National Union are required to contribute *pro rata* according to their respective policy limits towards the costs of defense and settlement of Plaintiffs with the claimants in the Underlying Actions, subject to the remaining terms and conditions of the 2006 Policy and the UE Policy.

[Dkt. 9, pp. 16-17].

In order to effectively resolve these allegations and others, an arbitration panel would be forced to rule upon a separate insurance contract from the UE Policy, which is wholly without an arbitration clause. Indeed, the nature of National Union's dispute with United Educators deals not tangentially, but indeed principally, with the provisions of the 2006 National Union Policy. As such, to follow the Magistrate's recommendation, this Court must engage in an analysis of arbitrability for the 2006 Policy under the Federal Arbitration Act.

Despite the liberal federal policy favoring arbitration, the Federal Arbitration Act "leaves interpretation of an agreement [to arbitrate] to the application of common law principles of contract law." *White v. Teltech Corp.*, 940 F.2d 99, 101 (4th Cir. 1991). To compel arbitration, a Court must find that a dispute exists between the parties, and a written agreement exists which purports to cover the dispute. *Id.* at 102. To find that "an arbitration agreement encompasses a dispute[,] a court must determine whether the

8

factual allegations underlying the claim are within the scope of the arbitration clause."
*J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile,* 863 F.2d 315, 319 (4th Cir. 1988).

Manifestly, there is no arbitration agreement between National Union and United Educators, and certainly no such agreement was before the Magistrate in issuing his ruling. As such, the manner in which the 2006 Policy and the UE Policy are to be reconciled is not a matter for arbitrators, but rather, this Court.

In cases where there are two agreements at issue, one with an arbitration clause and one without, Courts are to first examine the breadth of the arbitration clause. *Consol. Brokers Ins. Services, Inc. v. Pan-American Assurance Co.,* 427 F.Supp.2d 1074, 1082 (D. Kan. 2006). Factors to be considered in examining the scope of the clause include:

> (1) whether the agreements incorporate or reference each other;
> (2) whether the agreements are dependent on each other or relate to the same subject matter; (3) whether the arbitration clause specifically excludes certain claims; (4) whether the agreements are executed closely in time and by the same parties.

*Ibid.* Manifestly, the subject matter of the present dispute requires a comparison and analysis of two separate agreements, one bearing an arbitration clause, and one lacking such a provision. The insurance policies at issue do not reference each other, and a specific basis of National Union's claim is that the two agreements cannot be reconciled. Both the 2006 Policy and the UE Policy are separate obligations to provide insurance coverage, issued by separate insurers to a common named insured, but in no way can it be argued by any party that the agreements are dependent upon each other. As such, the National Union policy cannot be rewritten to insert an arbitration provision of another insurer's policy

9

and National Union cannot be bound to arbitrate the meaning of its 2006 Policy, pursuant to an arbitration provision in the UE Policy.

The Magistrate's conclusion that both insurers are bound to arbitrate the Third-Party Claims cannot be supported by the existence of a single arbitration clause in an agreement to which National Union was not a party. Therefore, National Union requests that the Court not accept the Magistrate's recommendation.

II. NATIONAL UNION OBJECTS TO THE MAGISTRATE'S CONCLUSION THAT IN THE ABSENCE OF ANY DISPUTE BETWEEN UNITED EDUCATORS AND DUKE, NATIONAL UNION IS STILL BOUND TO ARBITRATE WITH UNITED EDUCATORS UNDER THE UE POLICY.

In reviewing a claim of arbitrability, a court is "charged with the initial task of interpreting the arbitration agreement to determine whether the parties agreed to arbitrate the particular dispute" at issue. *Merril Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.2d 323, 326 (7th Cir. 1995), *citing AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986). If a Court in reviewing the arbitration clause and the dispute can say "with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute", the motion to compel arbitration should be denied. *United Steelworkers*, 363 U.S. at 582.

The UE Policy's arbitration provision reads:

> All disputes that may arise between the **Insureds** and **us** in relation to this Policy, or for its breach, shall be finally settled by arbitration held according to the Commercial Arbitration Rules of the American Arbitration Association, by which the **Insureds** and **we** agree to be bound.

[Dkt. 24-2, pp. 11-12]. However, as conceded by both Duke and United Educators at oral argument of United Educators' motions, no such dispute exists, and that instead, these two parties have come to an agreement in principal as to the coverages owed to Duke under the UE Policy. The Magistrate, in his opinion, still wrote that National Union did not cite any authority in support of its assertion that the Third-Party Complaint was not within the scope of the UE Policy arbitration provision. However, the Magistrate's recommendation, in the absence of the dispute, contravenes the plain language of the UE Policy.

In resolving whether a dispute is arbitrable, Courts are first directed to review the actual language of the arbitration clause. *See Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 571 (4th Cir. 1998). Indeed, "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration." *First Options v. Kaplan*, 514 U.S. 938, 943 (1995). Despite the fact that National Union was not a party to the actual arbitration agreement, the Magistrate still found that National Union was estopped from avoiding the obligation to arbitrate as set forth in the UE Policy by virtue of the benefit they sought in the Third-Party Complaint.

In making this conclusion, the Magistrate specifically disregarded the explicit language of the arbitration clause. While such a clause should be broad with respect to the nature of the disputes referable to arbitration, the clause specifically limits itself to "disputes between the **Insureds** and **us**". No where does the UE Policy define either "Insureds" or "us" to include a separate insurer, not a party to the policy, in such an expanse so as to include National Union. Indeed, the very absence of a dispute between

11

United Educators, i.e. "us", and Duke, its "insured", specifically eviscerates any argument that National Union should now be compelled to arbitrate its Third-Party claim. No matter how fervently National Union asserts United Educators' coverage obligation to Duke, the assertion of that position for Duke's direct benefit does not bind National Union to arbitration with United Educators. *See MAG Portfolio Consult, GmbH v. Biomed Group, LLC*, 268 F.32d 58, 62 (2nd Cir. 2001)(" Because arbitration is guided by contract principles, the reverse is not also true: a signatory may not estop a nonsignatory from avoiding arbitration regardless of how closely affiliated that nonsignatory is with another signing party.")

Because there is no longer any dispute, according to the concessions of counsel for Duke and United Educators, between the Plaintiffs and Third-Party Defendant insurer, the scope of the claims in the Third-Party Complaint cannot be subsumed into the arbitration clause of the UE Policy. As such, it was error for the Magistrate to conclude that said claims are bound to arbitration.

    III.    THERE IS NO RECOGNIZABLE DIRECT BENEFIT TO NATIONAL UNION IF UNITED EDUCATORS SIMPLY AFFORDS DUKE THE COVERAGE OWED BY THE UE POLICY, AS REQUESTED IN THE THIRD-PARTY COMPLAINT.

To assert that National Union is "estopped" from avoiding the arbitration obligation under the UE Policy, the threshold issue for any court to entertain is whether, by virtue of the Third-Party Complaint, National Union is seeking a "direct benefit" under the UE Policy. *See International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000). As set forth in its original memorandum in response to United Educators' Motion to Dismiss, various courts entertaining the theory of equitable estoppel have failed to affix a concise definition of

12

Case 1:08-cv-00854-UA-PTS   Document 53   Filed 02/18/10   Page 12 of 15

what qualifies as a "direct benefit". *See Deloitte Noraudit A/S v. Deloitte Haskins & Sells*, 9 F.3d 1060 (2nd Cir. 1993); *See also E.I DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187 (2nd Cir. 2001). However, an "indirect benefit", not warranting estoppel has been unequivocally defined as a "benefit derived from an agreement ... where the nonsignatory exploits the contractual relation of the parties to an agreement, but does not exploit (and thereby assume) the agreement itself. *MAG Portfolio*, 268 F.3d at 61.

The Magistrate, in his recommendation, wrote that the basis for each of National Union's claims was premised solely upon the existence of the UE Policy, and as such, National Union sought a "direct benefit" from an agreement which contained an arbitration clause. [Dkt. 50, p. 7]. To the contrary, the UE Policy alone does not serve as the basis for the Third-Party Claims. Instead, National Union's Third-Party Complaint is based upon the fact that the UE Policy and the 2006 cannot be reconciled, and that the UE Policy requires United Educators to thus contribute on a pro-rata basis to the common insured, Duke. [Dkt. 9, pp. 16-17]. Accordingly, the Magistrate's recommendation takes too narrow a focus as to the relief sought by National Union in the Third-Party Complaint, and it was error for the Magistrate to conclude that these claims belonged in arbitration.

National Union does not contend in the Third-Party Complaint that it is an insured under the UE Policy. Nor does it assert that it should directly receive the benefit of the obligations imposed by the UE Policy upon United Educators. Instead, it asserts that when construed with the 2006 Policy, the UE Policy requires an equal or greater coverage obligation upon United Educators than the obligations imposed upon National

13

Union in the 2006 Policy. Central to the claims is the insurance proceeds received by Duke from two different insurers which need to be reconciled among the two insurers and Duke pursuant to the "other insurance provisions" in the two insurance contracts. There is no issue as to whether Duke is entitled to coverage under the UE policy. There is no issue as to whether National Union is entitled to coverage under the UE policy. As such, the Magistrate's recommendation that estoppel binds National Union to participate in arbitration should not be accepted by this Court.

## **CONCLUSION**

For the reasons set forth herein, National Union respectfully objects to the Magistrate's Memorandum Opinion granting United Educators' Motion to Stay until arbitration has been had National Union's Third-Party claims. National Union respectfully requests that this Court reject the Magistrate's recommended ruling, and that the Court deny United Educators' Motions to Dismiss, or in the alternative, to Stay, in their entirety.

Respectfully submitted, this the 18th day of February, 2010.

> BAILEY & DIXON, LLP
>
> By: /s/ David S. Coats
>    David S. Coats, N.C. State Bar No. 16162
>    dcoats@bdixon.com
> By: /s/ Dayatra T. Matthews
>    Dayatra T. Matthews, N.C. State Bar No. 24355
>    dmatthews@bdixon.com
> By: /s/ J.T. Crook
>    J.T. Crook, N.C.S.B. 35232
>    jcrook@bdixon.com
> Attorneys for Defendant
> Post Office Box 1351
> Raleigh, North Carolina 27602
> Telephone: (919) 828-0731
> Facsimile: (919) 828-6592

14

# CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of February, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Gregg E. McDougal<br>Betsy Cooke<br>Kilpatrick Stockton, LLP<br>3737 Glenwood Ave, Suite 400<br>Raleigh, NC 27612<br>gmcdougal@kilpatrickstockton.com<br>bcooke@kilpatrickstockton.com<br>*Attorneys for Plaintiffs* | Jerold Oshinsky<br>Jonathan M. Cohen<br>Ariel Shapiro<br>1100 New York Ave, N.W., Ste. 700<br>Washington, D.C. 20005<br>Oshinskyj@gotofirm.com<br>cohenj@gotofirm.com<br>shapiroa@gotofirm.com<br>*Attorneys for Plaintiffs* |
| James K. Dorsett, III<br>K. Alan Parry<br>Smith Anderson Blount Dorsett<br>   Mitchell & Jernigan<br>Post Office Box 2611<br>Raleigh, North Carolina 27602-2611<br>jdorsett@smithlaw.com<br>aparry@smithlaw.com<br>*Attorneys for Third-Party*<br>   *Defendants* | Clifton S. Elgarten<br>Kathryn A. Underhill<br>Elaine Panagakos<br>Michael T. Carolan<br>1001 Pennsylvania Ave, N.W.<br>Washington, D.C. 20004<br>*Attorneys for Third-Party*<br>   *Defendants* |

This the 18th day of February, 2010.

                      /s/ David S. Coats

15

Case 1:08-cv-00854-UA-PTS   Document 53   Filed 02/18/10   Page 15 of 15