UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | |
|---|---|
| DUKE UNIVERSITY AND DUKE ) <br> UNIVERSITY HEALTH SYSTEM, INC. ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NATIONAL UNION FIRE INSURANCE ) <br> COMPANY OF PITTSBURGH, PA, ) <br> ) <br> Defendant and Third-Party Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED EDUCATORS INSURANCE, ) <br> A RECIPROCAL RISK RETENTION GROUP, ) <br> ) <br> Third-Party Defendant. ) | Case Number: 1:08-CV-0854 |

**RESPONSE OF THIRD-PARTY DEFENDANT
UNITED EDUCATORS TO DEFENDANT'S OBJECTIONS TO THE MAGISTRATE
JUDGE'S ORDER AND RECOMMENDATION**

Although one would hardly know it from National Union's Objections, the fact is that each of the third-party claims that National Union is asserting against United Educators is based on National Union's assertion that United Educators owes insurance coverage to Duke University under the UE Excess Policy that contains the arbitration clause. National Union asserts that it can piggyback on the coverage that it says United Educators owes to Duke University in order to obtain direct payments from United Educators, citing theories of contribution, equitable subrogation, or declaratory judgment. But the plain fact of the matter is that United Educators disputes that it owes such coverage to Duke University. And the United Educators insurance policy, issued to Duke University, on which National Union bases its claims, requires that any disputes over coverage be resolved in arbitration, not in the courts.

The law is quite clear that principles of estoppel prevent a third-party from simultaneously claiming benefits under the contract and disavowing obligations under the contract, such as the obligation to arbitrate. National Union quite literally ignores all of the case law – a extensive body of case law -- that so holds. *See* Section I, *infra*. Consequently, in a well-reasoned Order and Recommendation ("Recommendation"), Magistrate Judge Sharp explained that since all of National Union's claims depend on the UE Excess Policy, if National Union wishes to pursue its claims against United Educators, it must do so in arbitration.

United Educators' coverage under that insurance policy with Duke University was conditioned on United Educators' right to have coverage issues determined by an arbitration panel, not a court. And the Federal Arbitration Act ("FAA") requires that the courts respect United Educator's (and Duke University's) choice of arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (courts must "rigorously enforce agreements to arbitrate").

Accordingly, this Court should adopt the Magistrate Judge's Recommendation, and stay (or, as noted in the footnote below and Section IV, more properly dismiss) the Third-Party Complaint.[1]

As the Magistrate Judge noted, United Educators presented additional grounds for dismissing National Union's Third-Party Complaint. The Magistrate Judge recognized that all of those issues can be presented to the arbitration panel. (Recommendation at 2.) In light of the ruling on arbitration, United Educators agrees.

## **INTRODUCTION AND SUMMARY**

The relevant facts and procedural history are set forth in the Recommendation and need not be recapitulated here. In summary, Duke filed this action against National Union in November 2008 seeking coverage for claims asserted against Duke and others in connection with the highly-publicized incidents involving the Duke Men's Lacrosse Team.

In January 2009, National Union filed its Answer asserting various defenses and counterclaims against Duke. But it also filed a Third-Party Complaint against United Educators, which had issued an Excess Liability Insurance Policy to Duke ("UE Excess Policy"). In that Third-Party Complaint, National Union asserted that even though the United Educators policy was an excess policy, United Educators owed insurance coverage to Duke. Based on that allegedly owed coverage, National Union claimed that it was entitled to claim contribution from United Educators, or that it was "equitably subrogated" to Duke University's coverage claim

---

[1] United Educators does not believe that National Union need be compelled to commence an arbitration. That is National Union's choice. The simple rule is that if National Union wishes to proceed with these claims it must do so in arbitration. Since that principle disposes of the entirety of the Third-Party Complaint, the Court can and should simply dismiss the Third-Party Complaint. *Ingram-Allen v. Iveys*, No. 03-CV-00196, 2004 WL 1462024 (M.D.N.C. Feb. 26, 2004), *aff'd*, 98 Fed. Appx. 944 (4th Cir. 2004) (unpublished) ("[w]hen a plaintiff's claims are covered by the terms of an arbitration agreement, dismissal is the proper remedy") (citing *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc*., 252 F.3d 707, 709-10 (4th Cir. 2001)). Nothing in the main case between Duke and National Union awaits the decision of the arbitrators, and thus dismissal rather than stay is the preferred remedy. *Id*. Moreover, the Court has additional authority to dismiss the Third-Party Complaint rather than stay pursuant to Rule 14 of the Federal Rules of Civil Procedure. *Dishong v. Peabody Corp*., 219 F.R.D. 382, 385 (E.D. Va. 2003).

2

against United Educators. National Union's claims rest on allegations that: (1) the UE Excess Policy requires United Educators to pay Duke as respects the lacrosse claims; and (2) if the UE Excess Policy provides such coverage, the "other insurance" clause in the UE Excess Policy conflicts with National Union's policy, requiring United Educators to contribute with National Union.

In seeking to have the Court determine that the UE Excess Policy provides coverage here, and United Educators was in breach for failure to provide that coverage, National Union tried to circumvent the following central provision of the UE Excess Policy:

> All disputes that may arise between the Insureds and us in relation to this Policy, or for its breach, shall be finally settled by arbitration held according to the Commercial Arbitration Rules of the American Arbitration Association, by which the Insureds and we agree to be bound.

(Docket No. 24, Ex. 1 ¶ 18.)

The allegations of coverage on which National Union's third-party claims rest all depend on the relevant provisions of the UE Excess Policy. They arise "in relation to this Policy" and claim its breach. Accordingly, in March 2009, United Educators moved to dismiss or stay the Third-Party Complaint so as to enforce the arbitration clause as the Federal Arbitration Act requires. The FAA, manifesting the long established federal policy favoring arbitration, expressly requires a federal court to stay any action brought "upon any issue referable to arbitration under an agreement in writing for such arbitration[.]" 9 U.S.C. § 3 (2008).

In addition, United Educators' motion set forth other grounds for dismissal, specifically (1) National Union's claims for relief are not yet ripe for determination under state law and should await the resolution of the underlying cases; (2) United Educators does not owe the coverage to Duke that National Union says it owes; and (3) the "other insurance" clause of the United Educators Excess Policy is explicit that it does "not contribute" with any other policy,

3

and thus National Union's contribution claim is simply wrong. As noted above, United Educators agrees with the Magistrate Judge's determination that all those issues can be presented to the arbitration panel. (Recommendation at 2.)

In its Objections to the Recommendation, National Union makes various assertions about a settlement between Duke University and United Educators. As shown below, the existence of a settlement of some of the issues of coverage between these parties would not, in any way, affect the disposition of this motion. That is because if *anyone* wants to piggyback on the UE Excess Policy and claim that United Educators owes coverage to Duke, which United Educators disputes, then that piggybacking party, relying on the insurance policy for its claim, must also abide by the arbitration clause in that insurance policy. That is what equitable estoppel requires.

In any event, National Union fundamentally misstates the facts concerning any settlement. In September 2009, while the motion was pending, United Educators and Duke reached an interim agreement on some – but by no means all – of the issues in dispute between themselves. That agreement was noted at the January 25 oral argument. Contrary to National Union's representations to this Court, however, neither United Educators nor Duke agreed or represented to the Magistrate Judge that there was no dispute between them, or that they had "come to an agreement in principal [sic] as to the coverages owed to Duke under the UE Policy." (Objections at 11.) Rather, they agreed on certain interim measures and, further, that any coverage issues remaining between them would be submitted to arbitration, pursuant to the provision in the UE Excess Policy. That is the agreement of which Duke and United Educators informed the Magistrate Judge at the oral argument. (Ex. A, Transcript of Jan. 25, 2010 Hearing before Magistrate Judge Sharp at 26 (statement of Duke's counsel, Mr. Oshinsky, that "Duke and United Educators have reached an agreement with respect to defense costs for the underlying

4

cases and claims, and if they're unable to reach a resolution as to other issues, they've both expressed their intent to seek whatever remedies are available to them through arbitration")).

In his Recommendation, the Magistrate Judge correctly recognized that National Union's claims against United Educators "rest entirely on the asserted obligations of United Educators to Duke under the insurance policy containing the arbitration clause." (Recommendation at 7.) Thus, if United Educators does not owe coverage to Duke as National Union alleges, then National Union has no claim against United Educators.

National Union does not deny this point. Indeed, it concedes that the Third-Party Complaint hinges on its "request[]" that United Educators "afford[] Duke the coverage owed by the UE Policy[.]" (Objections at 12.) That question – whether "coverage" is "owed" – is the very essence of a dispute "in relation to this Policy, or for its breach," which the UE Excess Policy requires to be arbitrated. Indeed, unless that dispute is resolved in favor of coverage, the other provisions of the insurance policy on which National Union's claims depend – *i.e.*, "the meaning of the competing 'other insurance' clauses in the UE and the National Union policies" (Objections at 5) – will never be reached. But if and when that question is reached, the meaning of the "other insurance" clause in the UE Excess Policy is also squarely within the ambit of the arbitration provision.

On the basis of these undisputed facts, the Magistrate Judge properly applied equitable estoppel to hold National Union, whose claims depend on the UE Excess Policy, to the arbitration clause in that policy in the same manner as Duke would be bound. Despite National Union's exhortations, courts *routinely* apply equitable estoppel principles to prevent a nonsignatory to a contract containing an arbitration clause from attempting to use the contract against a signatory while avoiding the arbitration clause itself.

5

Accordingly, the Magistrate Judge's Recommendation should be confirmed.

## ARGUMENT

"Well-established common law principles dictate that in an appropriate case a non-signatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416-17 (4th Cir. 2000). "An appropriate case for enforcement is under a theory of equitable estoppel." *Riek v. Xplore-Tech Services Private Ltd.*, No. 1:08CV117, 2009 WL 891914 at *4 (M.D.N.C. 2009).

That is because the "legal principle [of equitable estoppel] rests on a simple proposition: it is unfair for a party to 'rely on a contract when it works to its advantage and repudiate it when it works to its disadvantage.'" *Wachovia Bank, Nat. Ass'n v. Schmidt,* 445 F.3d 762, 769 (4th Cir. 2006) (quoting *Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) (alteration omitted). Thus, equitable estoppel will "apply against a non-signatory who sues a signatory [to an arbitration provision]…when his underlying claims seek a 'direct benefit' from the contract containing the arbitration clause." *American Bankers Ins. Group v. Long*, 453 F.3d 623, 628 (4th Cir. 2006) (internal citations omitted). And, "the 'direct benefit' test…recognizes that a nonsignatory should be estopped from denying that it is bound by an arbitration clause when its claims against the signatory 'arise from' the contract containing the arbitration clause." *Id.* (quoting *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 162 (4th Cir. 2004)) (alteration omitted).

In this case, the Magistrate Judge correctly determined that each of National Union's claims is based upon and arises out of the UE Excess Policy and that, accordingly, National Union is equitably estopped from avoiding enforcement of the arbitration clause in that contract.

## I. THIRD-PARTY NON-SIGNATORIES ARE ROUTINELY ORDERED TO ARBITRATE CLAIMS AGAINST CONTRACTUAL SIGNATORIES ON THE BASIS OF EQUITABLE ESTOPPEL

National Union blithely asserts that "the existence of a single arbitration clause in an agreement to which National Union was not a party" cannot be the basis on which it is required to arbitrate its third-party claims. (Objections at 10). But, in fact, courts routinely require third-party nonsignatories to arbitrate against contractual signatories when the claims arise from the contract with the arbitration clause. *See, e.g.*, *Long v. Silver*, 248 F.3d 309, 320 (4th Cir. 2001) (nonsignatory shareholder could not claim benefit of agreement between other shareholders without submitting to arbitration required by the same agreement); *United States v. Bankers Ins. Co.*, 245 F.3d 315, 323 (4th Cir. 2001) (nonsignatory could not seek benefit from contract while "simultaneously attempting to avoid the terms of an arbitration provision contained therein"); *International Paper*, 206 F.3d at 418 (nonsignatory estopped from avoiding arbitration because it receives a direct benefit from the contract with the arbitration clause); *J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21 (4th Cir. 1988) (nonsignatory parent company must arbitrate "even though the parent is not formally a party to the arbitration agreement"); *Xplore-Tech Services*, 2009 WL 891914 at *5 (nonsignatory equitably estopped from avoiding arbitration where claim "arises from" contract with an arbitration clause); *see also Washington Square Sec., Inc. v. Aune,* 385 F.3d 432, 435 (4th Cir. 2004) ("[t]he obligation and entitlement to arbitrate does not attach only to one who has personally signed the written arbitration provision") (internal quotations and citation omitted).

This outcome is simply a matter of common law principles. *See, e.g., R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 160-61 (4th Cir. 2004) ("In the context of arbitration, the doctrine of [equitable estoppel] applies when one party attempts 'to hold [another

7

party] to the terms of [an] agreement' while simultaneously trying to avoid the agreement's arbitration clause.") (quoting *Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 838 (7th Cir. 1981)).

National Union's assertion that the Magistrate Judge inserted an "arbitration provision of another insurer's policy" into the National Union policy simply ignores all of this case law. (Objections at 6, 9.) No arbitration clause is being "inserted" into National Union's policy. National Union is merely being held to the *arbitration clause in the UE Excess Policy* because National Union's claims rely on *that* policy. *See R.J. Griffin*, 384 F.3d at 160 ("'common law principles of contract and agency law' are used to bind nonsignatories to arbitration agreements") (citing *International Paper*, 206 F.3d at 417 (quoting *Thomson-CSF v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). National Union is estopped from trying to enforce parts of the UE Excess Policy for its benefit, while ignoring the arbitration clause. *International Paper*, 206 F.3d at 418 ("In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that the other provisions of the same contract should be enforced to benefit him.").

National Union also complains that the arbitration panel may have to analyze the terms of the National Union Policy. But that assertion is both wrong and irrelevant.[2] The basic issues subject to arbitration involve the terms of *United Educators*' policy. National Union says that

---

[2] National Union's citation to the Kansas district court case of *Consol. Brokers Ins. Services, Inc. v. Pan American Assurance Co.*, 427 F.Supp.2d 1074, is off-point. The issue in that case was whether the plaintiff's two breach-of-contract claims – one based on a contract with an arbitration clause and the other based on a contract without an arbitration clause – should both be arbitrated on a consolidated basis. That is plainly not the issue here, as National Union does not claim that UE breached the terms of National Union's policy, and there is no consolidation issue.

8

United Educators owes coverage to Duke University under the UE Excess Policy.[3]  It is only *after* that aspect of National Union's claim is resolved does any potential issue arise regarding the application of the "other insurance" clause in the UE Excess Policy.  And the other insurance clause is, of course, simply another clause that defines coverage under the UE Excess Policy.  Because that clause explicitly says that it does *not* contribute with any other policy, that should be dispositive of National Union's claims that it does.  But even if the arbitrators must then look to see what National Union's insurance policy says in its "other insurance clause," that would make no difference.  If the National Union insurance policy affects United Educators' obligations under its policy, that remains a dispute "relating to" the UE Excess Policy, and it is properly subject to arbitration, whether argued by Duke University or by National Union.

Finally, National Union invokes the possibility of piecemeal litigation.  First, there is no possibility of piecemeal litigation.  National Union's claims are for contribution from United Educators.  As National Union must acknowledge,  nothing in the "other insurance" clause, even under its own theory, would in any way limit its obligations to Duke.  *See* 15 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 219.1 (3d ed. 1999).

In any event, if the result of this ruling is simply that all coverage issues relating to United Educators will be determined in arbitration, while National Union coverage issues are determined in court, that is simply the result of the arbitration clause.  Numerous courts have held that such an outcome is simply part-and-parcel of enforcing arbitration clauses.  *See, e.g., Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 3 (1983) ("the relevant federal law, the Arbitration Act, requires piecemeal resolution when necessary to give effect to

---

[3] Although National Union focuses in its Objections on the contribution claim, the Third-Party Complaint also asserts a right of equitable subrogation, pursuant to which National Union claims a right to step into Duke's shoes and collect directly from the UE Excess Policy as an allegedly equitable party thereto.

9

an arbitration agreement"); *Byrd*, 470 U.S. at 221 (courts must "rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation"). Accordingly, that outcome is not a reason for rejecting the Magistrate Judge's Recommendation.

## II. ALTHOUGH DISPUTES BETWEEN DUKE AND UNITED EDUCATORS REMAIN, EVEN IF THEY DID NOT, EQUITABLE ESTOPPEL IS PROPERLY APPLIED TO NATIONAL UNION'S CLAIMS

As discussed above, United Educators and Duke have most certainly <u>not</u> resolved all of the outstanding issues regarding coverage under the UE Excess Policy, and National Union's assertion to the contrary is without basis. But even if United Educators and Duke had resolved all of their coverage disputes concerning the UE Excess Policy, National Union would still be equitably estopped from avoiding arbitration of its claims that are based on and arise out of the UE Excess Policy. *American Bankers Insurance Group*, 453 F.3d at 628 ("a nonsignatory should be estopped from denying that it is bound by an arbitration clause when its claims against the signatory 'arise from' the contract containing the arbitration clause") (quoting *R.J. Griffin*, 384 F.2d at 162) (alteration omitted). That is because the applicable question is not whether disputes between Duke and United Educators have triggered the arbitration clause, but whether the UE Excess Policy "provides part of the factual foundation for every claim asserted by" National Union such that it equitably "cannot seek to enforce those contractual rights and avoid the contract's [arbitration] requirement." *International Paper*, 206 F.3d at 418. In other words, since National Union's claims are based on Duke's ostensible rights to coverage under the UE Excess Policy, those claims must be subject to the same terms and conditions Duke's claims would be, including arbitration. The only question is whether National Union's claims depend on the insurance policy containing the clause – not whether Duke has a dispute. If National Union is relying on the insurance policy, it must live with its arbitration clause. *See American*

*Bankers Ins. Group*, 453 F.3d at 629 (court must "examine" the non-signatory's claims in the underlying suit to determine whether equitable estoppel applies); *R.J. Griffin II*, 384 F.3d at 162 (reviewing the "basis for the…claims"); *International Paper*, 206 F.3d at 418 (reviewing the "factual foundation for every claim" brought by the nonsignatory).

Here, as discussed, each of National Union's claims expressly presumes or seeks a declaration regarding enforcement of the UE Excess Policy based on Duke's alleged rights thereunder. Indeed, for its equitable subrogation claim, National Union claims that it is "entitled to recover…from [United Educators] according to the limits of liability of the UE Policy." (Docket No. 8, Third-Party Complaint at 41.) Thus, under longstanding precedent, National Union is "estopped from asserting that the lack of [its] signature on [the] written contract precludes enforcement of the contract's arbitration clause when [it] has consistently maintained that other provisions of the same contract should be enforced to benefit [it]." *International Paper*, 206 F.3d at 418.

### III. NATIONAL UNION SEEKS A DIRECT BENEFIT FROM THE UE EXCESS POLICY BECAUSE ITS CLAIMS ARISE FROM THAT CONTRACT

As noted above, nonsignatories are routinely estopped from avoiding the arbitration clause in a contract when they seek or receive a "direct benefit" from that contract. *R.J. Griffin*, 384 F.3d at 161; *International Paper Co.*, 206 F.3d at 418. National Union asserts that this straightforward principle does not apply because it only seeks an "indirect" benefit, and cites Second Circuit case law in support of its argument. National Union also cites Second Circuit case law for its assertion that there is no fixed definition of "direct benefit."

But the Fourth Circuit has definitively addressed this point, and the applicable precedent is clear: "the 'direct benefit' test…recognizes that a nonsignatory should be estopped from denying that it is bound by an arbitration clause when its claims against the signatory 'arise

11

from' the contract containing the arbitration clause." *American Bankers Insurance Group,* 453 F.3d at 628 (quoting *R.J. Griffin & Co.*, 384 F.3d at 162) (alteration omitted). National Union is obviously seeking a direct benefit here: it claims that because of the terms of the United Educators policy and the coverage it allegedly provides to Duke University, National Union is entitled to money.

As the Magistrate Judge correctly stated, each of National Union's "claims rest entirely on the asserted obligations of United Educators to Duke under the insurance policy containing the arbitration clause." (Recommendation at 7.) Specifically, (i) the contribution claim is expressly and primarily based upon the assertion that United Educators owes Duke coverage under the UE Excess Policy; (ii) the equitable subrogation claim asserts that National Union has the right to step into the shoes of Duke and directly recover from United Educators; and (iii) the declaratory judgment claim seeks a declaration as to the coverage provided by United Educators to Duke under the UE Excess Policy and National Union's asserted rights thereto. Because those claims "arise from" the UE Excess Policy, National Union seeks a "direct benefit" from the UE Excess Policy and cannot "'claim the benefit of the [UE Excess Policy] and simultaneously avoid its burdens,'" including arbitration. *International Paper*, 206 F.3d at 418 (quoting *Avila Group, Inc. v. Normal J. of California*, 426 F.Supp. 537, 542 (S.D.N.Y. 1977)). Accordingly, the common law principles of equitable estoppel properly apply, and the Magistrate Judge was correct to grant United Educators' motion to stay National Union's third-party claims pending arbitration of those claims. (Recommendation at 8.)

## IV.  THE THIRD-PARTY COMPLAINT SHOULD BE DISMISSED

If there is to be any adjustment to the Magistrate Judge's Recommendation, it should be to simply order the dismissal of the Third-Party Complaint, rather than staying it and directing

12

National Union to commence an arbitration. If National Union wishes to proceed, it must do so in arbitration. However, National Union may choose not to proceed in arbitration. It might determine, as United Educators believes to be the case, that its claims lack sufficient merit to warrant arbitration – and elect not to do so; or, it might decide that it wants first to await the outcome of its litigation with Duke. Therefore, National Union need not be ordered to proceed.

The Fourth Circuit has followed this approach, holding that if the arbitration will be fully dispositive, the case should be dismissed, not stayed. *Ingram-Allen*, 2004 WL 1462024 at * 2 ("[w]hen a plaintiff's claims are covered by the terms of an arbitration agreement, dismissal is the proper remedy") (citing *Choice Hotels Int'l, Inc.*, 252 F.3d at 709-10). That is the case here. All of National Union's claims against United Educators will be resolved in arbitration. Because nothing of the Third-Party Complaint would remain to be decided in court (and nothing in the arbitration affects the main claims), the Third-Party Complaint should be dismissed. Otherwise, this Court could conclude the main case and still have this Third-Party Complaint lingering, depending on whether National Union decides to proceed in arbitration.

## **CONCLUSION**

The Court should confirm the Order and Recommendation, with the sole amendment that the Third-Party Complaint should be dismissed.

13

Respectfully submitted this the 4th day of March, 2010.

                                                  SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P.

| *Of Counsel* | By: /s/ K. Alan Parry |
| --- | --- |
| | James K. Dorsett, III |
| CROWELL & MORING LLP | NCSB 7695 |
| Clifton S. Elgarten | K. Alan Parry |
| Kathryn A. Underhill | NCSB 31343 |
| Elaine A. Panagakos | Attorneys for Third-Party Defendant |
| Michael T. Carolan | P. O. Box 2611 |
| 1001 Pennsylvania Ave., N.W. | Raleigh, NC  27602-2611 |
| Washington, DC 20004 | Telephone:  (919) 821-1220 |
| Telephone: (202) 624-2500 | Facsimile:  (919) 821-6800 |
| Facsimile: (202) 628-5116 | jdorsett@smithlaw.com |
| | aparry@smithlaw.com |

14

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a copy of the foregoing document was served on the following parties to this action by electronic filing and/or by depositing a copy of the same in the United States Mail postage prepaid and addressed to:

>David S. Coats
>dcoats@bdixon.com
>J.T. Crook
>jcrook@bdixon.com
>Bailey & Dixon
>Attorneys for Defendant
>P. O. Box 1351
>Raleigh, North Carolina 27602
>
>Gregg E. McDougal
>gmcdougal@kilpatrickstockton.com
>Betsy Cooke
>bcooke@kilpatrickstockton.com
>Kilpatrick Stockton, LLP
>3737 Glenwood Ave., Suite 400
>Raleigh, NC 27612
>
>Jerold Oshinsky
>Jenner & Block
>633 West 5th Street
>Los Angeles, CA 90071-2054

This the 4th day of March, 2010.

>/s/ K. Alan Parry
>K. Alan Parry
>NCSB 31343
>Attorney for Third-Party Defendant
>P. O. Box 2611
>Raleigh, NC 27602-2611
>Telephone: (919) 821-1220
>Facsimile: (919) 821-6800
>aparry@smithlaw.com

15